UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X
                                       :
UNITED STATES OF AMERICA               :    **SUPERSEDING INDICTMENT**
                                       :
            - v. -                     :    S7 15 Cr. 379 (PKC)
                                       :
JUAN ORLANDO HERNANDEZ,                :
   a/k/a "JOH,"                        :
                                       :
                        Defendant.     :
                                       :
- - - - - - - - - - - - - - - - - - - X

**COUNT ONE**
**(Cocaine Importation Conspiracy)**

The Grand Jury charges:

*Overview*

1.  JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, is a former member of the National Congress of Honduras and the former president of Honduras. From at least in or about 2004, up to and including in or about 2022, HERNANDEZ participated in a corrupt and violent drug-trafficking conspiracy to facilitate the importation of tons of cocaine into the United States.

2.  As part of that conspiracy, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, received millions of dollars from multiple drug-trafficking organizations in Honduras, Mexico, and elsewhere, including from the former leader of the Sinaloa Cartel, Joaquín Guzman Loera, a/k/a "El Chapo" ("Guzman Loera"). HERNANDEZ

used those drug-trafficking proceeds to enrich himself, finance his political campaigns, and commit voter fraud, including in connection with the 2013 and 2017 Honduran presidential elections. In exchange, HERNANDEZ protected drug traffickers, including his brother and former member of the Honduran National Congress Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez" ("Hernandez Alvarado"), from investigation, arrest, and extradition; caused sensitive law enforcement and military information to be provided to drug traffickers to assist their criminal activities; caused members of the Honduran National Police and military to protect drug shipments in Honduras; and allowed brutal violence to be committed without consequence.

3.  In the process, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, abused his position as the president of Honduras to operate the country as a narco-state, in order to enrich himself and corruptly gain and maintain power; corrupted the legitimate institutions of Honduras, including parts of the Honduran National Police, military, and National Congress; and, while publicly purporting to be an ally of the United States, contributed with his co-conspirators to Honduras becoming one of the largest transshipment points in the world for United States-bound cocaine.

*Means and Methods of the Drug-Trafficking Conspiracy*

4.  In furtherance of the drug-trafficking conspiracy, at various times between in or about 2004 and in or about 2022, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and other members of the conspiracy organized and executed their drug-trafficking activities including as follows:

a.  Since at least in or about 2004, multiple drug-trafficking organizations in Honduras and elsewhere worked together to receive multi-ton loads of cocaine sent to Honduras from, among other places, Colombia and Venezuela, via maritime and air routes.  The maritime shipments were shipped north from Venezuela's coastline using go-fast vessels, fishing boats, and container ships.  Air shipments were often shipped from clandestine airstrips, typically made of dirt or grass, in Colombia and Venezuela, and received at similar clandestine airstrips in Honduras.  Once the cocaine arrived in Honduras, drug-trafficking organizations transported the drugs westward in Honduras toward the border with Guatemala and eventually to the United States.

b.  Since at least in or about 2004, members of the conspiracy transported through Honduras more than approximately 500,000 kilograms of United States-bound cocaine. In order to achieve safe passage through Honduras for those enormous cocaine shipments, drug-trafficking organizations

obtained the support, protection, and direct participation of certain prominent Honduran public officials, including HERNANDEZ.

   c. Drug traffickers paid bribes to HERNANDEZ and other public officials, including to other past presidents of Honduras and to members of the National Congress of Honduras, Honduran National Police, and Honduran military.  In exchange, public officials, including HERNANDEZ, provided drug traffickers with, for example, protection from investigation and arrest, and access to law enforcement and military information, including data from flight radar in Honduras, which enabled drug traffickers to evade detection by Honduran authorities.

   d. HERNANDEZ, along with other prominent public officials, coordinated with drug traffickers in furtherance of the conspiracy in order to, among other things: transport and distribute these large cocaine shipments; enlist and cause others to provide heavily armed security to protect members of the conspiracy, their cocaine shipments, and HERNANDEZ during some of his meetings with drug traffickers; interfere with drug-trafficking investigations; prevent the extradition to the United States of drug traffickers; enrich themselves, while the people of Honduras endured conditions of poverty and rampant violence; and gain and maintain political power by, among other things, bribing

4

others with drug-trafficking proceeds to ensure their election to public office, including through voter fraud.

*Acts in Furtherance of the Drug-Trafficking Conspiracy*

5. In furtherance of the drug-trafficking conspiracy and to effect the illegal objects thereof, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and other members of the conspiracy engaged in, among other things, the following activity:

a. In or about 2005, HERNANDEZ, who was then a congressman running for reelection, accepted approximately $40,000 in drug-trafficking proceeds from Victor Hugo Diaz Morales, a/k/a "El Rojo" ("Diaz Morales"), the former leader of a drug-trafficking organization based in Honduras and Guatemala, which bribe was paid through Hernandez Alvarado. In return, Diaz Morales's organization, which was working at the time with Hernandez Alvarado, received information and protection from Honduran law enforcement that helped Diaz Morales and Hernandez Alvarado transport large quantities of United States-bound cocaine through Honduras to Guatemala.

b. In or about 2009, HERNANDEZ began to campaign to become president of the Honduran National Congress. Around this time, Diaz Morales provided approximately $100,000 in drug-trafficking proceeds to Hernandez Alvarado for, among other public officials, HERNANDEZ. In exchange, Hernandez Alvarado promised

that if HERNANDEZ's election was successful, officials friendly to Diaz Morales and Hernandez Alvarado's drug trafficking would be placed in top law enforcement positions, and Hernandez Alvarado and Diaz Morales would have more access to information to assist with their criminal activities, including information about interdiction efforts of the Honduran National Police and Army.

        c.    Between in or about 2004 and in or about 2016, partly as a result of the above-referenced bribes paid to HERNANDEZ, Diaz Morales received sensitive information about law enforcement and the military in Honduras that was critical to his drug-trafficking organization. For example, Diaz Morales received information regarding operations of the Honduran Navy; efforts by the United States to train Honduran Air Force pilots to fly at night to conduct anti-narcotics operations; Honduran military radar capabilities, so that cocaine plane shipments could avoid detection; and interdiction efforts by certain Honduran National Police officials. During in or about this same time period, Diaz Morales and Hernandez Alvarado worked together to transport through Honduras approximately 140,000 kilograms of United States-bound cocaine.

        d.    In or about 2009, HERNANDEZ's political ally, Porfirio Lobo Sosa, a/k/a "Pepe Lobo" ("Lobo Sosa"), began to campaign to become president of Honduras. Around that time,

HERNANDEZ and Lobo Sosa worked together to obtain approximately $2,000,000 in drug-trafficking proceeds from Amilcar Alexander Ardon Soriano, a/k/a "Chande" ("Ardon Soriano"), a former Honduran drug trafficker and the then-mayor of El Paraíso, Copán in Honduras. In exchange, HERNANDEZ and Lobo Sosa promised to protect Ardon Soriano from arrest and extradition to the United States, and to appoint Ardon Soriano's relative and co-conspirator ("CC-1") to a position in the Honduran national government.

e. In or about November 2009, Lobo Sosa was elected president of Honduras, and in or about January 2010, HERNANDEZ became president of the National Congress. Thereafter, and in exchange for the above-referenced $2,000,000 bribe from Ardon Soriano, HERNANDEZ and Lobo Sosa appointed CC-1 as the head of a Honduran government agency ("Agency-1"). In that role, and at the direction of HERNANDEZ and Lobo Sosa, CC-1 awarded government contracts to front companies controlled by drug traffickers to help those traffickers launder drug-trafficking proceeds.

f. After HERNANDEZ became president of the National Congress in or about January 2010, Hernandez Alvarado and Ardon Soriano participated in multiple cocaine shipments per month using various modes of transportation, including helicopters, planes, and boats. At least one of the helicopters Hernandez

Alvarado and Ardon Soriano used to transport cocaine was registered in the United States. With the promised support of HERNANDEZ and members of the Honduran National Police, Hernandez Alvarado and Ardon Soriano worked together to transport through Honduras more than approximately 30,000 kilograms of United States-bound cocaine. Secure in the knowledge that HERNANDEZ and other corrupt officials were protecting them, Hernandez Alvarado and Ardon Soriano stamped some of the cocaine that they trafficked with their initials, "TH" and "AA," respectively.

g. In or about 2012, HERNANDEZ publicly supported an amendment to the Honduran Constitution that, for the first time, authorized the extradition of Honduran nationals to the United States to face prosecution for drug-trafficking charges. During private meetings, however, HERNANDEZ, Hernandez Alvarado, and other prominent public officials in Honduras promised to protect their drug-trafficking allies from arrest and extradition to the United States in exchange for large payments of drug-trafficking proceeds and support in upcoming elections.

h. In or about 2013, HERNANDEZ began campaigning to become president of Honduras. In connection with his campaign, HERNANDEZ accepted approximately $1,000,000 in drug-trafficking proceeds from Guzman Loera that was paid to HERNANDEZ through Hernandez Alvarado. Around this time, Hernandez Alvarado was

8

working in coordination with Ardon Soriano and another drug-trafficking organization led by Miguel Arnulfo Valle Valle ("Miguel Valle") and Luis Antonio Valle Valle ("Luis Valle") to provide the Sinaloa Cartel, then led by Guzman Loera, with mass quantities of cocaine and with armed security for the transport of those shipments through Honduras. HERNANDEZ sent Hernandez Alvarado and an associate, armed with machineguns, to collect the $1,000,000 bribe from Guzman Loera. In exchange for the $1,000,000 from Guzman Loera, HERNANDEZ promised to continue protecting the Sinaloa Cartel's drug-trafficking activities in Honduras.

   i. In or about 2013, in the lead-up to the Honduran presidential election, HERNANDEZ directed CC-1 and others to bribe certain politicians and election officials using HERNANDEZ's campaign funds, which were financed in part from drug-trafficking proceeds, in order to ensure HERNANDEZ won the election. As part of those efforts, CC-1 and others traveled to various municipalities that were not sufficiently supporting HERNANDEZ, and bribed officials who controlled voting centers to manipulate the vote count in HERNANDEZ's favor. In exchange for this election fraud, HERNANDEZ protected and supported Ardon Soriano's drug-trafficking activities.

   j. In or about 2013 and 2014, around the time HERNANDEZ was elected president of Honduras, as part of his ongoing

participation in the cocaine-trafficking conspiracy, HERNANDEZ partnered with Geovanny Fuentes Ramirez ("Fuentes Ramirez"), a violent Honduran drug trafficker who operated a cocaine laboratory in Honduras. During the course of several meetings, (i) Fuentes Ramirez provided HERNANDEZ with approximately $25,000, on the understanding that HERNANDEZ would facilitate protection for Fuentes Ramirez from law enforcement scrutiny; (ii) HERNANDEZ told Fuentes Ramirez, in substance and in part, that HERNANDEZ wanted access to a cocaine laboratory controlled by Fuentes Ramirez because of its proximity to a port in Honduras; (iii) HERNANDEZ agreed with Fuentes Ramirez to facilitate the use of Honduran armed forces personnel as security for Fuentes Ramirez's drug-trafficking activities; (iv) HERNANDEZ told Fuentes Ramirez, in substance and in part, that Hernandez Alvarado was managing drug-trafficking activities in Honduras and that Fuentes Ramirez should report directly to Hernandez Alvarado for purposes of drug trafficking; and (v) HERNANDEZ informed Fuentes Ramirez, in substance and in part, that HERNANDEZ was going to "stuff the drugs right up the noses of the gringos."

    k.  In or about 2014, when HERNANDEZ was president of Honduras, HERNANDEZ met with Hernandez Alvarado, Ardon Soriano, and CC-1, among others, to discuss the pending extraditions of Miguel Valle and Luis Valle to the United States. During the

course of that meeting, HERNANDEZ said, in substance and in part, that HERNANDEZ had decided to extradite the Valles in response to reports that the Valles planned to assassinate HERNANDEZ, but that HERNANDEZ would not extradite his drug-trafficking allies, including Ardon Soriano.

l.  In or about 2017, while HERNANDEZ was campaigning to be reelected as president of Honduras, HERNANDEZ met with Ardon Soriano in Copán, Honduras. During the course of that meeting, HERNANDEZ said, in substance and in part, that he was concerned about obtaining enough votes for reelection and asked Ardon Soriano to finance his campaign activities in Copán and Lempira, Honduras, in exchange for continuing to protect Ardon Soriano from arrest and extradition. Ardon Soriano agreed, and he used approximately $1,500,000 in drug-trafficking proceeds to, among other things, bribe other politicians and election officials to support HERNANDEZ in the 2017 election. HERNANDEZ was then reelected as president of Honduras.

m.  In or about 2018, Hernandez Alvarado was charged in the Southern District of New York in connection with his participation in the cocaine-trafficking conspiracy, and he was subsequently convicted after trial on or about October 18, 2019 of offenses including conspiring to import cocaine into the United States, possessing machineguns and destructive devices in

furtherance of that drug-trafficking conspiracy, and conspiring to possess machineguns and destructive devices in furtherance of that drug-trafficking conspiracy. While Hernandez Alvarado's case was pending, HERNANDEZ continued to coordinate closely with drug traffickers in Honduras in furtherance of the conspiracy. For example, on or about May 29, 2019, the day after HERNANDEZ was publicly identified in court filings as one of Hernandez Alvarado's co-conspirators, Fuentes Ramirez visited HERNANDEZ's presidential residence, and Fuentes Ramirez thereafter continued to pay HERNANDEZ bribes for protection, totaling hundreds of thousands of Honduran lempiras.

n. During Hernandez Alvarado's trial, a photograph recovered from Hernandez Alvarado's cellphone that depicts a machinegun inscribed with HERNANDEZ's name was introduced as evidence. Also introduced as evidence at Hernandez Alvarado's trial were drug ledgers belonging to another former Honduran drug trafficker ("CC-2") that contained notations with Hernandez Alvarado's name and HERNANDEZ's initials, "JOH," along with corresponding entries reflecting large payments to HERNANDEZ and Hernandez Alvarado. About a week after Hernandez Alvarado was convicted, on or about October 26, 2019, prisoners armed with machetes and a firearm murdered CC-2 in a Honduran prison to

prevent CC-2's potential cooperation against, among others, HERNANDEZ.

## STATUTORY ALLEGATIONS

6. From at least in or about 2004, up to and including in or about 2022, in Honduras, Guatemala, Venezuela, Colombia, Mexico, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others known and unknown, at least one of whom has been first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

7. It was a part and an object of the conspiracy that JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

8. It was further a part and an object of the conspiracy that JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to

believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

9. It was further a part and an object of the conspiracy that JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others known and unknown, would and did, on board an aircraft registered in the United States, manufacture, distribute, and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 959(c) and 960(a)(3).

10. The controlled substance that JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, conspired to (i) import into the United States and into the customs territory of the United States from a place outside thereof, (ii) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, and (iii) manufacture, distribute, and possess with intent to distribute on board an aircraft registered in the United States, was five kilograms and more of mixtures and substances containing

a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and Title 18, United States Code, Section 3238.)

## COUNT TWO
### (Possession of Machineguns and Destructive Devices)

The Grand Jury further charges:

11. Paragraphs 1 through 5 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

12. From at least in or about 2004, up to and including in or about 2022, in Honduras, Guatemala, Venezuela, Colombia, Mexico, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, and for which at least one of two or more joint offenders has been first brought to and arrested in the Southern District of New York, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, the cocaine importation conspiracy charged in Count One of this Superseding Indictment, knowingly used and carried firearms, and, in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of

firearms, to wit, machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

        (Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2.)

## COUNT THREE
(Conspiracy to Possess Machineguns and Destructive Devices)

The Grand Jury further charges:

13. Paragraphs 1 through 5 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

14. From at least in or about 2004, up to and including in or about 2022, in Honduras, Guatemala, Venezuela, Colombia, Mexico, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others known and unknown, at least one of whom has been first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

15. It was a part and an object of the conspiracy that JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, and others

16

known and unknown, would and did, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, the cocaine importation conspiracy charged in Count One of this Superseding Indictment, knowingly use and carry firearms, and, in furtherance of such crime, knowingly possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(1)(B)(ii).

(Title 18, United States Code, Sections 924(o) and 3238.)

### FORFEITURE ALLEGATION
### (As to Count One)

16. As a result of committing the controlled substance offense charged in Count One of this Superseding Indictment, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of the offense, and any and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the offense charged in Count One of this Superseding Indictment.

**FORFEITURE ALLEGATION**
**(As to Counts Two and Three)**

17.  As a result of committing the firearms offenses charged in Counts Two and Three of this Superseding Indictment, JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms and ammunition involved in and used in the commission of the offenses charged in Counts Two and Three of this Superseding Indictment.

Substitute Assets Provision

18.  If any of the above-described forfeitable property, as a result of any act or omission of JUAN ORLANDO HERNANDEZ, a/k/a "JOH," the defendant:

- a. cannot be located upon the exercise of due diligence;
- b. has been transferred or sold to, or deposited with, a third person;
- c. has been placed beyond the jurisdiction of the Court;
- d. has been substantially diminished in value; or
- e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United

States Code, Sections 853(p) and 970, and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 853 & 970; and
Title 28, United States Code, Section 2461(c).)

FOREPERSON

/s/ Damian Williams
DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JUAN ORLANDO HERNANDEZ,
a/k/a "JOH,"

Defendant.

SUPERSEDING INDICTMENT

S7 15 Cr. 379 (PKC)

(21 U.S.C. § 963; and
18 U.S.C. §§ 924, 3238, 2.)

DAMIAN WILLIAMS
United States Attorney.

A TRUE BILL

Foreperson.

Arrest Warrant + Superseding Indictment filed before OTW @ 1/27/22