M5a2HerC kjc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,             New York, N.Y.

          v.                          S7 15 Cr. 379 (PKC)

JUAN ORLANDO HERNANDEZ,

               Defendant.

------------------------------x       Arraignment

                                      May 10, 2022
                                      11:00 a.m.
```

Before:

                 HON. P. KEVIN CASTEL,

                                  District Judge

                        APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  JACOB H. GUTWILLIG
    ELINOR L. TARLOW
    Assistant United States Attorneys

RAYMOND L. COLON
DANIEL PEREZ
    Attorneys for Defendant

Also Present:

Gabriel Mitre, Spanish Interpreter

2
M5a2HerC kjc

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE COURT:  This is United States of America v. Juan |
| 3 | Orlando Hernandez.  Appearing for the government, please. |
| 4 | MR. GUTWILLIG:  Good morning, your Honor.  Jacob |
| 5 | Gutwillig for the government, and seated with me at counsel |
| 6 | table is my colleague Elinor Tarlow. |
| 7 | THE COURT:  All right.  Good morning to you both. |
| 8 | And appearing for the defendant?  And you may remain |
| 9 | seated. |
| 10 | MR. COLON:  Thank you, your Honor.  Good morning, your |
| 11 | Honor.  Raymond Colon on behalf of Juan Orlando Hernandez |
| 12 | Alvarado.  To my right is Mr. Daniel Perez.  He is an attorney. |
| 13 | He will be -- with the Court's pleasure, he will be sitting |
| 14 | here today before you. |
| 15 | THE COURT:  All right.  Good morning to you all, as |
| 16 | well. |
| 17 | Now, if it is the circumstance that you are sitting in |
| 18 | the well of the courtroom and you are fully vaccinated and |
| 19 | three feet or more from the person next to you, you may, if you |
| 20 | wish, remove your face mask, but you need not do so.  All |
| 21 | right? |
| 22 | So first off, I have a superseding indictment.  And |
| 23 | Mr. Colon, has the defendant received, reviewed, and discussed |
| 24 | with you the superseding indictment lodged under docket number |
| 25 | S7 15 Cr. 379? |

---

(Case called)

THE COURT:  This is United States of America v. Juan Orlando Hernandez.  Appearing for the government, please.

MR. GUTWILLIG:  Good morning, your Honor.  Jacob Gutwillig for the government, and seated with me at counsel table is my colleague Elinor Tarlow.

THE COURT:  All right.  Good morning to you both.

And appearing for the defendant?  And you may remain seated.

MR. COLON:  Thank you, your Honor.  Good morning, your Honor.  Raymond Colon on behalf of Juan Orlando Hernandez Alvarado.  To my right is Mr. Daniel Perez.  He is an attorney. He will be -- with the Court's pleasure, he will be sitting here today before you.

THE COURT:  All right.  Good morning to you all, as well.

Now, if it is the circumstance that you are sitting in the well of the courtroom and you are fully vaccinated and three feet or more from the person next to you, you may, if you wish, remove your face mask, but you need not do so.  All right?

So first off, I have a superseding indictment.  And Mr. Colon, has the defendant received, reviewed, and discussed with you the superseding indictment lodged under docket number S7 15 Cr. 379?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    MR. COLON:  Yes, he has, your Honor.

2    THE COURT:  Does he waive the public reading of that
3    indictment?

4    MR. COLON:  He does, your Honor.

5    THE COURT:  All right.  And Juan Orlando Hernandez,
6    how do you plead to the charges in the indictment?  Guilty or
7    not guilty.

8    THE DEFENDANT:  Not guilty, your Honor.

9    THE COURT:  All right.  Thank you very much.

10   Let me hear from the government.  What is the nature
11   of the discovery in this case and when does the government
12   anticipate having all of the discovery materials produced to
13   the defense?

14   MR. GUTWILLIG:  Yes, your Honor.  The discovery
15   materials in this case include things like recordings of
16   meetings, subpoena returns, extractions from electronic
17   devices, search warrants, and returns from social media
18   accounts, including accounts belonging to the defendant, and
19   also physical evidence.

20   The government received from defense counsel today a
21   hard drive on which the government will load discovery.  We
22   have conferred with defense counsel.  The government would
23   request 60 days to complete its production of discovery,
24   although of course we will endeavor to and will make
25   productions on a rolling basis during that time period.

1    THE COURT:  All right.  Well, a couple of questions
2 for you.  Is this a case where there are any Title III
3 wiretaps?
4    MR. GUTWILLIG:  Yes, your Honor.
5    THE COURT:  And any returns on any search warrants?
6    MR. GUTWILLIG:  Yes, your Honor.
7    THE COURT:  Okay.  And are there any post-arrest
8 statements?
9    MR. GUTWILLIG:  No, your Honor.
10    THE COURT:  All right.  So if this is produced in 60
11 days, Mr. Colon, you are going to need some time to look at the
12 material and to be in a position to return to court to advise
13 me whether you have any motions you wish to make in this case.
14 Is that correct?
15    MR. COLON:  Yes, sir.
16    THE COURT:  All right.  And would it be convenient for
17 you to come back in approximately 120 days to advise the Court
18 whether there are any motions you wish to make in this case?
19    MR. COLON:  It would be convenient and at your
20 pleasure of course, your Honor.
21    THE COURT:  Okay.  So let's see what we can do here.
22    So I believe my deputy is on.  Let's see whether we
23 can get you a date in the latter half of September to return to
24 court.  Flo?
25    THE DEPUTY CLERK:  Yes, I'm here.  Hold on one second.

1     THE COURT:  In the meantime, let me advise as follows.
2 I direct the prosecution to comply with its obligations, under
3 *Brady v. Maryland* and its progeny, to disclose to the defense
4 all information, whether admissible or not, that is favorable
5 to the defendant, material either to guilt or to punishment,
6 and known to the prosecution.
7     Possible consequences for noncompliance may include
8 dismissal of individual charges or the entire case, exclusion
9 of evidence, and professional discipline or court sanctions on
10 the attorneys responsible.
11     There is a written order more fully describing this
12 obligation and the possible consequences of failing to meet it,
13 and I direct the prosecution to review and comply with that
14 order.
15     Does the prosecution confirm that it understands its
16 obligations and will fulfill them?
17     MR. GUTWILLIG:  Yes, your Honor.
18     MR. COLON:  Yes, your Honor.
19     THE COURT:  All right.  Flo, whenever you are ready.
20     THE DEPUTY CLERK:  September 28 at 11 a.m.
21     THE COURT:  September 28 at 11 a.m.
22     Does that work for you, Mr. Colon?
23     MR. COLON:  It does, your Honor.  Thank you.
24     THE COURT:  And for the government.
25     MR. GUTWILLIG:  That works, your Honor.

1    THE COURT:  All right.  And if there is nothing else
2  from you, Mr. Colon, then I will invite the government to make
3  its final application.
4    MR. GUTWILLIG:  Yes, your Honor.
5    THE COURT:  Just one moment.  Mr. Colon, anything
6  else?
7    MR. COLON:  Yes, Judge.  I would like to put something
8  on the record.  I will remain seated.
9    THE COURT:  Yes, you may remain seated.
10    MR. COLON:  Your Honor, I have the honor of
11  representing Juan Orlando Hernandez Alvarado, and I say that
12  especially in this case.  As you know, your Honor, he is the
13  former president of Honduras.  These are all his compatriots
14  back there behind us.  That's how much they show their
15  adoration for him.
16    But I want to get to the point where we talk about the
17  way my client has been treated or at least his access and other
18  issues.  And I will say, Judge, I probably should have said
19  this at the outset, that if it wasn't for the government's
20  intervention, quite frankly, I would not have gotten the
21  ability yesterday to see my client for almost three hours, so I
22  would like to thank the government.  They were very diligent in
23  terms of following up with my request.  We have had constant
24  communications since I have been -- since I was retained.  They
25  have made it easy, something that I had very -- a lot of

1   difficulty getting in to see my client.  I was allowed the
2   first time I went.  After that I was turned away at least on
3   three occasions.
4              THE COURT:  He is at the MDC?
5              MR. COLON:  He is at the MDC and I can't, for the love
6   of me, understand why I would be turned away.  I was told I
7   needed F.B.I. authorization, which the U.S. Attorney had
8   attempted to facilitate.  They had no idea what I was talking
9   about.  It was very difficult.  There was a lapse of about 14
10  days, and that can be very -- it undermines the Sixth Amendment
11  right to counsel, quite frankly, Judge.  And I know there was
12  no intention on the government's part, but it was very
13  difficult.  It was frustrating for my client to understand
14  that.
15             So I have spoken to the government.  They are going to
16  follow up, so I don't have to do a daily vetting process, so I
17  can get in, so that I can go in like I have been at MDC
18  hundreds of times as a CJA attorney in Eastern District.
19             I have to say also, Judge, that my client, he asks for
20  no more, but no less than what everybody else that's detained
21  and in the custody, care and custody of the United States
22  government.  Since he arrived, he's been denied commissary
23  privileges.  The BOP says that they are working on it, but they
24  don't really give him a good basis or a rationale as to why.
25  So family or even counsel, my staff have tried to deposit

1    money.  It's rejected.  He's been there for --

2              (Defense counsel and defendant confer)

3              MR. COLON:  -- 20 days without any access to the

4    commissary.  He has also not been allowed to call his family.

5    He is essentially *incommunicado* with respect to his family or

6    call counsel, for that matter.  I have to rely on paralegals

7    that go there who have had unfettered access to my client, and

8    I can't understand why.

9              THE COURT:  So your paralegals have unfettered access

10   to him, but you have more restricted access.

11             MR. COLON:  Yes.

12             THE COURT:  Is that what you are telling me?

13             MR. COLON:  Yes, absolutely.  And I don't think I am

14   on anybody's watch list, so I don't see why this is happening.

15   And I spoke to the paralegals and they said they haven't done

16   any different or additional vetting process.

17             He also has been denied access to e-mails or e-mail

18   communications, which all those inmates or all those detainees

19   have.  So it is very difficult for counsel to have an ongoing

20   communicative process or dialogue with my client.  It can't

21   have 14-day gaps.

22             To make things worse, Judge, he is confined in an

23   absolutely specially segregated unit.  I understand how jails

24   work.  I was Assistant Commissioner of Correction in New York.

25   You couldn't ask for a worse penal system.  This is 30 years

1   ago. I was special counsel in Puerto Rico for the Corrections.
2   I know how jails work. I respect the rules that govern the
3   protocol.
4            But I don't understand why he has only been allowed
5   one, one day -- or one hour of exercise in the 20 days in the
6   basketball court, in the basketball court. They don't give him
7   a ball, whether basketball or soccer ball, but one day of
8   exercise. He's essentially been held 24 hours a day in
9   solitary confinement.
10           THE COURT: Is he out of the intake unit?
11           MR. COLON: It is not an intake unit that I know of.
12  It's a segregated unit.
13           THE COURT: So he is in the segregated housing unit at
14  this point.
15           MR. COLON: Right. Not because of any disciplinary
16  issue.
17           THE COURT: I understand.
18           MR. COLON: It's a special unit, K84, on the eighth
19  floor. He is the only inmate there. He has no contact with
20  other individuals. You know, Judge, he is -- he is a defendant
21  in this case, obviously, and he can't get any more but should
22  get no less benefits, but he is being treated like a prisoner
23  of war, not like every other inmate. And I'm not asking him to
24  get special treatment because he is a former head of state, but
25  those conditions, Judge, are psychologically debilitating. And

1  I know it is not the government's fault.  This is BOP's doing.
2  Respectfully, your Honor, we are asking that somehow the Court
3  intervene if this doesn't get cured.  I know the government has
4  reached out to me, they are going to try to remedy these
5  conditions, because there really is no justification in terms
6  of care and custody and that protocol that governs jails or
7  prisons or detention facility.  He is not a terrorist.  He
8  hasn't harmed anybody.  There is no violence on his -- in his
9  history.  So we need to have somebody address --
10           THE COURT:  I got the point.  So I went out to the MDC
11  myself and did an inspection tour of both the east and the west
12  wing about a month ago, and I found the staff there to be very
13  responsive and making pledges to continue to be responsive.
14           So what I am going to do here is I am going to task
15  the government with making contact with the staff at the MDC
16  and discussing the situation such that you, as the prosecutor,
17  have an understanding of any restrictions on Mr. Colon's access
18  to his client and what the basis is there, if any, for any
19  security restriction placed on the defendant in this case.  I
20  am going to ask you to do that and report to me in one week,
21  seven days.  If there is material that needs to be under seal,
22  so be it.  That portion of the letter can be under seal.  But
23  anything that is -- does not fall into that category should be
24  on the public record.  So let's find out.  I know of no reason
25  that I can imagine why he wouldn't have the ability to make

1    family calls, e-mail counsel, for example, have commissary
2    privileges. Those are standard matters.
3            As to his classification and placement in the SHU, I
4    know not the reason and, as Mr. Colon expresses an
5    understanding, that's not what we do as the judiciary, it's not
6    what the prosecution does, although they may have some input
7    into the process regarding classification or a designation of a
8    prisoner.
9            So thank you for bringing it to my attention. Let's
10   see whether we can get a prompt report and corrective action as
11   appropriate.
12           MR. GUTWILLIG: Yes.
13           THE COURT: And then if, Mr. Colon, after that report,
14   if you need to engage me in the process, you will write to me
15   and I will see what I can do beyond that.
16           MR. COLON: Judge. Thank you very much. I can only
17   say that our communications with the government have been very
18   professional and courteous. I presume it's going to remain
19   that way. That's how I litigate cases. And I have to say I'm
20   very grateful and my client is very grateful to the government,
21   sir.
22           THE COURT: All right. Excellent.
23           All right. If -- is that it, Mr. Colon?
24           MR. COLON: Yes, sir.
25           THE COURT: Is there anything that the government

1  wishes to raise?

2      MR. GUTWILLIG: One additional matter, your Honor.

3      THE COURT: Yes.

4      MR. GUTWILLIG: The government is in the process of

5  determining whether any classified briefing will be necessary

6  in this matter, and we would propose writing to your Honor with

7  a status update in 60 days on that topic.

8      THE COURT: All right. And if you are able to do that

9  sooner, that's the better. So I appreciate your giving me a

10 heads up on that.

11     All right. If there is nothing else, you can make

12 your final application, then.

13     MR. GUTWILLIG: Yes, your Honor. The government would

14 move to exclude time under the Speedy Trial Act until the date

15 of the next conference, September 28, in order for the

16 government to review and produce discovery and for the

17 defendant to review discovery and discuss it with counsel.

18     THE COURT: Any objection?

19     MR. COLON: No objection, your Honor. Thank you, sir.

20     THE COURT: All right. I find that the ends of

21 justice will be served by granting a continuance until

22 September 28 and that the need for a continuance outweighs the

23 best interests of the public and the defendant in a speedy

24 trial. The reasons for my finding are that the time is needed

25 to enable the government to make discovery available, for

1  defense counsel to review it, to be in a position to advise the
2  Court whether there are any motions it wishes to make, and
3  accordingly, the time between today and September 28 is
4  excluded under the Speedy Trial Act.
5      One other thing is I anticipate setting a schedule for
6  trial in this case when we get together on September 28.  At
7  present, and I want -- this is for the purposes of blocking out
8  your calendars.  At present my plan is to impanel a jury early
9  next year, so I have looked at the calendar and it looks like
10 Tuesday, January 17, 2023, would work for a trial in this
11 action, and so I am directing you to keep that open on your
12 calendar and we will make a more refined schedule leading up to
13 that trial date when we next gather in September.
14     If there is nothing further, we are adjourned.  Thank
15 you all very much.
16     MR. COLON:  Thank you, your Honor.
17     MR. GUTWILLIG:  Thank you, your Honor.
18                              oOo