

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 13, 2022

<u>Via ECF (Without Exhibit A) & Email</u>
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Juan Orlando Hernandez*,
               S7 15 Cr. 379 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter requesting that the Court issue a Protective Order, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, finding that the Government need not produce to the defendant an application to intercept electronic communications pursuant to Title III of the United States Code (the "Wiretap Application"). The Wiretap Application resulted in the lawful interception of June 2016 electronic communications by individuals other than the defendant—in connection with a sensitive ongoing investigation—regarding what appears to be a photograph of a kilogram of cocaine bearing a stamp with the letters "TH," *i.e.*, the initials of the "Tony Hernandez" alias of Juan Antonio Alvarado Hernandez ("Tony Hernandez"), the defendant's brother and a co-defendant in this case.

      The Court previously granted a similar application in the Tony Hernandez prosecution, *United States v. Juan Antonio Alvarado Hernandez*, S2 15 Cr. 379 (PKC) (*see* Dkt. Nos. 35, 38). For substantially the same reasons, and as described below, the Government should not be required to produce the Wiretap Application to the defendant because: (i) the defendant lacks standing to challenge the Wiretap Application because his communications were not intercepted and he was not targeted by the wiretap, (ii) the Wiretap Application is not otherwise discoverable under Rule 16 because the defendant cannot establish that the document is material to the preparation of his defense, and (iii) even if the defendant could establish that the Wiretap Application is discoverable, "good cause" exists for withholding the document from discovery under Rule 16(d)(1) because it is protected by the law enforcement privilege.

      In further support of this motion, the Government respectfully submits the enclosed *ex parte* declaration (Exhibit A (the "Declaration")), which includes the Wiretap Application, for *in camera* review. Also appended to this motion are the relevant intercepted communications (the "Intercepts"), in both the translation summary form submitted with the previous application in the Tony Hernandez prosecution (Exhibit B-1, *see also* Dkt. No. 35 Ex. B) and the translated version of the Intercepts ultimately admitted during the Tony Hernandez trial (Exhibit B-2). In light of

the sensitive nature of the Declaration, the Government respectfully requests that Exhibit A be filed *ex parte* and under seal, consistent with the treatment of the parallel declaration and exhibit filed in support of the motion in the Tony Hernandez prosecution. A proposed order, which is substantially identical to the one entered by this Court in *United States v. Juan Antonio Hernandez Alvarado* (*see* Dkt. No. 38), is attached hereto as Exhibit C.

## I. Background

The Intercepts, including the photograph of the kilogram bearing Tony Hernandez's initials, are relevant in this case. The Government expects that, at trial, it will introduce evidence that the defendant supported and protected Tony Hernandez's drug trafficking activities, including during the time period when Tony Hernandez manufactured cocaine—such as the kilogram depicted in the intercepted photograph—in a drug laboratory. During the October 2019 trial of Tony Hernandez, multiple witnesses testified about Tony Hernandez working with other drug traffickers to distribute "TH"-stamped cocaine during the same time period, in approximately 2009, when certain of those drug traffickers were making campaign contributions to the defendant in exchange for protection for their drug trafficking activities. (*See, e.g.*, Hernandez Trial Tr. 150-52, 195-200, 203-04, 206-07, 209, 919-21). During the March 2021 trial of Geovanny Fuentes Ramirez, the Government offered additional evidence that the defendant conspired with Tony Hernandez to traffic cocaine. Jose Sanchez testified that during a meeting he witnessed between the defendant and Fuentes Ramirez, the defendant "provided Mr. Fuentes Tony's cell phone number so he would put himself at his disposal," meaning that Fuentes Ramirez "would be following Tony's instructions . . . [f]or the transportation of drugs." (Fuentes Ramirez Trial Tr. 695). At the defendant's trial, the Government expects to offer similar testimony showing the defendant's participation in drug trafficking with Tony Hernandez to establish the relevance of the Intercepts to this prosecution.

The Government expects that, at trial, it will lay an evidentiary foundation for the photograph of the kilogram, irrespective of the wiretap that led to its interception, through the testimony of at least one cooperating witness with personal knowledge of the "TH" cocaine stamp who recognizes the stamp in the picture form the Intercepts. The Government adopted a similar approach in admitting the same evidence during the Tony Hernandez trial.[1] (*See* Hernandez Trial Tr. 149-50, 521-25). Here, as in the Tony Hernandez prosecution, the Government intends to file a motion *in limine* seeking pretrial rulings regarding the admissibility of the Intercepts, and it is appropriate for the Court to enter the proposed order protecting the Wiretap Application from disclosure.

## II. Applicable Law

### A. Rule 16 and Protective Orders

Rule 16(a)(1)(E) requires production of documents that are "within the government's possession, custody, or control" and "material to preparing the defense." "Evidence

---

[1] The photograph of the kilogram bearing the "TH" stamp also was admitted into evidence at the Fuentes Ramirez trial. (*See* Fuentes Ramirez Trial Tr. 993-94).

The Honorable P. Kevin Castel                                                                                           Page 3
September 13, 2022

qualifies as material if it 'could be used to counter the government's case or to bolster a defense'; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule." *United States v. Zelaya-Romero*, No. 15 Cr. 174 (LGS), 2018 WL 1033235, at *1 (S.D.N.Y. Feb. 21, 2018) (quoting *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017)). The defendant bears the burden of "demonstrate[ing] that the [documents] are material to the preparation of the defense." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991).

   Even where a defendant establishes that a document is discoverable under Rule 16(a)(1)(E), Rule 16(d)(1) authorizes the Court, upon a showing of "good cause," to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." "Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. Dec. 4, 2013) (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)). "The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*." Fed. R. Crim. P. 16(d)(1); *see also United States v. Kerik*, No. 07 Cr. 1027 (LAP), 2014 WL 12710346, at *2 (S.D.N.Y. July 23, 2014) ("A court may review *ex parte* submissions *in camera* to determine if there is good cause for documents to be subject to a Protective Order.").

### B. Standing Under Title III and the Fourth Amendment

   Only an "'aggrieved person' may make a motion to suppress wiretap evidence." *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988) (quoting 18 U.S.C. § 2518(10)(a))). The term "aggrieved person" means "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). Although Title III standing must be "construed in accordance with standing requirements usually applied to suppression claims under the [F]ourth [A]mendment," "'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.'" *Gallo*, 863 F.2d at 192 (quoting *Alderman v. United States*, 394 U.S. 165, 171-72 (1969)).

### C. The Law Enforcement Privilege

   "The law enforcement privilege is designed 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *United States v. Abdalla*, 346 F. Supp. 3d 420, No. 14 Cr. 716 (VM), 2018 WL 5819799, at *6 (S.D.N.Y. Oct. 23, 2018) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). In *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010), the Second Circuit articulated the framework for analyzing the privilege.

   First, "[t]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." *Id.* at 944.

> To meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to "law enforcement techniques and procedures," information that would undermine "the confidentiality of sources," information that would endanger "witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," and information that would "otherwise . . . interfere[ ] with an investigation."

*Id.* (quoting *Dep't of Investigation*, 856 F.2d at 484). "An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." *Id.* (internal quotation marks omitted).

Second, "[o]nce the party asserting the privilege successfully shows that the privilege applies," "[t]here is a 'strong presumption against lifting the privilege.'" *Id.* at 948 (quoting *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)). A "strong presumption" is necessary because "[t]he heart of" the Second Circuit's "concern over lifting the privilege is with the principle that control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights." *Id.* at 945 n.22 (internal quotation marks and alterations omitted). Thus, "[t]o determine whether the privilege must give way, a court must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." *Id.* at 950. "[T]he party seeking disclosure must show (1) that its [basis for pursuing disclosure] is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." *Id.* at 945 (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984)).[2]

### III. Discussion

The Court should grant the requested Protective Order substantially for the same reasons the Court previously granted similar relief in *United States v. Juan Antonio Alvarado Hernandez*: the defendant lacks standing to challenge the Wiretap Application, the Wiretap Application is not discoverable, and the Wiretap Application is protected by the law enforcement privilege.

---

[2] The Second Circuit's decision in *In re The City of New York* arose from a mandamus petition related to a civil discovery order, and thus described the requirement that the "party seeking disclosure must show . . . that *its suit* is non-frivolous and brought in good faith." 607 F.3d at 945 (internal quotation marks omitted; emphasis added). District courts have nevertheless applied *In re The City of New York* in criminal cases requiring evaluation of the law enforcement privilege. *E.g.*, *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 494 (S.D.N.Y. 2018) ("To overcome the law enforcement privilege, the defendant must show (1) that such evidence is necessary, or at least important, to his case; and (2) that there is not an alternative means to secure and present this evidence to the jury.").

The Honorable P. Kevin Castel                                                                                          Page 5
September 13, 2022

      First, the defendant's communications were not intercepted pursuant to the judicial authorization that resulted from the Wiretap Application, and the wiretap did not target the defendant. Thus, the defendant is not "aggrieved" for purposes of Title III, 18 U.S.C. § 2510(11), and the wiretap did not involve a search of areas in which he had a reasonable expectation of privacy under the Fourth Amendment. Therefore, the defendant lacks standing to move to suppress the Intercepts.

      Second, the Wiretap Application is not "material to preparing the defense" under Rule 16. The document does not contain exculpatory information, and it could not "be used to counter the government's case or to bolster a defense." *Ulbricht*, 858 F.3d at 109. For example, the defendant cannot establish materiality under Rule 16 based on the fact that the individuals who exchanged the photograph of the kilogram were not in direct contact with the defendant on the communications facility targeted by the wiretap; that fact merely suggests that the kilogram was advertised by and/or sold to downstream purchasers of cocaine in Central America after it was produced. Under these circumstances, the defendant cannot meet his burden of establishing that the Wiretap Application is discoverable.

      Third, the Declaration establishes that the Wiretap Application is protected by the law enforcement privilege. The Application contains nearly all of the types of information that the Second Circuit has held, emphatically, that the privilege is designed to protect: information regarding investigative techniques and procedures (including steps taken by foreign law enforcement), identifying information regarding confidential sources and other witnesses, and information that could compromise ongoing investigations and operations. *See In re The City of New York*, 607 F.3d at 944. Unwarranted disclosure of the information in the Wiretap Application would place witnesses and law enforcement personnel in danger, and also "hinder" the ability of law enforcement to "conduct future [similar] investigations." *Id.*; *see also id.* at 943 ("[I]f we require the disclosure of the Field Reports, other police officers may be less willing to become undercover agents if they fear that their identities may be disclosed in court proceedings."); Fed. R. Crim. P. 16, advisory committee note to 1966 Amendment (identifying as relevant considerations the "safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security"). To date, defense counsel has not identified to the Government the type of "compelling need" necessary to rebut the presumptive protection of the Wiretap Application afforded by the law enforcement privilege, *In re The City of New York*, 607 F.3d at 944, and it appears that any such need would not "outweigh[] the public interest[s] in nondisclosure" established in the Declaration, *id.* at 945. Therefore, because the law enforcement privilege applies to the Wiretap Application, the Government has established "good cause" for non-disclosure under Rule 16(d)(1).

      Finally, less protective measures would not adequately address the legitimate concerns raised in the Declaration, particularly in light of the defendant's lack of standing to challenge the wiretap. Sensitive information relating to a variety of issues is disclosed throughout the Wiretap Application, which makes redactions infeasible and inappropriate under the circumstances presented by this case. *See id.* at 944 (finding disclosure of challenged documents in redacted form insufficient because "[p]ulling any individual 'thread' of an undercover operation may unravel the entire 'fabric' that could lead to identifying an undercover officer . . . thereby

The Honorable P. Kevin Castel  Page 6
September 13, 2022

impeding future investigations"). Disclosing the Wiretap Application on an attorney's-eyes-only basis is also an inadequate protection given the sensitivities associated with the document and the risks that would arise from even an unintentional but nevertheless unwarranted disclosure. *See id.* at 936 (reasoning that "if confidential law enforcement information is disclosed on an 'attorneys' eyes only' basis, the police may never know if their undercover operations have been compromised by an unauthorized disclosure of that information," even if the disclosures result from negligence or accident, because "there is often only ambiguous evidence that an undercover operation had been undermined"). Accordingly, for all of the reasons stated herein, the Government respectfully requests that the Court enter a Protective Order authorizing the Government not to disclose the Wiretap Application.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Jacob H. Gutwillig
Michael D. Lockard
Jason A. Richman
Elinor L. Tarlow
Assistant United States Attorneys
(212) 637-2215

Enclosures

Cc: Raymond Colon, Esq.
(Via ECF & Email, With Exhibits B-1 and B-2 Only)