

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 10, 2023

Curcio Hearing is scheduled for February 14, 2023 at 11:00 a.m. in Courtroom 11D.
SO ORDERED.
Dated: 2/10/2023

P. Kevin Castel
United States District Judge

**BY E-MAIL & ECF**
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: ***United States v. Juan Orlando Hernandez*, S7 15 Cr. 379 (PKC)**

Dear Judge Castel:

The Government respectfully writes to request that the Court hold a proceeding pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) in the above-captioned case. On January 9, 2023, Ms. Sabrina Shroff, Esq., entered a notice of appearance as additional counsel to assist defendant Juan Orlando Hernandez with any litigation relating to the Classified Information Procedures Act ("CIPA"). (Dkts. 505, 506). As described further below, Ms. Shroff previously represented two defendants—▮▮▮▮▮▮▮▮▮▮ ("CW-1") and ▮▮▮▮▮▮▮▮▮▮ ("CW-2")—who were charged in this District and were cooperating witnesses in related cases.[1] The Government believes that Ms. Shroff's prior representations of those witnesses may present conflicts of interest and requests that a *Curcio* hearing be conducted at which the defendant is advised of the nature of the potential conflicts and is given the opportunity to waive them. The Government respectfully submits the attached proposed lines of inquiry for the Court's use at the requested *Curcio* proceeding. *See* Ex. A.

I. **Applicable Law**

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). District courts have two separate obligations where counsel has a possible conflict of interest. First, the district court has an "inquiry obligation"

---

[1] The Government respectfully requests permission to redact any identifying information about these cooperating witnesses and their proffer statements, which information is highlighted in yellow, in the versions of this letter that are publicly filed and provided to the defendant and his co-counsel Mr. Ray Colon, Esq. The Government believes that revealing the identities of those cooperating witnesses and the information that those witnesses provided would present a serious risk to their safety at this time, particularly given the violence that has been carried out against other witnesses in this case.

when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994); *see Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002); *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

If, after inquiry, "the court discovers no genuine conflict, it has no further obligation." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). But if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a second, "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* proceeding to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant. *See Curcio*, 680 F.2d at 881.

"At the other end of the spectrum [from a finding of no conflict], if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to such a conflict in 'breadth and depth,' the court must . . . disqualify counsel." *Perez*, 325 F.3d at 125 (citations and quotations omitted). In the Second Circuit, *per se* conflicts have been found only in two classes of cases, and the Circuit has repeatedly refused to expand the rule beyond those categories: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti*, 234 F.3d at 823.

"And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125. An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action." *Schwarz*, 283 F.3d at 91 (applying standard derived from *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). To show actually divergent interests, "[s]peculation is not enough." *Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). By contrast, an attorney has a potential conflict if "'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *Perez*, 325 F.3d at 125 (citation omitted). The classification of a conflict as "actual" or "potential" can often be difficult or unclear, though drawing such a distinction may be unnecessary as most of both types of conflicts are subject to waiver.

With respect to waiver or disqualification, although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). "The courts do, of course, retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings. But absent such institutional concerns, courts will not assume too paternalistic an attitude in protecting the defendant from himself, and although the defendant's choice of counsel may sometimes seem woefully foolish to the court, the choice remains his." *Perez*, 325 F.3d at

2

125–26 (citations and quotations omitted). Where a conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation, then the court must disqualify the attorney. *See Levy*, 25 F.3d at 152–53. Such situations arise rarely, such as where counsel is implicated in related criminal conduct, or where counsel has a clear and significant personal financial interest in the matter that is directly contrary to the interests of his client. *See Perez*, 325 F.3d at 126–27 (discussing cases).

Finally, the Second Circuit has detailed the procedures for a *Curcio* inquiry:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Id.* at 119.

Moreover, as a general matter, attorneys appearing before courts in the Southern District of New York must abide by the New York State Rules of Professional Conduct. *See* Local Civil Rule 1.5(b)(5); Local Criminal Rule 1.1(b). Rule 1.7(a) of the New York Rules of Professional Conduct (the "NYRPC") provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing different interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Rule 1.7(b) provides that even if there is a concurrent conflict of interest under Rule 1.7(a), "a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing."

## II. Background

A.  (CW-1)

First, Ms. Shroff's prior representation of  presents a potential conflict.

███ The Rosenthal family controlled and operated a massive conglomerate of businesses in Honduras worth hundreds of millions of dollars, including one of the largest banks in Honduras, Banco Continental. Yani Rosenthal was a Honduran congressman and two-time candidate for president. Yankel Rosenthal was a member of the defendant's presidential cabinet and a former Honduran congressman.[2] ███ The Government expects that the trial evidence will show that the defendant also received bribes from the Rosenthals as well as helped them obtain business contracts to launder money.



███ n December 2013, Leonel Rivera Maradiaga ("Maradiaga")—a former Honduran drug trafficker and cooperating witness in this case—recorded a meeting with Carlos Lobo and Nicholas Rivera-Mena during which they confirmed that they had given the defendant $250,000 of drug trafficking proceeds. Once the defendant received the $250,000 payment and after he won the election, the defendant appointed Yankel Rosenthal to a cabinet-level position in his administration.

B. ███ (CW-2)

Second, Ms. Shroff's representation of ███ also raises a potential conflict.



---

[2] In August 2017, Yankel Rosenthal pled guilty to a money laundering offense, and in January 2018, he was sentenced to 29 months' imprisonment and a $50,000 fine. *United States v. Rosenthal*, No. 13 Cr. 413 (JGK) (S.D.N.Y.). On October 7, 2015, OFAC announced that it had designated Yani Rosenthal, Yankel Rosenthal, and Jaime Rosenthal as SDNs pursuant to the Kingpin Act. OFAC also designated various Rosenthal-controlled entities pursuant to the Kingpin Act. *See* Press Release, U.S. Dep't of the Treasury (Oct. 7, 2015), *available at* https://www.treasury.gov/press-center/press-releases/Pages/jl0200.aspx.

[3] Carlos Lobo pled guilty to a narcotics importation offense in the Southern District of Florida, and he was sentenced to a 240-month term of imprisonment. *See United States v. Lobo*, No. 11 Cr. 20358 (S.D. Fla.).

[REDACTED]

[REDACTED]⁵ Beginning in approximately 2002 until approximately 2010, Fernandez-Rosa worked closely with another Honduran drug trafficker and cooperating witness in this case—Victor Hugo Diaz Morales ("Rojo"). During that same period, Rojo made payments consisting of drug proceeds to the defendant's brother, Juan Antonio Alvarado Hernandez, and in return received protection for Rojo's and Fernandez-Rosa's drug shipments.

### III. Discussion

Ms. Shroff's representations of [REDACTED] and [REDACTED] present several potential conflicts. [REDACTED] Ms. Shroff will thus be required to represent different interests in this proceeding than she did in representing [REDACTED] and [REDACTED]. *See* NYRPC 1.7(a). The Government further has not yet decided whether it will call [REDACTED] or [REDACTED] as witnesses at trial. The Government has learned that [REDACTED] is available to testify if the Government wishes to call him as a witness and is still determining whether [REDACTED] is available to testify. Accordingly, in light of the information that those witnesses previously provided, their guilty pleas in related cases, and their possible

---

[4] The Government respectfully requests that the portions highlighted in green in this letter be filed *ex parte* since that information is not known to either defense counsel or the defendant and implicates witness safety.

[5] Hector-Emilio Fernandez-Rosa pled guilty in September 2015 and was sentenced to life imprisonment in August 2019. [REDACTED]

testimony in this case, the Government believes a *Curcio* hearing is appropriate to ensure that the defendant understands the scope of the potential conflicts and confirms whether he waives them.

Ms. Shroff's current representation also may present a conflict of interest for her former clients and Ms. Shroff may need to obtain a waiver from ▓▓▓▓ and/or ▓▓▓▓ if she were to proceed with her representation of the defendant. Pursuant to NYRPC 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The instant case is "substantially related" to Ms. Shroff's representation of ▓▓▓▓ and ▓▓▓▓ because it will involve testimony from cooperating witnesses that overlap with those defendants' cases. In addition, ▓▓▓▓ and ▓▓▓▓ interests are also "materially adverse" to those of the defendant. ▓▓▓▓ and ▓▓▓▓ were cooperating witnesses whose proffer statements likely will differ from the arguments presented by the defendant, including, for example, if the defendant were to dispute that the Rosenthals were involved in money laundering and bribery with the defendant. *See* NYRPC 1.9(a).

          \*          \*          \*

For the reasons set forth above, the Government respectfully requests that the Court hold a *Curcio* hearing to address the potential conflicts of interest identified above.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: _____/s/_____
Jacob H. Gutwillig / David J. Robles / Elinor L. Tarlow
Assistant United States Attorneys
(212) 637-2215 / 2550 / 1036

Cc: Defense counsel