# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

JUAN ORLANDO HERNANDEZ,
a/k/a "JUAN ORLANDO,"

Defendant.

S7 15 Cr. 379 (PKC)

FILED *IN CAMERA* AND UNDER SEAL
WITH THE CLASSIFIED INFORMATION
SECURITY OFFICER OR DESIGNEE

## GOVERNMENT'S MOTION PURSUANT TO SECTION 6(a) OF
## THE CLASSIFIED INFORMATION PROCEDURES ACT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

Jacob H. Gutwillig
David J. Robles
Elinor L. Tarlow
Kyle A. Wirshba
*Assistant United States Attorneys*
        *Of Counsel*

███████████████████████████████████

## (U) TABLE OF CONTENTS

I.   (U) Overview ...................................................................................................................1

II.  ████████████████████████████████████████████████████████ 3

III. (U) The Defendant's CIPA Section 5 Notice .............................................................5

IV.  (U) Relevant Law Under CIPA ...................................................................................6

    A. (U) CIPA Section 5 ............................................................................................... 6

    B. (U) CIPA Section 6 Hearing ................................................................................. 9

    C. (U) Use of Classified Information at Trial ........................................................... 12

    D. (U) CIPA and a Defendant's Testimony ............................................................. 13

V.   (U) Discussion ..........................................................................................................18

    A. (U) Juan Orlando's Testimony About the Fact that Certain Meetings with U.S.
       Government Officials Took Place Is Largely Irrelevant, Inadmissible Hearsay, and/or
       Fails Rule 403's Balancing Test ......................................................................... 25

        i.  (U) General Testimony About Meetings with U.S. Government Officials ............... 26

        ii. (U) The Identities of U.S. Government Agencies or Officials .................................. 29

        iii. (U) Testimony About The Substance of Discussions at Meetings ............................ 32

    B. ████████████████████████████████████████████
       ████████████████████████████ 35

    C. (U) Testimony About Juan Orlando's Purported Efforts to Combat Drug Trafficking and
       Corruption Through Legal Reforms in Honduras Is Potentially Relevant, But Is
       Inadmissible Hearsay and/or Fails Rule 403's Balancing Test ......................................... 41

    D. (U) In the Alternative, the Court Should Hold an *In Camera* Hearing Pursuant to CIPA
       Section 6(a) to Determine the Relevance and Admissibility of the Classified Material .. 45

VI.  (U) Conclusion ..........................................................................................................47

███████████████████████████████████

███████████████████

# (U) TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Def.*, 2012 WL 13075284 (S.D.N.Y. 2012)..................................................... 18

*C. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103 (1948)................................................. 6

*CIA v. Sims*, 471 U.S. 159 (1985) ............................................................................................... 7

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) ............................................................................ 18

*Haig v. Agee*, 453 U.S. 280 (1981)............................................................................................. 6

*People Mojahedin Organization of Iran v. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003) ....... 18

*Snepp v. United States*, 444 U.S. 507 (1980)............................................................................. 7

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) .............................................................. 7

*United States v. Al Kassar*, 582 F. Supp. 2d 498 (S.D.N.Y. 2008) ........................................... 10

*United States v. Albizu*, 107 F.3d 4 (2d Cir. 1997) ................................................................... 14

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ................................................................ 7, 12

*United States v. Badia*, 827 F.2d 1458 (11th Cir. 1987)......................................................... 8, 9

*United States v. Bankman-Fried*, 2023 WL 6283509 (S.D.N.Y. 2023) ...................................... 44

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ...................................................... 43

*United States v. Bifield*, 702 F.2d 342 (2d Cir. 1983)......................................................... 13, 14

*United States v. Bin Laden*, 2001 WL 66393 (S.D.N.Y. 2001).................................................. 16

*United States v. Boykoff*, 67 F. App'x 15 (2d Cir. 2003)........................................................... 45

*United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807) ........................................................... 40

*United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991) ........................................................ 34

*United States v. Cardoen*, 898 F. Supp. 1563 (S.D. Fla. 1995).................................... 3, 9, 11, 13

███████████████████

*United States v. Chambers*, 800 F. App'x 43 (2d Cir. 2020).................................................... 43, 45

*United States v. Check*, 582 F.2d 668 (2d Cir. 1978) ............................................................... 16

*United States v. Collins*, 720 F.2d 1195 (11th Cir. 1983)........................................................ 9, 10

*United States v. Corr*, 543 F.2d 1042 (2d Cir. 1976)................................................................ 14

*United States v. George*, 786 F. Supp. 56 (D.D.C. 1992).......................................................... 41

*United States v. Gleason*, 980 F. 2d 1183 (8th Cir. 1992)......................................................... 14

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978)........................................................... 45

*United States v. Johnson*, 816 F. App'x 604 (2d Cir. 2020)...................................................... 29

*United States v. Jolliff*, 548 F. Supp. 229 (D. Md. 1981) .......................................................... 10

*United States v. Juan*, 776 F.2d 256 (11th Cir. 1985) .............................................................. 48

*United States v. Libby*, 453 F. Supp. 2d 35 (D.D.C. 2006)..................................................... 11, 47

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) ............................................................. 7

*United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989) ......................................................... 2, 9, 47

*United States v. Mostafa*, 992 F. Supp. 2d 335 (S.D.N.Y. 2014) .............................................. 12

*United States v. Nixon*, 418 U.S. 683 (1974) .......................................................................... 6

*United States v. Noriega*, 117 F.3d 1206 (11th Cir. 1997) ................................................... passim

*United States v. North*, 708 F. Supp. 389 (D.D.C. 1988) ....................................................... 41, 42

*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978)........................................................... 45

*United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002)............................................................ 7

*United States v. Pappas*, 94 F.3d 795 (2d Cir. 1996) ........................................................... 19, 38

*United States v. Poindexter*, 698 F. Supp. 316 (D.D.C. 1988) ................................................. 10

*United States v. Poindexter*, 725 F. Supp. 13 (D.D.C. 1989) ................................................... 10

*United States v. Rewald*, 889 F.2d 836 (9th Cir. 1989) ..................................................... 41

*United States v. Rezaq*, 899 F. Supp. 697 (D.D.C. 1995) ................................................. 12

*United States v. Roviaro*, 353 U.S. 53 (1957) .................................................................. 12

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ..................................................... 43

*United States v. Schulte*, S2 17 Cr. 548 (PAC), .............................................. 14, 16, 40, 42

*United States v. Smith*, 780 F.2d 1102 (4th Cir. 1985) ........................................... 7, 9, 12

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ...................................................... 12

*United States v. Walker*, 191 F.3d 326 (2d Cir. 1999) ...................................................... 45

*United States v. Wilson*, 586 F. Supp. 1011 (S.D.N.Y. 1983) ................................... passim

*United States v. Wilson*, 750 F.2d 7 (2d Cir. 1984) ................................................... passim

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) ................................................. 6, 7

*United States v. Zazi*, 2011 WL 2532903 (E.D.N.Y. 2011) ............................................. 17

**Statutes**

18 U.S.C. app. 3 § 1 ........................................................................................................ 16

18 U.S.C. app. 3 § 5 .......................................................................................................... 7

18 U.S.C. app. 3 § 6 .................................................................................................... 1, 2, 9

18 U.S.C. app. 3 § 8 ........................................................................................................ 13

18 U.S.C. app. III § 4 ........................................................................................................ 3

**Other Authorities**

Executive Order 13,526 ................................................................................................... 16

**Rules**

Federal Rule of Evidence 401 .................................................................................... 10, 24

Federal Rule of Evidence 402 ................................................................. 10, 24

Federal Rule of Evidence 403 ................................................................. passim

Federal Rule of Evidence 404 ................................................................. 42, 43

Federal Rule of Evidence 405 ................................................................. 32

Federal Rule of Evidence 801 ................................................................. 33, 34

Federal Rule of Evidence 802 ................................................................. 34

████████████████████████████

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | S7 15 Cr. 379 (PKC) |
| -v.- | FILED *IN CAMERA* AND UNDER SEAL WITH THE CLASSIFIED INFORMATION SECURITY OFFICER OR DESIGNEE |
| JUAN ORLANDO HERNANDEZ, a/k/a "JUAN ORLANDO," | |
| Defendant. | |

**THE GOVERNMENT'S MOTION PURSUANT TO SECTION 6(a) OF THE CLASSIFIED INFORMATION PROCEDURES ACT**

(U) The Government respectfully submits this motion pursuant to Section 6(a) of the Classified Information Procedures Act ("CIPA") to seek pretrial rulings regarding the use, relevance, and admissibility of classified information noticed by the defendant, Juan Orlando Hernandez ("Juan Orlando"), pursuant to Section 5 of CIPA on September 22, 2023 (the "Section 5 Notice"). Through this motion, the Government seeks an order from the Court excluding as irrelevant and/or inadmissible certain proposed testimony noticed by the defendant. In the alternative, the Government respectfully requests that the Court hold an *in camera* hearing to address the use, relevance, and admissibility of the classified information at issue.

**I.      (U) Overview**

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

(U) Accordingly, and as set forth below, the Government respectfully requests that the Court issue a written ruling, as required by CIPA Section 6(a), denying Juan Orlando's attempts to offer inadmissible and irrelevant evidence and, "[a]s to each item of classified information, . . . set[ting] forth in writing the basis for its determination." 18 U.S.C. app. 3 § 6(a). In the alternative, to the extent the Court disagrees and determines that any of the classified information identified in the Section 5 Notice is relevant and admissible, and/or a non-hearsay basis for certain limited potentially relevant testimony is identified, the Government respectfully requests that the Court hold a hearing pursuant to CIPA Section 6(a), which must be held *in camera*, to "make all determinations concerning the use, relevance or admissibility of classified information that would otherwise be made during the trial or pretrial proceedings" pursuant to the standards of the Federal Rules of Evidence, and the defendant bears the burden at any such hearing of establishing that the evidence is relevant, material, and otherwise admissible. *United States v. Miller*, 874 F.2d 1255, 1276-77 (9th Cir. 1989) ; *see also United States v. Cardoen*, 898 F. Supp. 1563, 1571 (S.D. Fla. 1995).

██████████████████████████

██████████████████████████████

**II.** ████████████████████████████████████████████████████

     (U) On April 14 and May 17, 2023, the Government made motions pursuant to Section 4 of CIPA, 18 U.S.C. app. III § 4, and Federal Rule of Criminal Procedure 16(d)(1), for a protective order authorizing the Government to withhold from discovery, and instead disclose substitutions for, certain classified material obtained from various components of the U.S. Government (collectively, the "Government's CIPA Section 4 Motions").  The Government's CIPA Section 4 Motions set forth the factual background of this case, governing legal standards, and additional background applicable to this motion, and are incorporated by reference herein.[1]

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████



(U) On September 21, 2023, the Court issued an order accepting the Government's proposals, as set forth in the Supplemental CIPA Section 4 Filing, to produce certain additional

information to cleared counsel, and "otherwise sustain[ing] the position asserted by the government and overrul[ing] the objections of defendant Juan Orlando Hernandez on the grounds stated by the government."  (Dkt. 614, the "September 21, 2023 Order").

## III.    (U) The Defendant's CIPA Section 5 Notice

(U) On September 22, 2023, cleared counsel for Juan Orlando filed the Section 5 Notice with the Court, *ex parte*.  On September 28 and again on October 3, 2023, the Court ordered cleared counsel to provide the Section 5 Notice to the Government.  (Dkts. 618, 622).  On October 5, 2023, cleared counsel served the Section 5 Notice on the Government.

██████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████

## **ARGUMENT**

**IV.    (U) Relevant Law Under CIPA**

**A.    (U) CIPA Section 5**

(U) Prior to the enactment of CIPA in 1980, the Supreme Court had "long recognized" the existence of a classified information privilege. *United States v. Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989) (citing *C. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948), and *United States v. Nixon*, 418 U.S. 683, 710 (1974)). "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). As a result, "[t]he government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp* v. *United States*, 444 U.S. 507, 509 n.3 (1980) (quoted by *Yunis*, 867 F.2d at 623, and *CIA v. Sims*, 471 U.S. 159, 175 (1985)). Following this long-established precedent, courts have recognized the importance of the classified information privilege. *See, e.g.*, *United States v. Abu Ali*, 528 F.3d 210, 245 (4th Cir. 2008); *United States* v. *Smith*, 780 F.2d 1102, 1107-09 (4th Cir. 1985); *see also Yunis*, 867 F.2d at 622-23.

(U) To protect classified information, Congress enacted CIPA. *United States v. Mejia*, 448

██████████████

███████████████████████████

F.3d 436, 455 (D.C. Cir. 2006) (quoting *Yunis*, 867 F.2d at 623).  CIPA, which establishes procedures for handling classified information in criminal cases, was "meant to 'protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'"  *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (quoting *United States* v. *O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)); *see also Abu Ali*, 528 F.3d at 245 (CIPA safeguards "the government's privilege to protect classified information from public disclosure").  If a defendant expects to disclose or cause the disclosure of classified information in pretrial proceedings or at trial, Section 5 of CIPA requires the defendant to provide written notice to the Government.  *See* 18 U.S.C. app. 3 § 5.  That is true whether or not the classified information was previously known to the defendant through his own interactions or experiences.  *See, e.g.*, *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) (limiting the scope of defendant's testimony where the defendant was aware of certain classified information and noting that "this is the kind of situation that Congress had in mind when it enacted the Classified Information Procedures Act").

(U) Specifically, CIPA lays out a framework to resolve assertions by the defense that it intends to disclose or cause the disclosure of classified information.  Accordingly, any defendant who reasonably expects to disclose (or cause the disclosure of) classified information *in any*

███████████████████████████

███████████████████████████

*manner* is required to file notice of such intention under Section 5 of CIPA.[2]  Section 5(a) expressly requires that such notice "include a brief description of the classified information."  The case law holds that such notice "must be *particularized*, setting forth *specifically* the classified information which the defendant reasonably believes to be necessary to his defense."  *United States* v. *Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); *see also Smith*, 780 F.2d at 1105.  This requirement applies both to documentary exhibits and to oral testimony, whether the evidence is expected to be admitted on direct or cross-examination.  *See, e.g.*, *Wilson*, 750 F.2d 7 (testimony); *Collins*, 720 F.2d at 1199 (same).

(U) If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures for the use, relevance, and admissibility of classified evidence, Section 5(b) provides for preclusion of that evidence.  *Badia*, 827 F.2d at 1465. Similarly, if a defendant attempts to disclose at trial classified information that is not identified in his Section 5(a) notice, preclusion is the appropriate remedy prescribed by Section 5(b) of the

---

[2]  (U) Section 5 provides, in pertinent part:

> (U) If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant, shall, within the time specified by the court, or where no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing.  Such notice shall include a brief description of the classified information.

(U) Courts have strictly enforced the time limitations in the Act.  *See generally United States v. Badia*, 827 F.2d 1458, 1465 (11th Cir. 1987) (affirming district court's decision to disallow defendant's presentation at trial of certain evidence because he did not provide timely notice under CIPA Section 5).

███████████████████████████

███████████████████████

statute.  *See Smith*, 780 F.2d at 1105 ("A defendant is forbidden from disclosing any such information absent the giving of notice.").

(U) Indeed, it is based upon a defendant's Section 5 proffer that a court, under Section 6(a) of CIPA, must "make all determinations concerning the use, relevance or admissibility of classified information that would otherwise be made during the trial or pretrial proceedings" pursuant to the standards of the Federal Rules of Evidence, with the defendant bearing the burden of establishing that the evidence is relevant, material, and otherwise admissible.  *See United States* v. *Miller*, 874 F.2d 1255, 1276-77 (9th Cir. 1989); *see also United States* v. *Cardoen*, 898 F. Supp. 1563, 1571 (S.D. Fla. 1995).  The Section 5 notice requirement is designed to allow a court to determine how a defendant intends to use the classified information and ensure that a defendant is not allowed to "cloak his intentions and leave the government subject to surprise at what may be revealed in the defense."  *Collins*, 720 F.2d at 1199-1200.

### B.    (U) CIPA Section 6 Hearing

(U) Upon the Government's request, "the court shall conduct . . . a hearing [pursuant to Section 6(a)]" to "make all determinations concerning the use, relevance or admissibility of classified information" at trial, including any information identified in a defendant's Section 5 notice.  *See* 18 U.S.C. app. 3 § 6(a).  At the hearing, which must be held *in camera*, the defendant

███████████████████████

██████████████████████████

must proffer why the classified information that he seeks to disclose is relevant and admissible,[3] while the Government is given an opportunity to challenge the request on standard evidentiary grounds, such as relevance and hearsay.  To prevail on his application, a defendant has the burden of (1) specifying what classified information he might cause to be publicly disclosed at trial, and (2) demonstrating the relevance and admissibility of the information.  As previously noted, vague assertions regarding classified information are insufficient.  *See, e.g.*, *Collins*, 720 F.2d at 1197-98 (holding that defendant's request to reveal general information about the maintenance of secret bank accounts and other overseas operations was insufficiently specific to merit relief under CIPA); *Wilson*, 721 F.2d at 975 (quashing subpoena "for lack of specificity").

(U) CIPA does not change "the generally applicable evidentiary rules of admissibility." *Wilson*, 750 F.2d at 9.  Accordingly, as with any piece of evidence, the Court should consider the admissibility of a piece of classified information first pursuant to the Federal Rules of Evidence.  Thus, the proffered evidence must be relevant under Federal Rules of Evidence 401 and 402.  The evidence must also not be inadmissible hearsay under the Rules.  Finally, even assuming that the evidence satisfies these requirements, the evidence may still be excluded if it is barred by Federal Rule of Evidence 403 because the evidence's "probative value is substantially outweighed by the

---

[3]   (U) Courts have routinely rejected constitutional challenges, under the Fifth and Sixth Amendments, that this provision of CIPA unfairly requires the defendant to reveal his trial strategy.  *See Wilson*, 750 F.2d at 9; *United States* v. *Poindexter*, 725 F. Supp. 13, 31-33 (D.D.C. 1989); *United States* v. *Jolliff*, 548 F. Supp. 229, 231-32 (D. Md. 1981).  However, to protect the defendant's trial strategy, at least one court has permitted the defense to tender its requests *ex parte*.  *See United States* v. *Poindexter*, 698 F. Supp. 316, 321 (D.D.C. 1988); *see also United States* v. *Al Kassar*, 582 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) ("After hearing from counsel for both sides at the sealed hearing, the Court also permitted counsel for defendants to make a further, *ex parte* proffer as to the purported relevance of the classified information to their defense in this case.").

██████████████████████████

███████████████████████████

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; *see, e.g.*, *Wilson*, 750 F.2d at 9; *United States* v. *Libby*, 453 F. Supp. 2d 35, 44 n.8 (D.D.C. 2006) ("There is no question that Rule 403, as a standard rule of evidence, impacts the admissibility of the classified information referenced in the defendant's CIPA § 5 notice.").  In addition, Courts have held that a defense request to use evidence can be rejected if that evidence is offered in support of a defense that is legally invalid on its face.  *See, e.g.*, *Cardoen*, 898 F. Supp. at 1581 ("Because none of the defendants' asserted defenses are viable, the classified information which the defendants seek to introduce at trial in support of such defenses is neither relevant nor admissible."); *United States* v. *Rezaq*, 899 F. Supp. 697, 704 (D.D.C. 1995) (same).

(U) Beyond this, at least one circuit has held that, before a defense request to cause disclosure of classified information can be granted, a court must find the information relevant and material to the defense.  *See Smith*, 780 F.2d at 1110.  According to this view, because unnecessary disclosure of classified material risks chilling the future collection of such information, the principle enunciated by the Supreme Court in *United States* v. *Roviaro*, 353 U.S. 53 (1957), applies to the relevance of such information.  *Smith*, 780 F.2d at 1110 ("The *Roviaro* standard of *admissibility* is at the least more restrictive than the ordinary rules of *relevancy* would indicate.").  Moreover, the ruling in *Smith* is consistent with the Second Circuit's decision in *Aref*, which requires disclosure of classified information to the defense only insofar as the classified

███████████████████████████

███████████████

information is both material and helpful to the defense.  *Aref*, 533 F.3d at 80; *see United States* v. *Stewart*, 590 F.3d 93, 131 (2d Cir. 2009).[4]

### C.   (U) Use of Classified Information at Trial

(U) Pursuant to CIPA, the defendant is entitled to disclose classified information at trial only upon a finding by the Court that the classified information is relevant, helpful, and admissible at trial under the Federal Rules of Evidence.  *See Miller*, 874 F.2d at 1276-77; *Wilson*, 750 F.2d at 9; *see also Cardoen*, 898 F. Supp. at 1571.  Evidence is relevant if (1) "it has a tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Even if classified information proffered by the defendant is determined to be relevant and admissible at the Section 6(a) stage, at the Section 6(c) stage, CIPA permits the Government to offer an unclassified substitution or summary for introduction at trial that contains the relevant information upon which the defendant seeks to rely.  *See* 18 U.S.C. app. 3 § 6(c)(1) (stating that a court must grant the motion for substitution "if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information").

(U) CIPA also permits the Government to "object to any question or line of inquiry that may require the witness to disclose classified information not previously found to be admissible."

---

[4] (U) In this case, the Government has taken a broad approach to the production of classified materials in discovery.  The fact that the Government has produced classified information to cleared counsel—in substituted or original form—does not, however, in any way, indicate that the Government believes that any particular materials produced in discovery (or the classified information contained therein) is "essential to the defense, necessary to [the] defense, and neither merely cumulative nor corroborative, nor speculative," *United States* v. *Mostafa*, 992 F. Supp. 2d 335, 338 (S.D.N.Y. 2014) (quoting *Smith*, 780 F.2d at 1110), or that the information is properly admitted at trial under the Federal Rules of Evidence.

███████████████

███████████████████

*Id.* § 8(c).  Similarly, "[a] criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible." *United States* v. *Bifield*, 702 F.2d 342, 350 (2d Cir. 1983); *Wilson*, 750 F.2d at 9 (affirming district court's ruling that the defendant could testify to the fact that he was employed by various U.S. intelligence agencies and participated in covert operations but was precluded from describing the details of those operations).   When the Government objects to questioning that would elicit classified information, the Court should first determine whether that information is admissible and, if so, fashion a solution that "will safeguard against the compromise of any classified information."  18 U.S.C. app. 3 § 8(c).

      **D.**      **(U) CIPA and a Defendant's Testimony**

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████

███████████████

████████████████████████████
████████████████████████████
███████████████████████

(U) For example, a defendant is not permitted to testify about classified information that is irrelevant, prejudicial, and/or confusing.  The Second Circuit's decision in *Wilson* is instructive. In *Wilson*, the defendant had worked for various U.S. intelligence agencies.  *See United States* v. *Wilson*, 586 F. Supp. 1011, 1013 (S.D.N.Y. 1983).  The defendant was ultimately prosecuted in connection with plots that he participated in while in prison to assassinate prosecutors and Government witnesses.  *See id.* at 1012.  The defendant contended that he should be permitted to testify about "certain covert activities of the United States in which he claimed to have participated" because that testimony would demonstrate a "belief on his part that he would not be sentenced and imprisoned by federal authorities and this belief negated his alleged motive for tampering with witnesses," and the testimony would show "the existence of certain character traits and personal relationships that would have tended to disprove the charges against him."  *See Wilson*, 750 F.2d at 10.  The district court ruled that the defendant would be allowed to testify to the "the fact of his employment with various agencies in the United States intelligence community and to the fact that he was involved in covert operations."  586 F. Supp. at 1017.  The district court also held, however, that the defendant would not be permitted to testify about the details of these operations, finding that those details would be confusing, prejudicial, and misleading.  *See id.* at

---

[5] (U) Cleared counsel for Juan Orlando, Sabrina Shroff, Esq., also was cleared counsel for Schulte and received a copy of Exhibit A in connection with that case.  Accordingly, Exhibit A can be provided to Ms. Shroff.

████████████████

███████████████████████

1016-17.  The district court further precluded the defendant from testifying about specific acts for

the purpose of proving his alleged character traits.  *See id*. at 1016.

(U) The defendant appealed the district court's ruling, arguing that he would have testified

if the district court had not imposed these restrictions.  *See* 750 F.2d at 9.  The Second Circuit

upheld the district court's ruling, noting that "this is the kind of situation that Congress had in mind

when it enacted the Classified Information Procedures Act."  *Id*.[6]  The Second Circuit also held

that "the district court did not err in rejecting the material under generally applicable evidentiary

rules of admissibility," in particular Rule 403.  *See id*.

(U) Other courts have also found that a defendant's testimony is properly limited when it

implicates classified information that is inadmissible, either because it is irrelevant or creates a

risk of unfair prejudice that substantially outweighs its probative value.  *See, e.g.*, *Schulte*, S2 17

Cr. 548 (PAC), Ex. A (finding that "the minutiae of details of specific operations in foreign

countries or counterterrorism operations . . . is not relevant and the risk of unfair prejudice

substantially outweighs the probative value of such testimony, under FRE 403").

(U) More generally, because CIPA does not change "the generally applicable evidentiary

rules of admissibility," *Wilson*, 750 F.2d at 9, a criminal defendant—like all witnesses at trial—

cannot testify about prior out-of-court statements made by him or others, unless he can identify a

proper hearsay exception or exclusion that applies to those statements.  *See, e.g.*, *United States v.*

---

[6] (U) Moreover, the Second Circuit explicitly rejected the alleged unconstitutionality of Section 5's disclosure obligations as applied to the defendant's testimony: "We see no constitutional infirmity in the pretrial notification requirements of Section 5."  750 F.2d at 9; *see also United States* v. *Bin Laden*, 2001 WL 66393, at *8 (S.D.N.Y. 2001) (application of CIPA does not violate the defendant's Fifth Amendment right to testify).

███████████████████████

*Check*, 582 F.2d 668, 675 (2d Cir. 1978) (noting that "federal courts do not recognize any exception to the hearsay rule, or, except in the limited circumstances set forth in [Rule 801(d)], any exclusion from the definition of hearsay, which would permit testimony in court relating to the prior out-of-court statements of a witness merely because the witness is available at trial for cross-examination and subject to cross-examination concerning those statements").  Thus, if any of the classified information that Juan Orlando seeks to offer through his testimony—including his own prior statements—constitutes inadmissible hearsay, his request to offer such testimony must be denied.

(U) Finally, as discussed in the Government's November 8, 2023 classified letter (Dkt. 630), and in response to the Court's November 6, 2023 Order (Dkt. 629, the "November 6, 2023 Order"), the fact that a defendant (foreign national or otherwise) may have, based on his own prior observations and interactions, personal knowledge of certain classified information that he wishes to testify about does not mean that he can avoid the requirements of CIPA.  Indeed, it is the original classification authority alone that decides whether the information is and should remain classified. *See* Executive Order 13,526, § 1.3.  CIPA defines classified information by reference to the Executive Branch's prerogative to make classification determinations: "'Classified information', as used in this Act, means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security."  18 U.S.C. app. 3 § 1; *see also United States v. Zazi*, 10 Cr. 60, 2011 WL 2532903, at *2 n.3 (E.D.N.Y. June 24, 2011) ("[A]s Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second guess."); *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) ("[T]he protection of

███████████████████████

classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it."); *People Mojahedin Organization of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003) ("[U]nder the separation of powers created by the United States Constitution, the Executive Branch has control and responsibility over access to classified information . . . ."). Therefore, the fact that an individual, including a foreign national, without the requisite security clearance or authorization may have acquired classified information "innocently does not change the fact that [the material] is classified." *ACLU v. Dep't of Def.*, 09. Civ. 8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012).

(U) This is true irrespective of whether the defendant is a foreign national whose interactions with the U.S. Government are themselves considered classified. For example, in *United States v. Noriega*, former Panamanian dictator Manuel Noriega sought to introduce evidence at trial of operations in which Noriega had participated in exchange for payments from the U.S. Government. *See* 117 F.3d 1206, 1216-17 (11th Cir. 1997). There, and as discussed further below, although the classified information was known to Noriega through his own interactions with the CIA, the Eleventh Circuit nonetheless analyzed Noriega's request to use such

17

███████████████████████



classified information at trial pursuant to CIPA prior to trial. *See id.* [7]

## V.    (U) Discussion





(U) This is because, even putting aside CIPA-related arguments concerning the disclosure

of classified material, Juan Orlando's testimony referenced in the Section 5 Notice is inadmissible



under the Federal Rules of Evidence.  That is the principal inquiry at the CIPA Section 6(a) stage, regardless of Juan Orlando's intent—apparent graymail or otherwise—for seeking to admit evidence, in this case through his potential testimony, identified in a defendant's Section 5 notice. Here, the Section 5 Notice largely consists of inadmissible hearsay, principally in the form of out-of-court statements made by Juan Orlando and others during previous meetings between Juan Orlando and U.S. Government officials.  The Rules of Evidence bar admission of that testimony. Moreover, much of the inadmissible hearsay in the Section 5 Notice also is irrelevant, and, beyond that, would fail Rule 403's balancing test.

20



21

22





24

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

**A.** **(U) Juan Orlando's Testimony About the Fact that Certain Meetings with U.S. Government Officials Took Place Is Largely Irrelevant, Inadmissible Hearsay, and/or Fails Rule 403's Balancing Test**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

(U) The Government acknowledges that some limited testimony about Juan Orlando's meetings with certain U.S. Government officials during the charged period may be relevant; however, that possible testimony, as identified in the Section 5 Notice, constitutes inadmissible hearsay and/or fails Rule 403's balancing test. To the extent Juan Orlando can identify a proper hearsay exception or exclusion to introduce statements made at particular meetings with U.S.

████████████████████████████████

████████████████████████████████

Government officials (whether by him or others), limited, general testimony about relevant meeting topics, such as counternarcotics efforts, extradition of drug traffickers, or efforts to address corruption in Honduras, may be admissible, provided that it is not rendered inadmissible by application of Rule 403.  As set forth below, however, additional details about those meetings, such as which U.S. Government agencies or officials he met with, detailed descriptions of the substance of those meetings, and any specific operations or initiatives discussed, are not relevant, and are thus inadmissible on that independent basis, in addition to being inadmissible hearsay and/or unduly prejudicial or likely to confuse the issues.

  **i.     (U) General Testimony About Meetings with U.S. Government Officials**

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████





(U) Accordingly, testimony about the fact of Juan Orlando's meetings with U.S. Government officials and/or agencies, standing alone, should be precluded, unless Juan Orlando can establish a particular meeting's relevance and a non-hearsay purpose for testimony from Juan Orlando regarding the meeting.  To do that, Juan Orlando would need to identify the underlying purpose of a particular meeting or topic discussed, which, in turn, would require him to identify a proper non-hearsay purpose for introducing statements made at any such meeting, whether by him or others.  If he is unable to do so, any testimony about those meetings should be precluded. Moreover, even if he could meet the relevance and admissibility thresholds, which he has not, any testimony about such a meeting still would need to pass Rule 403's balancing test.  Given the limited probative value, if any, of the fact of Juan Orlando's claimed meetings with U.S. Government officials and—if he identifies a hearsay exception or non-hearsay purpose for testimony about a particular topic—the appropriately limited scope of any such testimony, Juan

██████████████████████████

Orlando still would face a high bar to demonstrate that any probative value outweighs the significant risk of unfair prejudice to the Government or of confusing the jury.

**ii.      (U) The Identities of U.S. Government Agencies or Officials**

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

29

████████████████████████







(U) Accordingly, the Court should reject Juan Orlando's unfounded contention that the identities of the specific U.S. Government officials and entities with whom he met are relevant in this case, and he should be precluded from testifying about their identities.

      **iii.**        **(U) Testimony About The Substance of Discussions at Meetings**

---

[10] (U) The Government recognizes that the Government has produced, in unclassified discovery, materials reflecting certain of Juan Orlando's meetings with U.S. Government officials and agencies that are not classified and could, depending on the reason for the meeting, be relevant to this case. For example, among the 131 unclassified DOS cables produced to the defense are numerous cables that identify specific U.S. Government officials who met with Juan Orlando to discuss efforts to combat drug trafficking and corruption in Honduras. *See, e.g.*, (February 2018 meeting with United States U.N. Ambassador Nikki Haley regarding "counternarcotics successes" and "anti-corruption efforts"); (November 2014 meeting with the U.S. Ambassador to Honduras and the U.S. Interdiction Committee to discuss "U.S. and Honduran efforts to counter narcotics trafficking"); (October 2020 meeting with SOUTHCOM Commander Admiral Craig Faller to discuss counternarcotics cooperation and the Air Sovereignty Law). But that does not change the fact that, as with the *classified* materials and information discussed in this submission, Juan Orlando would still need to identify a proper hearsay exception or exclusion to offer any conversations during those meetings, and the proffered testimony would still need to pass a 403 balancing test.

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

(U) Hearsay evidence is "any statement made by an out-of-court declarant and introduced to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  To determine whether an out-of-court statement is admissible, "the purpose for which the statement is being introduced must be examined and the trial judge must determine whether—if the purpose is to prove the truth of its assertion—the proffered statement fits within any of the categories excepted from the rule's prohibition."  *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991).  Barring any applicable exception or exclusion, the statement must be precluded.

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████

███████████████████

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████

(U) With respect to statements made by the U.S. Government officials who met with Juan Orlando, Juan Orlando has not provided any information about the nature of those statements that would suggest they may be admissible, nor has he preferred a non-hearsay basis for their admissibility. For example, Juan Orlando has not provided any basis for offering hearsay evidence from his "meeting with Ambassador Lisa Kibiske [*sic*] and DEA representatives in January of 2014" about "the United States government's opposition to the Airspace Sovereignty Protection Act," (Section 5 Notice at 5), and evidence of what was discussed at that meeting would necessarily require Juan Orlando to testify about out-of-court statements made by third-party participants. Nor

████████████████████

███████████████████████████████

has Juan Orlando provided any basis for the admission of opinions or assessments of Juan Orlando purportedly held or made by U.S. Government officials through his own testimony, (*see* Section 5 Notice at 2), as evidence of such opinions or assessments would require Juan Orlando to testify about statements made to him by third parties that would necessarily be offered to prove the truth of the matters asserted, *i.e.*, that those officials in fact held those opinions or made those assessments. Similarly, unless Juan Orlando can identify a non-hearsay purpose for any statements *he* made during meetings, which he has not, testimony about his own prior out-of-court statements is likewise inadmissible.

(U) Accordingly, to the extent, if at all, Juan Orlando can establish the relevance of any specific meetings he had with U.S. Government officials or agencies, (i) his testimony should be limited to a general description of the fact of the meeting, (ii) he should be precluded from identifying the particular individuals or agencies he met with, and (iii) unless and until he identifies any non-hearsay basis for admissibility (which he has not), he should be precluded from testifying about any specific discussions or statements made during those meetings.

**B.** ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

35

████████████████████████████



(U)  Juan Orlando is not entitled to engage in such graymail.  *See Pappas*, 94 F.3d at 799.

Indeed, Judge Weinfeld, writing in *Wilson*, captured why Juan Orlando's actions here are wholly

inappropriate:

> Whatever the defendant's purpose, the introduction of evidence detailing classified
> activities will have the tendency to focus attention on what cannot be doubted is the

controversial character of foreign covert intelligence and counter-intelligence operations. These have been a matter of public notice, editorial expressions of differing views by the news media, public debates and congressional investigations. Appeals to the attitudes of jurors by evidence of the alleged unseemly character of American covert activities would divert their attention from the basic issues in this case—charges centered about alleged plots to kill witnesses connected to prosecutions in the United States District Courts. Wilson is the defendant on trial, not the CIA. The introduction of evidence of the nature referred to in defendant's submission on this motion covers details of extensive activities in many countries throughout the world and its presentation would be time-consuming. But even more important, it would bring before the jury matters utterly irrelevant to the basic charge in this case and serve to divert the jury's attention from those basic issues. Assuming arguendo that evidence of covert activities, here and abroad, has some minimal probative value in this case, such proof should be excluded on the ground that it would unduly delay the trial.

*Wilson*, 586 F. Supp. at 1016 (footnote omitted). Similarly, the Eleventh Circuit recognized, in the prosecution of former Panamanian dictator Manuel Noriega, that the proposed disclosure of classified information relating to payments made to him by the U.S. Government was properly rejected at the Section 6 stage of CIPA, even though such evidence had "some probative value." *Noriega*, 117 F.3d at 1216. There, Noriega had given CIPA Section 5 notice of "his intent to use classified information regarding his intelligence work for the United States to rebut the government's assertion that he had unexplained wealth." *Id*. at 1215. The district court held that information about "the content of discrete operations in which Noriega had engaged for the alleged payments was irrelevant to his defense," but allowed Noriega to introduce "evidence of the fact, amounts, time, source and method of conveyance of money he allegedly received from the United States." *Id*. at 1216. In affirming the district court's decision and finding that the district court did not abuse its discretion in limiting the scope of classified information that the defendant sought to use at trial based on the district court's "determin[ation] that the probative value of the proffered

███████████████████████████████

material was outweighed substantially by the confusion of issues its admission would have caused," the Eleventh Circuit stated:

> Evidence of the purposes for which monies allegedly are given [by the CIA to Noriega] does not aid significantly in the determination of the fact and amount of such purported payments. Further, and more importantly, the district court correctly recognized that the admission of evidence regarding the nature of Noriega's assistance to the United States would have shifted unduly the focus of the trial from allegations of drug trafficking to matters of geo-political intrigue.

*Id.* at 1216-17.

(U) Juan Orlando's effort to disclose irrelevant classified information is hardly novel—as far back as 1807, Chief Justice Marshall rejected Aaron Burr's attempt to disclose certain sensitive diplomatic and military communications at trial, explaining that it "is apparent that he means to exercise his privileges not really in his own defense, but for purposes which the court ought to discountenance. The court would not lend its aid to motions obviously designed to manifest disrespect to the government." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807).

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████



██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

(U) So too here—this trial is about Juan Orlando's actions, not the U.S. Government's conduct in foreign operations or relations. As in *Noriega*, *North*, and *Schulte*, admission of sensitive information about the U.S. Government's activities would put that topic, not the charged conduct, front and center. That is not the purpose of this trial. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████

██████████████████████████

**C.**     **(U) Testimony About Juan Orlando's Purported Efforts to Combat Drug Trafficking and Corruption Through Legal Reforms in Honduras Is Potentially Relevant, But Is Inadmissible Hearsay and/or Fails Rule 403's Balancing Test**

█████████████████████████████████████████████

███████████████████████████████  ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

---

█████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

41

███████████████████████

(U) The Court should preclude Juan Orlando's expansive proffered testimony described in the Section 5 Notice about various legal reforms in Honduras he purportedly supported to, as he claims, combat narcotics trafficking.  As a general matter, this type of proffered testimony is inadmissible under Federal Rule of Evidence 404(b).  "[The Second Circuit] has long recognized that '[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'  The reasoning behind this rule is straightforward: A single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct." *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) (internal citations omitted); *see also United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) (same); *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (holding that employees charged with receiving illegal payments may not seek to prove their innocence by demonstrating that on other occasions they did not act improperly); *United States v. Bankman-Fried*, S6 22 Cr. 673 (LAK), 2023 WL 6283509, at *4 (S.D.N.Y. Sept. 26, 2023) (precluding the defendant "from referring to any alleged prior good acts by the defendant, including any charity or philanthropy, as indicative of his character or his guilt or innocence").  The Government recognizes, however, that limited testimony about particular legal reforms potentially bearing on the charged conduct—extradition, anti-money laundering, and law enforcement reform—may be relevant, to the extent that Juan Orlando articulates specific instances and identifies a hearsay exception or proper non-hearsay purpose for such testimony, which he has not done.

(U) Assuming *arguendo* that Juan Orlando did, in fact, take the steps he claims in support of legal reforms in Honduras, and that he arguably acted in contravention of narcotics trafficking in certain instances, this is still not a proper basis for admissible evidence as a general matter.

███████████████████████

Moreover, as described above, *see supra* at 3-4, the Government has produced in unclassified discovery DOD and DOS materials and, even beyond that, ample unclassified information—for example, about Juan Orlando's supposed support for various legal reforms in Honduras, including extradition—to allow him to seek to demonstrate that he was involved in non-criminal activities (though, again, the Government submits this remains inadmissible).  An attempt to introduce more evidence simply seeking to advance that same interest would be cumulative and run afoul of Rule 403.  Indeed, the testimony about his supposed support for legal reforms—on everything ranging from extradition, to banking and finance, to tax, immigration, and police reform—is precisely the type of propensity evidence barred by Rule 404(b).  *See, e.g.*, *Chambers*, 800 F. App'x at 46 ("Chambers's argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe Villanueva is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit"); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming the district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (affirming district court's exclusion of testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts"); *see also United States v. Boykoff*, 67 F. App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978)).

███████████████████████████

(U) The same is true here.  That Juan Orlando supposedly supported legal reforms in Honduras that, he claims, were intended to counteract narcotics trafficking and corruption does not have any bearing on the allegations that he was a central figure in long-running narcotics and firearms conspiracies.  Indeed, to the extent admissible evidence of Juan Orlando's purported legal reforms is offered at trial, the Government's theory is that Juan Orlando publicly pretended to oppose drug trafficking and, in some instances, even took targeted actions against specific drug traffickers; all the while corruptly accepting bribes and protecting from prosecution his drug trafficking partners—and Juan Orlando will be able to argue that the jury should *not* draw the inference put forward by the Government.  Put differently, the fact that Juan Orlando purportedly supported reforms intended to fight drug trafficking and root out corruption is inadmissible and irrelevant to the allegations that, *inter alia*, he accepted drug-fueled bribes from Alex Ardon, CW-1, Leonel Rivera, and others; that he conspired with Tony Hernandez and Geovanny Fuentes Ramirez to traffic massive amounts of cocaine; and that, with the assistance of members of the Honduran National Police, such as Bonilla and Hernandez Pineda, and military, he protected his co-conspirators from prosecution.  Indeed, his weaponization of these reforms is *inculpatory*—he used them to punish those who did not support him, while shielding those who did.  This is not contrary to the Government's theory of the case.

(U) Accordingly, and for the reasons set forth above, the Court should reject Juan Orlando's attempts to admit inadmissible propensity evidence about his purported support for various legal reforms he claims were intended to fight drug trafficking and corruption.

███████████████████████████

████████████████████████

**D.      (U) In the Alternative, the Court Should Hold an *In Camera* Hearing Pursuant to CIPA Section 6(a) to Determine the Relevance and Admissibility of the Classified Material**

(U)  To the extent the Court assesses that the classified information to which the Government objects in the Section 5 Notice should not be precluded outright, the Government respectfully requests that the Court schedule an *in camera* hearing as required by Section 6(a) of CIPA to address the use, relevance, and admissibility of the classified information contained within the Section 5 Notice.

(U) If the Court ultimately finds after a hearing and written determination that any of the information identified in the Section 5 Notice is relevant and admissible, the Government respectfully requests, as provided for in Section 6(c), the opportunity to propose a schedule for the Government to offer an unclassified substitution or summary for introduction at trial that contains the relevant information that the Court has deemed admissible.  *See* 18 U.S.C. app. 3 § 6(c)(1) (permitting the Government to propose summaries or substitutions for classified information "[u]pon a determination by the court authorizing the disclosure of specific classified information under the procedure established by [Section 6]"); *Miller*, 874 F.2d at 1277 ("The plain language of the provision indicates that it is not applicable unless and until the court has first ruled that the classified information is admissible.").  As the Government will further address in briefing to the extent Section 6(c) practice is necessary, a court must grant the motion for substitution "if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  *See* 18 U.S.C. app. 3 § 6(c)(1); *Libby*, 467 F. Supp. 2d at 25 (D.D.C. 2006) ("[T]he Court must focus exclusively on whether the redacted or substituted version of the classified information the government proposes

████████████████████████

the defendant use provides the defendant with substantially the same defense.").  "Whether or not an alternative would be sufficient for the protection of the national interest in the security of classified information is not to be determined by the court.  What may appear to the court to be innocuous may be dangerously revealing to those more informed. The government is the party to propose [the substitutions]."  *United States v. Juan*, 776 F.2d 256, 259 (11th Cir. 1985).

██████████████████████████████

**VI.    (U) Conclusion**

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████

(U) Finally, the Government respectfully requests that the instant classified submission and the attached exhibits be sealed and preserved in the records of the Court, by the Classified Information Security Officer, to be made available in the event of an appeal.

Dated: New York, New York
       November 10, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/_____
       Jacob H. Gutwillig
       David J. Robles
       Elinor L. Tarlow
       Kyle A. Wirshba
       Assistant United States Attorneys
       One St. Andrew's Plaza
       New York, New York 10007
       212-637-2215 / 2550 / 1036 / 2493

██████████████████████████████