# Law Offices of Raymond L. Colón

MEMBER NEW YORK AND NEW JERSEY BAR

131 Pugsley Avenue · Bronx, New York 10473
Tel (917) 418-4701 · Fax (914) 218-6999
Email: Rlcolonesq@aol.com

October 25, 2023

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:   **United States v. Juan Orlando Hernandez**, S7 15 Cr. 379 (PKC)

Dear Judge Castel:

The defense respectfully writes to the Court in order to submit a certification and motion to compel the Government to produce all relevant and critical discovery as requeste in the defendant's May 29, 2023 Supplemental Discovery Demand(s) pursuant to the Federal Rules of Criminal Procedure Rule 37. Defense has previously filed a motion for supplemental Rule 16 evidence. In response to my motion, the government filed a reply opposing it. I now file this motion to compel based on the cited case law and the necessity for the government to comply with its obligations, given its refusal to comply with our May 29th request and their one hundred thirty (130) day delay in responding, as well as their categorical rejection.

**Certification**

Counsel certifies that he filed the Supplemental Discovery Demand on May 29, 2023, fully understanding that the voluminous and detailed request would take sometime for the Government to respond. Sometime in mid-summer, around July or early August 2023, the Government and defense counsel had a phone conversation wherein counsel and various AUSA's participated. Defense counsel brought up the subject of the Government's reply and one of the AUSA's responded that "we were looking into it." It was not until October 6, 2023 that the Government unequivocally declined to respond to the request and instead provided a list of everything that they had produced so far. Unfortunately, nothing in the production made reference to anything that has been outlined in this motion to compel.

1

Rule 37 governs motions for am order compelling discovery and provides in pertinent part:

**Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions**

(a) Motion for an Order Compelling Disclosure or Discovery.
    (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
    (2) Appropriate Court. A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.
    (3) Specific Motions.
        (A) To Compel Disclosure. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.
        (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
            (i) a deponent fails to answer a question asked under Rule 30 or 31;
            (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
            (iii) a party fails to answer an interrogatory submitted under Rule 33; or
            (iv) a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.
        (C) Related to a Deposition. When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.
    (4) Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.
    (5) Payment of Expenses; Protective Orders.
        (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
            (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
            (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii) other circumstances make an award of expenses unjust.
   (B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
   (C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

"Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must… establish good cause." Syntel Sterling Best Shores Mauritius Ltd. V. TriZetto Grp., Inc., 328 F.R.D. 450, 452 (S.D.N.Y. 2018). Courts have "broad latitude to determine the scope of discovery and to manage the discovery process," EM Ltd. V. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re "Agent Orange" Prod. Liab.Litigation., 517 F.3d 76, 103 (2d Cir. 2008)), "motions to compel, pursuant to Rule 37, are left to the sound discretion of the court." See Christine Asia Co. v. Ali a a Grp. Holding Ltd., No. 15-md- 02631 (CM) (SDA), 327 F.R.D. 52, 54 2018 WL 4941773, at *2 (S.D.N.Y. 2018).

"The issue on a motion to compel discovery pursuant to Fed. R. Civ. P. 37(a)(2)(A) is whether the discovery sought could lead to "admissible evidence" pursuant to Fed. R. Civ. P. 26(b). Helt v. Metropolitan District Commission, 113 F.R.D. 7, 12 (D. Conn. 1986). The defendant cannot discover the documents at issue as a matter of course, they must be relevant to the subject matter involved in the pending action." (Citing Fed. R. Civ. P. 26(b)(1).

"A party… who has responded to… [a] request for production… must supplement or correct its disclosure of response" (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…" Fed. R. Civ. P. 26(e)(1). Rule 26(e) is a "continuing obligation" and is not subject to "any limitation of time." Grand River Enters/ Six Nations, Ltd. V. King, No. 02 CIV. 5068 (JFK), 2009 U.S. Dist. LEXIS 50527, 2009 WL 1360686, at *2 (S.D.N.Y. May 15, 2009) (citing Weiss v. Chrysler Motors Corp., 515 F.2d 449, 457 (2d Cir. 1975)).

"A party's good faith averment that the items sought simply do not exist, or are not in [her] possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible." Mason Tenders Dist. Council of Greater N.Y. V. Phase Constr. Serves., Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (quoting Zervos v. S.S. Sam Houston, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)); accord Menard v. Chrysler Grp. LLC, No. 14 Civ. 6325 (VB), 2015 U.S. Dist. LEXIS 127814, 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015). "In the face of a denial by a party that [she] has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." Golden Trade S.r.L. V. Lee Apparel Co., 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992).

In Spizz v. Eluz (In re Ampal-American Isr. Corp.), 2019 Bankr. LEXIS 2467, 2019 WL 3756728 (Bankr. S.D.N.Y. August 7, 2019), the court denied the movant's motion to compel discovery because it determined that even if the non-moving party had access to the servers and computers wherein the discovery sought might be contained, the movant is not entitled to an order compelling discovery when the discovering party "could easily obtain the documents elsewhere without any of the difficulties that might result from compelled production." Sec. & Exch. Comm'n v. Strauss, No. 09 CIV. 4150 RMB/HBP, 2009 U.S. Dist. LEXIS 101227, 2009 WL 3459204, at *10 (S.D.N.Y. Oct. 28, 2009; accord Valenzuela v. Smith, 04 Civ. 0900, 2006 U.S. Dist. LEXIS 6078, 2006 WL 403842, at *2 (E.D. Cal. Feb. 16, 2006) (physician defendant not required to produce documents that plaintiff could instead obtain from his own medical file or the prison law library); Baum v. Vill. Of Chittenango, 218 F.R.D. 36, 40-41 (N.D.N.Y. 2003) (compelling discovery from another is unnecessary when the documents sought are equally accessible to all).

In Trustees of the Sickness & Accident Fund v. Philips Winson, Inc., 2000 U.S. Dist. LEXIS 3624, 2000 WL 64865 (S.D.N.Y. January 24, 2000), the court granted the plaintiff's motion to compel discovery. In Winson, the plaintiffs, after receiving defendant's discovery responses, filed a motion to compel discovery arguing that the disputed requests and interrogatories were relevant under Fed. R. Civ. P. 26(b). The court relied on its discretion to strike or limit discovery requests and held that the plaintiff's discovery requests were relevant and could lead to admissible evidence.

The discovery process is one of the most critical aspects of the pre-trial phase, especially in federal criminal cases. During discovery, both sides are required to share their evidence to help to allow each party to prepare for trial.

When a defendant's accused of a federal crime, the discovery phase is where the defense attorney receives critical information in order to assist him in constructing a viable defense strategy. Discovery ensures that both the prosecution and defense are privy to the same evidence pool, enabling both to prepare adequately for the trial.

In the case at hand, the defense is operating at an extreme and insurmountable disadvantage, because the Government has total authority to request discovery and demand, infinite amount of resources within which to mobilize personnel and a multibillion dollar budget to finance procurement.

Moreover, the Government has unreasonably delayed or refused to comply with its discovery obligations, by dint of a 130 days to categorically respond and reject the supplemental discovery demands.

The timing for filing a motion to compel discovery and the scenarios under which it can be used is not set in stone. However, the types of information obtained through this motion vary, ranging from witness statements and physical evidence to expert testimonies and reports. Thus, a federal defense lawyer must closely monitor any potential abusive discovery practices by the prosecutor and voice any suspicious practices with the presiding judge.
The nature of the request should include the following:

- The information is essential to the case.
- The opposing party has not produced all the requested material.
- This reply names what materials were being sought.
- The motion is supported by law and/or the evidence provided.
- The requested discovery would not violate attorney-client privilege.

**Newly enacted Federal Rule(s) of Criminal Procedure Rule 5(f) reinforces Prosecutors Brady Obligations**

"Prosecutors wield enormous power in the American criminal justice system, and with that power comes commensurate ethical and constitutional obligations. One of the most fundamental of these obligations is the government's duty to disclose to the defense all evidence favoring the accused.

While many prosecutors are mindful of and discharge this duty with care and diligence, many high-profile cases show that this obligation is often neglected, either out of carelessness or overzealousness, or both.

On Oct. 21, 2020, Congress enacted the Due Process Protections Act, or DPPA, which amends Rule 5 of the Federal Rules of Criminal Procedure by adding subsection (f).

Rule 5(f) now requires all federal district court judges, during the initial appearance in every criminal case, to: issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under Brady ... and its progeny, and the possible consequences of violating such order under applicable law.

Moreover, the DPPA states that judicial councils must promulgate a model order for district courts to use at it determines is appropriate. The new rule not only reinforces prosecutors' existing duty to disclose exculpatory evidence to the accused, but also gives federal judges, through the court's contempt powers, the ability to hold government attorneys accountable when they fail to comply with that duty.

In September 2020, in U.S. v. Nejad, 487 F.Supp.3rd 206 U.S. District Judge Alison Nathan of the U.S. District Court for the Southern District of New York concluded that the government had committed serious Brady violations.

In that case, involving an Iranian businessman accused of funneling millions of dollars to his family business in violation of U.S. sanctions law, the court found that the government withheld Brady evidence from the defense that was highly relevant to the defendant's state of mind at the time of the alleged offenses before, during and after the trial and misled the court regarding its remedy of the issue.

The court noted that the government had spent 20 hours strategizing how best to turn it over and that "[o]ne prosecutor suggested to another that they 'bury' the evidence along with other, already disclosed documents."

A key problem with addressing Brady violations has been that, just as Judge Sullivan experienced in 2008, federal judges overseeing cases have held little power to hold the government accountable and were confined to piecemeal corrective measures.

For example, once the misconduct was revealed in Nejad, Judge Nathan issued directives to the U.S. Attorney's Office for the Southern District of New York based on her observations about prosecutors' supervisors. She directed the government to implement two corrective measures: (1) that the acting U.S. attorney ensure and declare that all current government prosecutors read the court's opinion; and (2) that the government conduct further fact finding to determine whether the prosecution's conduct was intentional.

Judge Nathan also articulated areas that required "systemic solutions," including insufficient training and a failure to coordinate between various the government offices involved.

Rule 5(f) appropriately highlights the importance of compliance with Brady obligations at the beginning of every criminal case, rather than their implicit nature.

Moving forward, Rule 5(f) Brady orders will hopefully incentivize prosecutors to fully evaluate the government's files prior to indictment and make prompt Brady disclosures at the outset and continuing forward throughout the case as further evidence develops."

Moreover, the constitution obliges that prosecutors **must produce favorable information.** In fact, each of these proposals is contained in the U.S. Attorneys' Manual. Its earlier revision. According to that Manual, it is the obligation of the line prosecutor *"to disclose exculpatory and impeachment information to criminal defendants and to seek a just result in every case. The policy is intended to ensure timely disclosure of an appropriate scope of exculpatory and impeachment information so as to ensure that trials are fair."*

**U.S. Attorney Manual Section 9-5.001 - Policy Regarding Disclosure of Exculpatory and Impeachment Information Established:**

A. **Constitutional obligation to ensure a fair trial and disclose material exculpatory and impeachment evidence.** Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because they are Constitutional obligations, *Brady* and *Giglio* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Neither the Constitution nor this policy, however, creates a general discovery right for trial preparation or plea negotiations. *U.S. v. Ruiz*, 536 U.S. 622, 629 (2002); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).
   1. **Materiality and Admissibility.** Exculpatory and impeachment evidence is material to a finding of guilt—and thus the Constitution requires disclosure—when there is a reasonable probability that effective use of the evidence will result

6

in an acquittal. *United States v. Bagley*, 475 U.S. 667, 676 (1985). Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles*, 514 U.S. at 439. While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question.

2. **The prosecution team.** It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant. *Kyles*, 514 U.S. at 437.

**Disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required.**

Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020), confirms the Government's disclosure obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations.

The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. This obligation applies regardless of whether the defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States,* 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.

Moreover, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

The theory of the Government's case is that "That under the leadership of Juan Orlando Hernandez Alvarado drug trafficking flourished in Honduras. Because in private he agreed with drug traffickers and in public he showed himself as an ally of the United States in the fight against drug trafficking. The prosecution alleges that the defendant received bribes to benefit his political campaigns in exchange for protecting drug traffickers from investigation, arrest and extradition. Providing sensitive military and police information to support drug trafficking activities. As well as protection of drug shipments by military and police forces."

In order for a jury to find the defendant not guilty, it is imperative that the Government complies with its constitutional obligation, that prosecutors **must produce favorable information.**

The Defendant respectfully requests that the Court compel the Government to disclose all discovery materials requested in the defense's May 29th Supplemental Discovery demand(s). This includes, but is not limited to the following:
1) Coordination and collaboration, evaluations of our defendant as president of the National Congress (2010-2014), president of the Republic (2014-2022).
2) This information is about evaluation of the situation of organized crime, drug trafficking, maras/gangs, human trafficking and violence in Honduras during the period 2006-2010.
3) Information in possession of U.S. Agencies/Institutions; how to obtain via the mechanism of judicial assistance to the Government of Honduras and others related to organized crime, drug trafficking, gangs, human trafficking, terrorism, violence. Status of the situation in Honduras, coordination, collaboration, policies, actions taken by the Presidency of the Republic, government and Honduran institutions.
4) We request that you provide us with reports, analyses, letters, statistics, emails, notes or records on secret or ordinary meetings related to the challenge and fight against organized crime (Narcos/maras/human trafficking/terrorism...).
5) Information tending to indicate that Defendant is not guilty of the offenses alleged in the Indictments.
6) Information showing Defendant's reputation for honesty, integrity, and/or trustworthiness
7) Information showing the reputation for honesty, integrity, and/or trustworthiness, and/or any criminal record of any witness called by the State, including any complaining witness.
8) Names of any individuals who made an arguably favorable statement about the

8

Defendant, or who indicated to law enforcement that Defendant is not guilty of the crimes alleged in the Indictments.

That as President of the Honduran Congress and latter on President of the Republic Juan Orlando Alvarado took decisive action to confront drug trafficking, wherein Hondurans went from being the main bridge/passage of drugs from South America to the USA to 90% to 4% of the narcotics supply.

That all of his policies and actions were carried out in collaboration and/or coordination with agencies and institutions of the United States and other countries allied in the fight against drug trafficking.

- That far from holding private meetings with drug traffickers, Juan Orlando Hernandez Alvarado held secret and private meetings with high-ranking U.S. officials and agents to coordinate efforts against drug trafficking that were not held under the leadership of the U.S. institutions, gave extraordinary results, which were recognized both privately and publicly.
- Far from agreeing and receiving benefits with drug traffickers, he took extraordinary measures to combat them, such as approving in the National Congress (2010-2014) the constitutional reforms with respect to extradition, Money Laundering, Seizure of Illicit Goods, Police Reform, creation of Investigative Agencies and new prisons, maritime land and air shields; amongst other measures, so much so that drug traffickers resorted to assassination attempts on Juan Orlando Hernandez.
- This information will clearly establish that Juan Orlando Hernandez Alvarado far from being a partner or conspirator or providing a passive attitude towards organized crime, maras/narcos/human trafficking, decided the opposite of other previous government leaders, to decisively confront this scourge. The results of the significant reduction in the passage of drugs through Honduras, the reduction of violence, the significant increase in drug seizures, the institutional strengthening, the increase of trust in institutions, the improvement of the economy, improved public services promoted greater investment and reduction of poverty in Honduras. The defense believes all of this is reflected in the cables, reports and analysis of the DOJ, DOS, DHS, U.S. Southern Command, et al. As a result, Honduras seized the quasi-failed state or narco-state to being a exemplary bilateral partner of the United States.

Despite the defense insistence on requesting prompt 3500 material and CIPA turnover from the prosecution, the defense just recently received an additional 3500 material disc from the Law Offices of Emma Greenwood on or after October 10, 2023. Given the lack of a prompt response from the prosecution to our May 27, 2023 supplemental discovery request in which we also presented a Bill of Particulars, we now come before you to request that Your Honor compel the prosecution to provide the relevant and critical discovery requested on May 29th, as well as the following:

- All documentation related to the Amended Constitution to allow extradition of Honduran nationals;
- Seizure of assets from narcotics trafficking and criminal activity;
- Reform of banking and financial laws, tax collection, prevention of money

   laundering and illicit assets transferences;
- Expulsion of corrupt members of the Honduran National Party;
- Avoidance of even the appearance of impropriety by respecting the full autonomy of the public ministry (counterpart of the U.S. Department of Justice);
- Dismantling of criminal organizations (i.e. MS13, support for U.S. Allies Israel and Taiwan by opening embassies in their respective capitals (i.e. Jerusalem and Taipai);
- Establishing national scholarships for 90% of the population;
- Created public works by rebuilding highways, infrastructure and a national modernization program;
- ███████████████████████████████████
- Provided social services for the poor;
- Instituted anti-domestic violence protocols;
- Fired thousands of police officials and officers in order to reform law enforcement on a National basis;
- Was intended victim of multiple assassination attempts and plots against him and his family members;
- Met with Presidents Trump and Biden, as well as Vice-President Pence, in order to stem illegal migration from Honduras and Central America;
- ███████████████████████████████████
- Supported all U.S. initiatives an foreign policy goals in Latin America.
- Reports/analysis on the situation of drug trafficking, organized crime, maras/gangs, terrorism, human trafficking, violence from 2006-2022.
- Promotion, discussion and approval of the constitutional reform to allow the extradition of Hondurans accused of drug trafficking for the years 2006-2021.
- Processing and approval of the first extradition case (Carlos Lobo) until the pronouncement of the DOS, DOJ once the extradition to the United States was achieved.
- The process of transformation and strengthening of the national police.
- Interdiction operations with consequences of fatalities under the responsibility of the DEA/INL and the Government of Honduras. On May 11, June 23 and July 23 of 2012 under operation AHUAS.
- The process of approval of the Law on Money Laundering, the Law on Seizure of Illicit Assets
- Processes of transformation and institutional strengthening of Migration, Taxation (SAR) and Customs.
- Meeting with Ambassador Lisa Kubiske and DEA representatives in January 2014 to discuss the US government's opposition to the approval of the Airspace Sovereignty Protection Act
- Any and all correspondence and documents between the U.S. Embassy in TEGUCIGALPA and the Department of State in Washington on how the extradition process in Honduras was approved

10

**Department of Defense**
- Private, regular, or public meetings with the Chief and other Southern Command officials related to the fight against organized crime, drug trafficking, human trafficking, gangs and violence. Since 2013 when Juan Orlando Hernandez Alvarado was president-elect and president of the National Congress.
- Joint work for the maritime shield in the Caribbean Sea to prevent the passage of drugs from South America. Land shield on the Honduras-Guatemala border.
- Creation of the Joint Inter-institutional Committee for the fight against organized crime, maras, gangs (This was the last one to be created/It is a bilateral team).

**Departments of Homeland Security (DHS)**
- Collaboration, coordination, political will in the fight against organized crime drug trafficking, human trafficking, maras/gangs, terrorism and criminal violence.

**\*FBI**
- Collaboration, coordination, political will in the fight against organized crime, drug trafficking, human trafficking, gangs, terrorism and criminal violence.

**\*DEA**
- Collaboration, coordination, political will in the fight against drug trafficking of chemical precursors.
- Investigation, prosecution, capture, extraditions, coordination in the identification of objects to decide which country Honduras or the United States would prosecute them.
- Request to the Prosecutor's Office the correspondence and documents between DEA-HONDURAS AND ITS SUPERIORS regarding the government and Juan Orlando Hernandez Alvarado.
- Deliver all communications, DEA reports on information exchange between the DEA and Jorge Anibal Torres Puello alias Jorge Barlevi, during the years 2019, 2020, 2021, 2022 and 2023 in their plan to infiltrate the defense
- How the DEA operates in Honduras. How do they coordinate with the Public Prosecutor's Office to determine who they pursue and prosecute?
- DEA, ▮ Southern Command operations in Honduras during the administration of Juan Orlando Hernandez Alvarado.

**Treasury Department**
- Collaboration, coordination, joint work in the identification of objects, investigation in the fight against organized crime related to money laundering, financing of terrorism. Handling of OFAC designations, banks, financial institutions.
- Adoption of best practices by the Honduran institutions in charge of Taxation/Revenues (Sistema de Adminsitracion de Rentas and Comision Nacional de Bancos y Seguros).

**Justice Department**
- Collaboration, coordination, joint work for the selection/identification of objects to decide which country prosecutes each case, judicial assistance; investigation, prosecution, extradition, captures in the fight against drug trafficking, organized crime, human trafficking, financial crimes, gangs and others.



That the prosecutor's office provide all intercepts of communications (i.e. email, calls, text messages, whatsapp, et al., that were made to Juan Orlando Hernandez Alvarado, as well as if and when they were memorialized;

Any and all information/discovery related to the following individuals involved in the conspiracy, as either indicted or non-indicted co-conspirators that had meetings with the U.S. Embassy in Honduras or stateside meetings with the U.S. State and Justice Departments, specifically:

General Ramon Sabillon
General Gustavo Sanchez
Salvador Nasralla
Luis Rolando Redondo
Pedro Barquero
Suyapa Figueroa
Xiomara Castro
Hector Zelaya Castro
Xiomara Hortencia Zelaya Castro

**Prompt Disclosure.**
The requested material should be produced promptly. Otherwise it will be of no utility of the defendant.

Common sense dictates that evidence in the Government's possession favorable to the defendant should be made available to him far enough in advance of trial to allow him sufficient time for its evaluation, preparation, and presentation at trial. Otherwise, the trial might well have to be interrupted for an inordinate length of time until the defendant has had an opportunity to explore all the ramifications of the Government's disclosure, track down distant witnesses, examine documents or the like. Such probable delay could sensibly be avoided by pre-trial disclosure in those cases where disclosure is called for. *United States v. Partin*, 320 F. Supp. 275 ( E.D. La. 1970).

**Request for Thorough Search.**
The prosecutor in this case must search not only for their own files for *Brady* material, but also the files of other federal agencies involved in this matter, inclusive of the United States Department of Justice. *See, e.g., Kyles v. Whitney*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the other acting on the government's behalf in the case, including the police."); *United States v.*

*Wood*, 57 F.3d 733, 737 (9 th Cir. 1995)); *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997) (holding that, in their search for *Brady* material, prosecutors must "inform themselves about everything that is known in all of the archives and all of the data banks of all of the agencies collecting information which could assist in the construction of alternative scenarios to that which they intend to prove at trial").

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

1. grant a continuance;
2. impose evidentiary sanctions;
3. impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;
4. dismiss charges before trial or vacate a conviction after trial or a guilty plea and/or
5. enter an order that is just under the circumstances.

The defense respectfully request that the Court allow counsel an additional week to file a more exhaustive specific list of discovery related facts that support the non-guilt of the defendant, as a result of recent BOP/MDC failure to provide access to defense attorneys at both the East and West Wings.

PRAYER

For these reasons, Defendant JUAN ORLANDO HERNANDEZ ALVARADO requests that the government be compelled to produce all items enumerated in this Motion and the May 29, 2023 Supplemental Discovery Demand.

Respectfully,

*Raymond L. Colón*

_____

Raymond L Colón, Esq.