

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 26, 2024

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Mauricio Hernandez Pineda**, S4 15 Cr. 379 (PKC)
                **United States v. Juan Orlando Hernandez**, S7 15 Cr. 379 (PKC)
                **United States v. Juan Carlos Bonilla Valladares**, S8 15 Cr. 379 (PKC)

Dear Judge Castel:

      The Government respectfully writes to oppose the supplemental motions of Mauricio Hernandez Pineda ("Pineda") and Juan Orlando Hernandez ("Hernandez") to sever their trials from the trial of their co-defendant Juan Carlos Bonilla Valladares ("Bonilla"). (*See* Dkts. 667, 676; *see also* Dkt. 674 at 71-72). As discussed further below, the Court previously denied severance motions made by Hernandez and Bonilla. Pineda and Hernandez now argue that severance from Bonilla is warranted because Bonilla intends to argue at trial that he was investigating drug traffickers in Honduras, including his co-defendants, and intends to attempt to offer evidence at trial that would purportedly inculpate Pineda and Hernandez.[1] (*See* Dkt. 667 at 1-2). Pineda and Hernandez, however, fail to demonstrate that a joint trial would result in any prejudice to them, let alone prejudice so severe that their convictions would constitute a miscarriage of justice. Indeed, even if a jury accepted Bonilla's defense theory, a jury would not be required to convict Pineda and Hernandez of the offenses charged in this case. The Court, therefore, should deny their supplemental severance motions.

---

[1] On January 23, 2024, Bonilla provided the Government for the first time with thousands of pages of Spanish-language documents that Bonilla claims were records maintained in his investigative files while he worked in the Honduran National Police ("HNP"). The Government is reviewing those records and has requested that Bonilla identify any particular documents he may seek to offer at trial. Thus far, Bonilla has only identified five pages of charts and summaries that name several individuals, including Hernandez and Pineda, as individuals purportedly associated with drug trafficking and organized crime. Bonilla has not identified how he intends to authenticate these documents or any hearsay exception under which the Court could admit them. The Government does not concede the admissibility of any evidence that Bonilla intends to offer at trial in support of his defense.

Case 1:15-cr-00379-PKC   Document 677   Filed 01/26/24   Page 2 of 6

Page 2

## I. Background

On February 3, 2023 and February 21, 2023, Hernandez and Bonilla filed their initial motions to sever their trials. (Dkts. 515, 525). Bonilla argued, among other things, that there might be an "irreconcilable defense conflict" requiring severance because "one particular defense may in fact be that [Bonilla] was investigating [Juan Orlando]" after Bonilla became Chief of the HNP in 2012. (Dkt. 525 at 2). Bonilla did not identify any admissible evidence that he would seek to admit to prove such a claim. (*Id.*). Hernandez argued that severance was warranted because evidence admissible as to his co-defendants, whom Hernandez argued were involved in a separate conspiracy, would result in prejudicial spillover as to Hernandez. (Dkt. 515 at 1-4). On January 18, 2024, the Court denied Hernandez's and Bonilla's motions, finding that severance was not appropriate because the defendants in this case, who are alleged to have participated in the same conspiracy, were properly joined and the Government expected to offer testimony from several, overlapping cooperating witnesses for each of the defendants. (Dkt. 671 at 33-34).

On January 22, 2024, Pineda filed a supplemental motion requesting that his trial be severed from that of Bonilla. (Dkt. 667). Pineda argued in his motion that Bonilla's defense at trial is "mutually antagonistic" to Pineda's defense because Bonilla will seek to offer evidence that Pineda had affiliations with drug traffickers and that Bonilla conducted investigations of Honduran drug traffickers, including Pineda. (*Id.* at 2, 7). On January 23, 2024, at a pretrial conference in this case and after Bonilla's counsel represented that Bonilla would offer evidence, potentially including Bonilla's own testimony, that he had investigated Hernandez for narcotics-related conduct, Hernandez joined Pineda's severance motion. (Tr. at 71-72).

## II. Applicable Law

Rule 8(b) of the Federal Rules of Criminal Procedure governs joinder of offenses and defendants. *United States v. Turoff*, 853 F.2d 1037, 1042-43 (2d Cir. 1988). The rule provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Second Circuit has interpreted Rule 8(b) to allow joinder of offenses and defendants where two or more persons' criminal acts are "unified by some substantial identity of facts or participants or arise out of a common plan or scheme." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). In this context, courts "apply a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007).

There is a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see* Fed. R. Crim. P. 8(b). "Joint trials play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). They promote efficiency and "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Id.* at 210. When defendants are properly joined under Rule 8, a defendant seeking severance under Rule 14 shoulders a "heavy burden of

showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994); *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (same).

The presumption in favor of joint trials is so strong that the Second Circuit has stated that the "principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Therefore, it is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro*, 506 U.S. at 540. Rather, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539; *see also United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

In certain limited circumstances, courts have determined that co-defendants' "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial as to mandate severance. *Zafiro*, 506 U.S. at 538. Defenses are mutually antagonistic when accepting one defense requires that "the jury must of necessity convict a second defendant." *United States v. Cardascia,* 951 F.2d 474, 484 (2d Cir. 1991); *see also Zafiro,* 506 U.S. at 542 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one . . . necessarily preclude[s] acceptance of the other and acquittal of the codefendant"). However, "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538; *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003). The defendant must instead "show prejudice so severe that his conviction constituted a miscarriage of justice" and "amount[ed] to a denial of a constitutionally fair trial." *United States v. Scott*, 637 F. App'x 10, 13 (2d Cir. 2015) (quoting *United States v. Spinelli*, 352 F.3d 48, 54-55 (2d Cir. 2003)); *see also Zafiro*, 506 U.S. at 539 (noting a severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt").

### III. Discussion

As described in the Government's prior opposition to Hernandez's and Bonilla's 2023 requests for severance, (Dkt. 538), which is incorporated by reference herein, there is a "particularly strong" presumption in favor of a joint trial in this case. *See Rosa*, 11 F.3d at 341. The defendants in this case are alleged to have participated in the same conspiracy and to have committed the same offenses. As the Court reasoned in denying Hernandez's and Bonilla's 2023 motions for severance, the Government alleges that the "three defendants worked together in the conspiracy . . . [Hernandez] relied on Bonilla and Pineda to use their senior positions in the [HNP] to protect drug shipments that financed his political campaign." (Dkt. 671 at 33-34). In addition to conspiring with each other, the defendants also conspired with common co-conspirators to ensure the success of their drug trafficking scheme. The Government's proof against the defendants includes testimony from at least four of the same cooperating witnesses who would testify about, among other things, the defendants' coordinated efforts to carry out drug shipments

and to protect their drug trafficking activities.[2] To warrant a severance, Pineda and Hernandez, therefore, must demonstrate that they would be substantially prejudiced if they were jointly tried with Bonilla. *See Zafiro*, 506 U.S. at 539.

Pineda and Hernandez have failed to demonstrate that they would suffer such prejudice. As described above, the Second Circuit has repeatedly held that the standard for warranting a severance is high. *See Scott*, 637 F. App'x at 13. "A simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier*, 689 F.2d 21, 27-28 (2d Cir. 1982). Severance of a defendant is only required if the jury must necessarily disbelieve the defense of a co-defendant in order to believe the "core" of the defendant's defense. *See id.* In *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991), for example, the Second Circuit upheld the district court's denial of severance, concluding that even though one defendant's defense to a bank fraud charge was that his co-defendants had duped him and defrauded the bank, that defense was "not mutually exclusive at [its] core or essence" with his co-defendant's claim to be an innocent and unknowing bystander. *Id.* at 485; *see also Zafiro*, 506 U.S. at 540-41 (holding that district court judge did not abuse his discretion in maintaining joint trial of four defendants accused of distributing drugs, even though each individual's defense consisted of blaming another individual for the crime, because jury still could have found the four defendants innocent). Instead, the Second Circuit held, the "essence of both defenses . . . plainly is typical of co-conspirator trials and does not warrant severance." *Cardascia*, 951 F.2d at 484.

Similarly, here, Pineda's and Hernandez's arguments fall far short of meeting the high standard for severance. Bonilla's anticipated testimony that, at one point in time while he was a member of the HNP, he investigated his co-defendants, is not irreconcilable with any defense that Pineda may seek to advance at trial. Even if a jury were to accept Bonilla's claims, a jury would not be required to convict Pineda. *See Cardascia,* 951 F.2d at 48. Pineda and Hernandez may choose to argue, for example, that they were innocent of the crimes for which Bonilla was investigating them or that the crimes that were the subject of Bonilla's investigations are not the same as the ones with which they are charged in this case. For example, the narcotics conspiracy with which all three defendants have been charged in this case requires proof of a U.S. nexus in order for a jury to find them guilty. Thus, even if a jury were to accept that Bonilla was investigating his co-defendants for their alleged involvement in drug trafficking in Honduras, and that the fact that Bonilla was investigating them established that they were involved in this drug trafficking, that *still* would not "necessarily" require the jury to convict Hernandez and Pineda of violating the narcotics laws of the United States. *See Carpentier*, 689 F.2d at 27-28. Pineda and Hernandez also could make arguments about the propriety of Bonilla's claimed investigations, to the extent those did occur, including that Bonilla was conducting an unfounded investigation. Those arguments, similarly, would not require Bonilla's conviction in a case involving allegations of his participation in a conspiracy to import cocaine into the United States and related weapons offenses. Put simply, Bonilla's proffered defense is not "mutually antagonistic" such that "accepting [his] defense [would] require[] that the jury must of necessity convict" his co-defendants. *See Cardascia,* 951 F.2d at 484.

---

[2] Although not dispositive here, the Government notes also that it expects to call at least three of the same expert witnesses—relating to drug trafficking routes, Honduran politics and history, and firearms—against each of the defendants.

Nor does the mere fact that Bonilla may seek to offer evidence that inculpates Pineda and Hernandez—such as his testimony that Pineda was associated with drug traffickers and returned firearms to drug traffickers—warrant severance, even if it is deemed admissible at trial.[3] The Second Circuit has repeatedly found that "[a]n adversarial stance by a codefendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." *United States v. Hunter*, No. 18 Cr. 3074, 2022 WL 1166623, at *3 (2d Cir. Apr. 20, 2022), *cert. granted sub nom. Samia v. United States*, 143 S. Ct. 542 (2022). Indeed, the Second Circuit has upheld denials of severance motions where, as here, a defendant argues that his co-defendant's counsel "acted essentially as a second prosecutor," finding that, under such conditions, the defendant was not denied a fair trial. *Cardascia*, 951 F.2d at 484-85; *see also Zafiro,* 506 U.S. at 540 ("It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."); *U.S. v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("[A] defendant must show that he was so severely prejudiced by the joinder as to have been denied a fair trial, not that he might have had a better chance for acquittal at a separate trial").

Moreover, as the Court has made clear, Bonilla's proffered evidence is only relevant in a very narrow respect. To the extent Bonilla is permitted to offer any such evidence, through his own testimony or otherwise, it "would be limited to that which is probative . . . or tended to show that he was not a member of the drug conspiracy." (Dkt. 674 at 70-71). While certain limited evidence regarding the fact of Bonilla's purported investigation into his co-defendants, therefore, may be relevant if he argues that he was not conspiring with his co-defendants at the time of that investigation, additional details, including any conclusions, findings, or evidence he may have obtained during that investigation are irrelevant and do not pass a Rule 403 balancing test.

In support of his argument, Pineda relies principally on one district court decision in the Eastern District of New York—*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017). (Dkt. 676). A close comparison to *Shkreli*, however, reveals that this argument is misplaced and instead underscores the shortcomings in the severance motions in this case. In *Shkreli*, there were two defendants proceeding to trial: Martin Shkreli and Evan Greebel. Shkreli informed the court that he intended to argue that he lacked intent to defraud because he relied on advice of counsel, including Greebel, and Greebel argued that his legal advice to Shkreli was based on information provided by Shkreli that Greebel believed was truthful and complete but was, in fact, untrue. 260 F. Supp. 3d at 253-54. The court first determined that these were *not* mutually antagonistic defenses, because they did not require a jury to find one defendant guilty if the jury accepted the other defendant's defense. *Id.* at 254. Instead, the court emphasized that there were a number of ways in which a jury could reconcile the two defenses and could acquit both defendants. *Id.* After

---

[3] To the extent that the Court determines that any evidence admitted by Bonilla would otherwise be inadmissible as to Pineda and Hernandez, and could cause prejudice to his co-defendants, the Government does not object to a limiting instruction to the jury in which the jury is advised that it must "give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her." *See Zafiro*, 506 U.S. at 541; *Yousef*, 327 F.3d at 56 (holding that jury instructions sufficed to cure any prejudice resulting from mutually antagonistic defenses).

establishing that there was no "spillover prejudice" to justify a severance, the court then turned to the defendants' "constitutional right to a fair trial." *Id.* at 256-57. Ultimately, the district court determined that severance was appropriate because of the "unique circumstances presented" in the case. *Id.* at 256. These "unique circumstances" included, most pointedly, representations from counsel for Greebel that he was planning to act as a second prosecutor and be an "echo chamber" for the prosecution. *Id.* at 257. Indeed, the court noted, Greebel was planning to explicitly argue that Shkreli was guilty of the offense conduct and that Greebel was himself a victim of the offense. *Id.* Even in this "extraordinary and unique" case, the district court still concluded that it was severing the trial only in an "abundance of caution." *Id.*

The concerns animating the court's decision in *United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017), do not apply here. In this case, even if Bonilla's proffered testimony and evidence is deemed admissible, which the Government does not concede, Bonilla would be far from an "echo chamber" for the Government. Bonilla's defense does not depend on the guilt of his co-defendants. The mere fact that Bonilla, at one point in time, purportedly investigated his co-defendants does not impose the same "unfair and heavy burden" on Pineda and Hernandez to "defend[] [themselves] against both the government and [Bonilla]" as was present in *Shrkeli*. *See* 260 F. Supp. 3d at 253-54. Instead, as detailed above, Bonilla's testimony would be limited in scope and nature, and would not amount to an explicit argument that his co-defendants were guilty of the charged offense or that he was himself a victim of the offense. Accordingly, Pineda's and Hernandez's joint trial with Bonilla will not constitute a miscarriage of justice or amount to a denial of a constitutionally fair trial. *See Scott*, 637 F. App'x at 13.

### IV. Conclusion

The Court should deny Pineda's and Hernandez's motions for severance.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   /s/
     Jacob H. Gutwillig / David J. Robles
     Elinor L. Tarlow / Kyle A. Wirshba
     Assistant United States Attorneys
     (212) 637-2215 / 2550 / 1036 / 2493

cc: Defense Counsel (by ECF)