

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2024

**Via ECF**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Juan Orlando Hernandez</u>, S7 15 Cr. 379 (PKC)

Dear Judge Castel:

      The Government respectfully writes to request that the Court preclude the defendant from offering at trial the attached 36-page report (the "Report"), which purportedly describes a Honduran government investigation of individuals charged with money laundering crimes in Honduras. (*See* Ex. A (the Report); *see also* Ex. B (translation of the Report)).[1] On February 23, 2024, defense counsel advised the Government for the first time that they might seek to offer the Report under Rule 803(8) of the Federal Rules of Evidence during defense counsel's cross-examination of Detective Reynoso. Defense counsel confirmed this evening, February 25, 2024, that they intended to offer the Report. Detective Reynoso cannot properly authenticate the Report, which he did not author, and the defense has failed to identify the relevance of this document or any admissible basis for the multiple layers of hearsay contained within the Report. The Court, therefore, should not admit the Report if the defendant seeks to offer it during Detective Reynoso's testimony.

      **I.**    **Background**

      On February 23, 2024, Detective Reynoso testified that he participated in a search of three vehicles in June 2018 and seized evidence from those vehicles, including notebooks that he found in a Volkswagen. (Tr. 437-49). Detective Reynoso further testified that, on the same day, Honduran officials arrested five individuals, including an individual who used the names Magdaleno Meza and Nery Orlando Lopez. (Tr. at 470).

      The Report, dated October 18, 2018, appears to concern a purported investigation into the money laundering activities of the individuals arrested in June 2018, including Nery Orlando Lopez. (*See* Ex. B at 1). In or about August 2019, the Government obtained a copy of the Report from Honduran officials, who had provided it to a Drug Enforcement Administration official

---

[1] The Government respectfully requests that it be permitted to files these exhibits, which contain significant volumes of personally identifying information, under seal.

("DEA") stationed in Honduras, and the Government subsequently provided the Report to the defendant in the first discovery production in this case made in or about June 2022. The copy of the Report received by the Government is not signed and does not contain any indicia that it is a finalized report. The Government did not receive any certification or other record of authenticity for the Report from Honduran officials.

The Report is addressed to the Chief Prosecutor for the Money Laundering Unit in the Honduran Special Prosecutor's Office against Organized Crime and appears to have been written on behalf of or by the Director of the Dirección de Lucha Contra el Narcotráfico ("DLCN"), Soraya Calix. The Report includes, among other things, the following:

- The Sensitive Investigation Unit (SIU) of the Honduran National Police advised the Honduran Prosecutor's office in 2016 that it had received information from a source about the existence of an organization led by an individual named Juan Antonio Samara Archaga, that a business owned by Archaga was being investigated as a front to carry out illicit activities, and that the SIU had reported to the Honduran Prosecutor's office that raids had been conducted on that business. (Ex. B at 1-2).
- The identities of certain people and companies imputed in the money laundering investigation who purportedly did not file income tax returns or tax payments. (*See, e.g.,* Ex. B at 9-10).
- The results of database searches for properties and other identifying information about individuals and businesses implicated in the money laundering investigation. (*See, e.g.*, Ex. B at 10-14).
- Surveillance and other law enforcement operations carried out by the SIU in 2016 in furtherance of the money laundering investigation. (Ex. B at 11).
- Law enforcement operations carried out by unidentified officials, including raids of certain properties, involving targets of the money laundering investigation. (Ex. B. at 14).
- Analysis of financial information relating to relatives or associates of the targets of the money laundering investigation. (Ex. B at 15-33).
- Additional investigatory steps that would be taken in connection with the money laundering investigation. (Ex. B. at 34-36).

The Report also references the June 2018 search of the Volkswagen, which Detective Reynoso has testified about during this trial, and notes that certain notebooks were found in that vehicle. The Report then identifies certain pages of those notebooks "regarding cash movement," "[n]otes that refer to the existence of safes," "the payment of employees of the National Registry of Persons," "the purchase of goods and investments," "deliveries, merchandise losses and payments," and "the purchase of gold." (Ex. B. at 2-5). The Report describes certain observations and investigative steps taken based on information described in those entries, including that unidentified investigators obtained ownership records for a helicopter referenced in those notebooks, that the helicopter was linked to Tony Hernandez and other officials, and that records were obtained relating to the payment for that helicopter. (*Id.* at 6-7). The Report further references a cd that contains a copy of the notebooks seized in June 2018 and concludes that:

>as proven by the notes in the seized notebooks, the organization to which Mr. NERY ORLANDO LÓPEZ SANABRIA, also known as MAGDALENO MEZA FUNEZ, and his wife ERIKA JULISSA BANDY GARCIA, belong carried out cash operations. Likewise, they made investments in the purchase of shares, the purchase of gold and the acquisition of goods in the name of third parties.

(Ex. B at 35-36).

## II.     Applicable Law

As an initial matter, Rule 901 of the Federal Rules of Evidence requires a proponent of physical evidence to authenticate or identify that evidence prior to its admission. Authentication or identification requires a proponent to submit "evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a). This requirement is satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991).

If the evidence can be properly authenticated, Rule 803(8) of the Federal Rules of Evidence provides a hearsay exception for records or statements of a public office if the record sets out "the office's activities" or "against the government in a criminal case, factual findings from a legally authorized investigation."[2] Fed. R. Evid. 803(A). The record is admissible only if "the opponent of that record," in this instance the Government, "does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).

As a general matter, Rule 803 allows admission of certain categories of evidence, even though technically hearsay and even though the declarant may be available, because "under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at trial." *United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994) (quoting Original Advisory Committee Notes to Rule 803, *reprinted in* 4 Weinstein & Berger, *Weinstein's Evidence* at 803–32). To determine whether the record lacks such indicia of trustworthiness, the Advisory Committee notes set forth a non-exclusive list of factors, including: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. *See* Advisory Committee's Notes on Fed. R. Evid. 803(8); *accord Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988). "[A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof—whether narrow 'factual' statements or broader 'conclusions'—that []he determines to be untrustworthy." *Beech Aircraft*, 488 U.S. at 167.

Even if a report itself is nominally admissible under Rule 803(8), to the extent the report contains third-party statements or statements not based on the reporting officer's personal knowledge, such material is hearsay, and an independent evidentiary basis is required for admitting these statements. *Gervacio v. Zall*, 345 F. App'x 638, 640 (2d Cir. 2009); *D.R. by Rodriguez v.*

---

[2] Rule 803(8)(ii)—which provides a hearsay exception for "a matter observed while under a legal duty to report"—expressly does not apply in criminal cases and therefore is not applicable here.

*Santos Bakery, Inc.*, No. 20 Civ. 3628 (KHP), 2023 WL 3736441, at *3 (S.D.N.Y. May 31, 2023); *see also Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not.").

Finally, as with all evidence, such records must also satisfy Rule 403 and cannot be admitted if its probative value is substantially outweighed by a danger of unfair prejudice. "[T]he fact that evidence is within an exception to the hearsay rule does not by itself make it admissible *per se*. The district court generally has discretion to exclude such hearsay on other grounds, such as where the evidence's probative value is substantially outweighed by the danger of unfair prejudice." *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998) (citing Fed. R. Evid. 403).

### III. Discussion

The Court should not admit the Report during Detective Reynoso's cross examination because (i) the Report has not been authenticated; (ii) the Report is not a public record under Rule 803(8) and, in any event, contains several layers of additional, inadmissible hearsay; and (iii) the Report's admission would be far more prejudicial than probative and risk confusion of the jury.

First, Detective Reynoso cannot authenticate the Report. He is not the author of the Report and, if asked, would not be able to state based on personal knowledge how the Report was generated. The Government received this document from a DEA official stationed in Honduras, who in turn obtained it from Honduran officials. The Report was not provided to the Government with any certification of authenticity or other indicia of reliability for its authentication. This provides a basis to preclude admission of the Report, standing alone.

Second, the Report should be precluded under Rule 403. The sprawling 36-page report contains many irrelevant facts, makes accusations against many individuals who will never be mentioned at trial, and refers to other investigations, databases, and investigative steps that are likely to confuse the jury. Fed. R. Evid. 403; *United States v. Jacobs*, 735 F. App'x 739, 742 (2d Cir. 2018). In addition, to the extent that the defendant contends that the Report's probative value lies in the fact that the Report did not mention the defendant, that argument would be misleading to the jury. The Report was generated as part of a money laundering investigation. There is not a single mention of cocaine or any other narcotics in the Report (despite the fact that at least some of the individuals identified in the Report are large-scale cocaine traffickers), there are no references to the entries in the notebooks specifically mentioning "JOH," and the scope and purpose of the Report are entirely unclear. As such, it would be confusing to the jury to allow this document without any context for the purpose of it being generated.

Indeed, there are any number of explanations for why mentions of the defendant in the notebooks are not included in the Report: there may be a separate report about the drug trafficking investigations, the investigation regarding any entries related to the defendant and Tony Hernandez, both public figures, could have been conducted by another law enforcement entity, or the investigation of the defendant could have been suppressed for political reasons by those who authored the Report. This is particularly the case where, as here, there has been significant

testimony about corrupt public officials who favored the defendant and his co-conspirators. Inviting the jury to speculate as to the reason only certain entries are included would be confusing and potentially prejudicial to the Government.

Third, the Report and its contents should be precluded as inadmissible hearsay. Although the Report purports to come from a "public office," it is still not admissible under Rule 803(8). The Report appears to have been authored by or on behalf of the Director of the DLCN. The copy of the Report obtained by the Government, and which the defense seeks to admit, is not signed. It is not clear, therefore, whether the Report is merely a draft or finalized version, let alone whether the Report was generated as part of a "legally authorized investigation." *See* Fed. R. Evid. 803(8)(a). In addition, there are no further indicia of trustworthiness of this Report, including any indication that a hearing was held or any details concerning the circumstances in which the Report was generated. *See* Advisory Committee's Notes on Fed. R. Evid. 803(8); *accord Beech Aircraft*, 488 U.S. at 167 n.11.

Nor is this report the type that is commonly admitted under this rule. Rule 803(8)(A)(i) is intended to cover records that set out an "office's activities," such as routine matters conducted by the office that prepared the record. That hearsay exception is "grounded in the presumed reliability of descriptions of agency activities submitted by disinterested government entities." *In re Vitamin C Antitrust Litig.*, No. 05 Civ. 0453 (BMC), 2012 WL 4511308, at *2 (E.D.N.Y. Oct. 1, 2012). Similarly, Rule 803(8)(A)(iii) is intended to encompass "evaluative reports" generated in the course of a public agency's duties. *Beech Aircraft Corp.*, 488 U.S. at 166. The "[j]ustification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Advisory Committee's Note 1972, Fed. R. Evid. 803(8); *accord Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000). Examples of the types of agency investigative reports admissible under Rule 803(8) include accident reports prepared by specialized agencies, consumer safety studies, and diagnostic studies relating to issues of public health. *See, e.g.*, *Beech Aircraft,* 488 U.S. at 449 (Air Force accident report on cause of plane crash in training exercise); *United States v. Midwest Fireworks Mfg. Co.,* 248 F.3d 563, 566-67 (6th Cir. 2001) (reports of Consumer Product Safety Commission); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204-06 (8th Cir. 1990) (CDC report on health risks from environmental exposure to dioxin). Here, the Report was not generated by an expert, trained in certain techniques, to provide an evaluation. The Report appears to have been authored by an investigative detective unit, which collected information from a variety of sources, compiled that information, and provided its analysis to a prosecutor's office for purposes of its charges against those targets—focused not on drug trafficking, but on money laundering. (*See generally* Ex. B). Such a report falls well beyond the scope of an unbiased, scientific evaluation that is envisioned by Rule 803(8) and undermines the trustworthiness of any of its factual findings.

Moreover, as another basis supporting preclusion of the Report, the statements contained within the Report contain many layers of hearsay that are themselves inadmissible. For example, the Report contains descriptions of analyses and observations made by unidentified individuals within the SIU who carried out investigations. Those statements are hearsay and an independent evidentiary basis is required for admitting them. *See Gervacio*, 345 Fed. Appx. at 640; *D.R. by Rodriguez*, 2023 WL 3736441, at *3 (concluding that any third-party statements contained in police reports are hearsay that must independently meet a hearsay exception). The Report also

contains excerpted portions of the notebooks that were seized in June 2018, which are also hearsay and are not admissible by the defendant, who has identified no hearsay exception for them and cannot admit them under Rule 801(d)(2)(E).

Moreover, to the extent that the defendant intends to argue that the Report is relevant only because it fails to mention his name or the portions of the notebooks that reference him, that is not a proper basis for offering the Report under Rule 803(8). In *United States v. D'Anjou*, for example, the Fourth Circuit considered whether a District Court had abused its discretion in refusing to admit, under Rule 803(8), witness statements that were taken by law enforcement as part of the investigation of the defendant and that "were intended to be introduced not to reveal their *content* but rather their *lack of content*, i.e., the absence of any mention of [the defendant] . . . ." 16 F.3d 604, 610 (4th Cir. 1994). The Fourth Circuit affirmed the District Court, holding, that "[i]t is beyond peradventure that the authors of the Rule did not intend it to apply in this situation" because "[t]here is no reason to believe that the absence of such mention is itself a 'factual finding' or that the fact of the absence is sufficiently trustworthy to allow this evidence to be admitted." *Id*. The same is true here.

### IV. Conclusion

Accordingly, and for the reasons set forth above, the Government respectfully requests that the Court preclude the defense from offering the Report.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Jacob H. Gutwillig / David J. Robles
Elinor L. Tarlow / Kyle A. Wirshba
Assistant United States Attorneys
(212) 637-2215 / -2550 / -1036 / -2493

Cc: Defense Counsel
(Via ECF and Email)