O2KHHer1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            15 Cr. 379 (PKC)

 5   JUAN ORLANDO HERNANDEZ,

 6                                           Trial

              Defendant.
 7   ------------------------------x

 8
                                           New York, N.Y.
 9                                         February 20, 2024
                                           9:55 a.m.
10

11   Before:

12                    HON. P. KEVIN CASTEL,

13                                         District Judge

14                         APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  KYLE A. WIRSHBA
17        JACOB GUTWILLIG
          ELINOR TARLOW
18        DAVID ROBLES
          Assistant United States Attorneys
19
     RENATO CHRISTIAN STABILE
20   RAYMOND L. COLON
     SABRINA P. SHROFF
21        Attorneys for Defendant

22   Also Present:   Francisco Olivero, Interpreter (Spanish)
                     Dagoberto Orrantia, Interpreter (Spanish)
23                   Sonia Berah, Interpreter (Spanish)
                     Matthew Passmore, DEA Special Agent
24

25
```

O2KHHer1

```
1            (Case called)
2            THE COURT:  This is United States of America against
3    Juan Orlando Hernandez.
4            Is the government ready?
5            MS. TARLOW:  Yes, your Honor.  Good morning, your
6    Honor.  Elinor Tarlow, for the government.  I am joined by
7    Assistant United States Attorneys Jacob Gutwillig, Kyle
8    Wirshba, David Robles, paralegal specialist Kayla Collins, and
9    DEA Special Agent Matthew Passmore.
10           THE COURT:  All right.  Appearing for the defendant,
11   please.
12           MR. COLON:  Good morning, your Honor.  Raymond Colon
13   on behalf of Mr. Juan Orlando Hernandez Alvarado.  To my left I
14   have cocounsel, Mr. Renato Stabile, Ms. Appelbaum, and
15   Ms. Alameno, our jury selection —— jury specialist, Judge, and
16   research specialist.
17           THE COURT:  And?
18           MR. COLON:  And I've got Ms. Sabrina in front of us.
19           THE COURT:  Ms. Shroff.
20           MS. SHROFF:  Good morning, your Honor.  Andrew Klein
21   is also here, your Honor.  He's part of the defense team and
22   working with the demonstratives, as well as participating in
23   jury selection.
24           THE COURT:  Good morning to you all.
25           So we're waiting for our jurors to be ready.  A few
```

O2KHHer1

| 1 | housekeeping matters:  I put in my order of late last week with |
|---|---|

housekeeping matters:  I put in my order of late last week with

regard to Mr. Stabile's motion for a continuance that I would

have a written order.  And what I will do is I will give the

defense the unredacted order, and the government will receive

the redacted order.

If you will, please.

All right.  In addition, I'm going to have marked as a

court exhibit the questions.

Do we have those?

Let me explain to you what the questions are.  They

are not the only questions I'll be asking.  They are not even

the exact wording of the questions I will be asking.  They are

an aid to memory, which the jurors will have, and they will

have it at some point in voir dire.  It's been marked as Court

Exhibit 1.

And if you could give one copy to each side.

And, of course, there will be follow-up questions for

any juror who answers affirmatively to any of the questions.

The other matter I think we can usefully take up this

morning is the government filed a motion *in limine* on, I

believe it was, February 7, and I wanted to hear from the

defense with regard to that motion *in limine*.

MR. COLON:  Yes, your Honor.  May I just consult with

Ms. Shroff for a second?

THE COURT:  Sure.

O2KHHer1

1           We'll take a very brief recess.

2           (Recess)

3           THE COURT:  Mr. Colon.

4           MR. COLON:  Thank you, your Honor.  We're opposed to

5   the government's motion.  It's specifically —— I think it's

6   GX 404.  It has to do with my client, Mr. Hernandez Alvarado,

7   about the conversation that Witness No. 1 apparently was given

8   by the government, a recorded conversation by virtue of a

9   Honduran government interception.

10          THE COURT:  Let's first begin with whether Witness-01

11  should be permitted to testify under a pseudonym.  Do you have

12  any objection to that?

13          MR. COLON:  No, Judge, not at all.

14          THE COURT:  All right.  Then the question is whether

15  statements —— first part of it is several of the defendant's

16  coconspirators, says the government, made statements to

17  witnesses for the other coconspirators in the presence of

18  witnesses regarding the drug trafficking conspiracy, their

19  efforts to protect themselves and their drug trafficking

20  operation, and their attempts to increase their power in

21  Honduras through corruption and cocaine-fueled bribes.  That's

22  what the government says.  Witness-01 will offer several

23  statements between members and associates of MS-13 concerning

24  drug trafficking with the Cachiros and Valle drug trafficking

25  organizations and Bonilla's involvement in protecting drug

O2KHHer1

shipments, as well as conversations between Mendoza and Bonilla about drug trafficking.

Now, we know, and I believe there's no dispute even from the government, that those statements would be out-of-court statements admitted for the truth of their content and inadmissible hearsay but for the fact of 801(d)(2)(E), that they are statements by a coconspirator during and in furtherance of a conspiracy.

Is that the government's position?

MS. TARLOW:  Yes, your Honor.

THE COURT:  All right.  Mr. Colon?

MR. COLON:  The problem with that, that assessment of the government's position, is that the individual who is ——

THE COURT:  Get by a microphone.  It will be a bit easier for the court reporter.

MR. COLON:  I think I should stay here.

THE COURT:  One of the disadvantages of this courtroom is its size, and therefore, we all have to use the microphone.

MR. COLON:  I can appreciate that.  Thank you, your Honor.

I think the seminal issue here is the person that's being given this recorded, we'll say at this point, intercepted Honduran government operation, this individual is not a coconspirator.  It happens to be the girlfriend of this individual named Mendoza, aka Porky, and that individual ——

1    there's no evidence whatsoever that she is a coconspirator.

2           In addition, I think what's fatal to this application,

3    is that, while she listens and identifies the voice of

4    Mr. Mendoza, she may have that relationship with him, she could

5    tell who it is, she can't say or determine or identify who the

6    other person that Mr. Mendoza's speaking to.  So we don't know

7    if he's a coconspirator.  We don't know if he happens —— this

8    information was gathered from a journalist or something he read

9    or overheard.  Porky's conversation is sandwiched between two

10   individuals that at this point are not known coconspirators,

11   and that's, I think, what's fatal to that application.

12           THE COURT:  All right.

13           MR. COLON:  I'm sorry, Judge, if I may?

14           THE COURT:  Yes.

15           MR. COLON:  Judge, I think the best way to synthesize

16   this, this is really triple hearsay.  There's someone that

17   makes a statement on the other line that Mr. Mendoza is

18   speaking to.  We don't know, the government doesn't know who he

19   is.  The Witness No. 1, I believe she's a female.  She doesn't

20   know who it is.  And Mr. Mendoza, Porky, doesn't identify who

21   it is.  So you don't know whether he's a coconspirator.

22           And then we have Mr. Mendoza relaying something or

23   speaking or declaring something, repeating something that the

24   unknown individual has said to him.  That then is received or

25   at least —— at least recognized as the voice of Mr. Mendoza.

O2KHHer1

1    But that individual, she in and of herself is not a

2    coconspirator.  So you have two coconspirators.  It's almost

3    triple hearsay.  That's why we suggest, humbly, that the

4    government's motion *in limine* should be denied.

5              THE COURT:  Thank you, Mr. Colon.

6              MS. TARLOW:  May I respond?  Thank you.

7              First, I just want to correct one statement that

8    defense counsel just made.  With respect to the statements of

9    Witness-01 that are described in our header No. 1 in our motion

10   *in limine*, those are not describing recorded phone

11   conversations.  We expect that Witness-01 will testify about

12   phone conversations that she overheard.

13             With respect to category two, which does describe the

14   recorded phone conversations, we expect that Witness-01 in fact

15   will testify that, with respect to Government Exhibit 404, she

16   can identify, she knows who both participants were on the call.

17   Even if she couldn't, though, your Honor, we would respectfully

18   submit that it should still be admissible because the other

19   participants' conversation, their portion of the conversation,

20   provides context for Porky and his statements, and he is a

21   coconspirator.

22             THE COURT:  All right.  Here's the question that I

23   understand Mr. Colon has raised is that the declarant is not a

24   coconspirator, or has not been alleged to be a coconspirator.

25   And if the declarant is not a coconspirator, then it all fails

O2KHHer1

1    right there.

2              MS. TARLOW:  Your Honor, we do not believe that that

3    is accurate as a matter of law.  A witness can take the stand

4    and testify —— any witness who is not a coconspirator

5    themselves can take the stand and testify to things that they

6    have heard from coconspirators, and they would be admissible

7    under 801(d)(2)(E).

8              THE COURT:  Now, with regard to under heading two, is

9    it the case that the witness, Witness No. 1, cannot identify

10   the persons who are speaking, is that correct?

11             MS. TARLOW:  Yeah.  Your Honor, my understanding is

12   she can identify both participants, Porky, who's Mendoza, as

13   well as Campbell, who is the other participant on the phone

14   calls.

15             THE COURT:  This is under heading No. 2, statements

16   made by MS-13 members and associates and Bonilla?  Is that what

17   you're referring to?

18             MS. TARLOW:  Oh, I'm sorry, your Honor.  I thought you

19   were referring to the four audio calls.

20             THE COURT:  No.

21             MS. TARLOW:  Yes.  My understanding is she can

22   identify —— to the extent that people are listed under that

23   heading, their names are listed, that she would be able to

24   identify who those other people are.  So, for example, under

25   No. 2, we state on one other occasion Witness-01 heard Mendoza

O2KHHer1

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | and another MS-13 member known to Witness-01 as Anwar discuss        |
| 2  | that Bonilla had recently helped the gang procure cocaine.  She       |
| 3  | would be able to identify the other participant as Anwar in           |
| 4  | that instance, for example.                                          |
| 5  | THE COURT:  And with regard to the four audio calls?                 |
| 6  | MS. TARLOW:  Yes, your Honor.  Our understanding is                  |
| 7  | that she would be able to identify the other participants on         |
| 8  | the four audio calls, in addition to Porky.                         |
| 9  | THE COURT:  All right.  Mr. Colon.                                   |
| 10 | MR. COLON:  Yes, your Honor, we don't think that this               |
| 11 | is — this is not just one large omnibus conversation.  These         |
| 12 | are multiple conversations over time.  So we don't know when         |
| 13 | this conversation actually occurred, but I don't believe that        |
| 14 | the government is saying that Mr. Campbell was on the                |
| 15 | conversation, or at least the tape or the recorded conversation      |
| 16 | that she heard.                                                      |
| 17 | THE COURT:  You're talking about Witness No. 1?                      |
| 18 | MR. COLON:  Yes.  I mean, No. 1 was there, but this                  |
| 19 | conversation was separate.                                           |
| 20 | THE COURT:  Sir, sir, is that the anonymous identity                 |
| 21 | of the witness, Ms. Tarlow?                                          |
| 22 | MS. TARLOW:  Your Honor, I'm a little confused by                   |
| 23 | which section defense counsel is referring to.                      |
| 24 | THE COURT:  He mentioned a name.  That's my                         |
| 25 | preliminary concern.  Just confer with Mr. Colon.  I don't know     |

O2KHHer1

1    if that's the pseudonym or the name.

2              MS. TARLOW:  Give me one moment, your Honor.

3              THE COURT:  Yes.

4              (Counsel confer)

5              MS. TARLOW:  I'm sorry, your Honor.

6              THE COURT:  Yes.

7              MS. TARLOW:  With respect to the individual who we've

8    been referring to as David Campbell, that is not Witness-01.

9              THE COURT:  All right.  I am not familiar with names

10   at this point, so I wouldn't know that.

11             MS. TARLOW:  Yes.

12             THE COURT:  Thank you.

13             Mr. Colon, keep going.  Mr. Colon.

14             MR. COLON:  I'm sorry, Judge.

15             Judge, I think that the issues here are relevance and

16   admissibility.  I think that's the problem.  This motion that

17   the government is offering here, or at least asking the Court

18   to approve, is basically something that's something that you

19   can't really tell whether this information is reliable, right,

20   and then it's whether it's admissible or not.  Now we're going

21   into an area of triple hearsay, Judge, that just belies the

22   fact that it can be offered here for the truth of what was

23   said.

24             THE COURT:  Thank you, Mr. Colon.

25             So for a coconspirator's statement to be admissible,

O2KHHer1

1    first of all, it must be relevant, as Mr. Colon points out,

2    and, further, there must be an exception under the hearsay rule

3    and a trial judge must be able to say —— and, of course,

4    testimony can be taken subject to connection and subject to

5    being stricken, but at the time the government rests, if not

6    sooner, the judge has to be able to say that, by a

7    preponderance of the evidence, the participants in the

8    conversation were members of the conspiracy and also by a

9    preponderance of the evidence that the statement was made in

10   furtherance of the conspiracy.  That finding, of course, is not

11   one that is communicated to the jury or need even be put on the

12   record because it's implicit in the Court not striking it.

13          But it seems to me, based on what I have heard and

14   what I've read, that presumptively these statements are both

15   relevant and made during and in furtherance of the conspiracy

16   and are, therefore, presumptively admissible.  I reserve the

17   right to either exclude it at the time it's offered or strike

18   it if it's offered and received if I conclude at that point

19   that they fail the hearsay exception.  So that's my ruling.

20          MR. COLON:  Judge, if I may just say one last thing.

21          THE COURT:  Well, no, no, the time for saying last

22   things about that motion ended.  So just so you understand,

23   Mr. Colon, I'll try to do my best to hear everybody out, but

24   after I hear them out and I rule, we're on to the next thing.

25          MR. COLON:  I understand.

O2KHHer1

```
 1              THE COURT:  All right.  It seems to me at this point,
 2     unless there is something else that the parties want to
 3     discuss, we'll be able to adjourn until our jurors are ready.
 4     So that you know, I'm selecting —— in addition to our 12
 5     regular jurors, I'm going to select six alternates, which means
 6     I will need to qualify a total of 40 jurors today.  The
 7     defense, of course, will have ten strikes directed to the
 8     regular jurors, the government will have six strikes directed
 9     to the regular jurors, and each side will have three strikes
10     directed to the alternate jurors.  The strikes will be given at
11     the sidebar alternating.  I'll let the government go first on
12     the strikes and then the defendant, and that's what we'll do.
13              I will also determine from you that you understand the
14     pool of jurors from whom you're exercising strikes, which is
15     usually expressed —— it will be between Juror No. 1 and juror
16     whatever the number ends up being from which you're exercising
17     your strike.  I will do the same thing with the alternate
18     jurors.  Any strike not exercised is waived.  If we have excess
19     jurors in the cohort, the jurors with the lowest number serve.
20              All right.  Yes, sir.
21              MR. STABILE:  Can I just ask one question, your Honor?
22              THE COURT:  Sure, Mr. Stabile.
23              MR. STABILE:  Thank you.
24              With respect to the alternate pool ——
25              THE COURT:  Yes.
```

O2KHHer1

1          MR. STABILE:  —— let's just say the first pool, the

2     main jury, 27 and 28, they're not on the main jury.  Will they

3     be the first two in the alternate pool, or does the Court have

4     a separate alternate pool?

5          THE COURT:  I anticipate —— and in jury selection,

6     sometimes the Court and the parties are asked to —— or the

7     Court asks the parties to stay flexible —— I anticipate that it

8     will be a separate pool.  I anticipate that.  The important

9     thing, Mr. Stabile, is you will know for sure.  I don't want

10    you exercising strikes if you don't know who you're exercising

11    them against.  But absent a different instruction later on, it

12    will be against a separate pool of alternates.  So, for

13    example, in your hypothetical, if 27 and 28 are not stricken

14    and the alternates start with Juror No. 29, it will be 29 to

15    No. 40.  So there we are.

16         MR. STABILE:  So 27 and 28 in that hypothetical are

17    leaving?

18         THE COURT:  They're just gone, yes.

19         MR. STABILE:  Understood.  Thank you, your Honor.

20         Just one other question.  I'm sorry.

21         THE COURT:  No, that's all right.

22         MR. STABILE:  Are you going to qualify all 28, have 28

23    qualified and then we'll do the peremptories, or you do the

24    peremptories in some other fashion?

25         THE COURT:  No, I do them all at once.  The question

O2KHHer1

1    you've raised, though, which is not a bad question, is what

2    will I do about the alternates?  Will I have you exercise

3    against the regulars and then do further questioning to arrive

4    at our alternates?  I don't think I will do that, but I reserve

5    the right to do that.  But as to the 28 qualified jurors, that

6    will happen all at once.

7          MR. STABILE:  And my final question is, in terms of

8    cause challenges, is that something we will do all at once, or

9    does your Honor ——

10          THE COURT:  No.

11          MR. STABILE:  —— ask us to make cause challenges as

12    the issue comes up?

13          THE COURT:  As the issue comes up, please.  If you've

14    been involved in a trial or appeared before me in a trial, this

15    is something that you'll be fully familiar with, but I may

16    excuse a juror at the sidebar, and that is my ruling, but tell

17    the juror to return to their seat and excuse them from the

18    courtroom at a later period of time.

19          MR. STABILE:  Understood.  So there could be three

20    jurors in the box who we know are excused, but they are going

21    to sit there anyway?

22          THE COURT:  Correct.

23          MR. STABILE:  Understood.

24          THE COURT:  Correct.

25          MR. STABILE:  Final question:  Will we receive a juror

1    list with the jurors' names?

2          THE COURT:  Because this is an anonymous jury as a

3    result of my prior ruling, I'm doing this the way I did it in

4    the prior trials of the defendants in this case, and so the

5    jurors will be identified by juror number.  There will be

6    inquiry as to where they live, how long they've lived there.

7    And so we'll know that they're qualified, we'll know the

8    geographic region that they're from, and that will be the

9    information that's available.

10          MR. STABILE:  But they will be anonymous to the

11    parties, your Honor?

12          THE COURT:  Yes.

13          MR. STABILE:  I just note my objection to that.  I

14    believe that the parties at least should know the names of the

15    jurors so we can evaluate who they are.  I mean, their last

16    names could be relevant.  If somebody's named Hernandez, if

17    somebody's named Ardon Soriano, that would be relevant

18    information.

19          I also — I believe we should be able to do some of

20    our own research on the jurors.  I know that that's certainly

21    common in this district.

22          THE COURT:  And share this with whom?

23          MR. STABILE:  Not share it with anyone.  It would

24    remain — I'm asking for attorneys' eyes only.

25          THE COURT:  With your client?

O2KHHer1

1              MR. STABILE:  We would not share it with our client.

2              THE COURT:  Let me find out from the government.

3              Any objection?

4              MS. TARLOW:  May we have one moment, your Honor?

5              THE COURT:  Yes.

6              MS. TARLOW:  Your Honor, no objection if it is on an

7    attorneys' eyes only basis.

8              MR. STABILE:  Your Honor, it will be on an attorneys'

9    eyes only basis.

10             THE COURT:  That's fine.

11             MR. STABILE:  Thank you.

12             THE COURT:  Anything else before we adjourn till our

13   jurors come in?

14             MS. TARLOW:  Not from the government, your Honor.

15             THE COURT:  OK.  Let me see whether I can get an

16   update on where we stand.

17             (Recess)

18

19

20

21

22

23

24

25

O2K5her2

1           (A jury of 12 and 6 alternates was impaneled and

2     sworn)

3           THE COURT:  Ladies and gentlemen who have been with me

4     all day long, we are going to give you your cards.  You can go

5     back down to the jury assembly room with the thanks of the

6     Court for participating in this essential process.

7           JUROR:  Thank you.

8           THE COURT:  Thank you.

9           Now, ladies and gentlemen, I'm not going to keep you

10    very long.  What we are going to do is we are going to show you

11    where the jury room is and we are going to do some phone number

12    exchanging.  We are going to give you how to reach the Court if

13    you are stuck on a train or something happens where you are not

14    here on time.  Please let us know.  You will have the phone

15    numbers.  We will also give you the fancy white card that will

16    help you get through the line and you will bring your cell

17    phone up.  We have a cabinet in the jury room and you can keep

18    your cell phone in the cabinet.  Please do not bring it into

19    the courtroom.  But, you will be able to access it on breaks.

20          We will start tomorrow morning at 10:00.  In order to

21    start at 10:00, you really have to be here -- you have to be at

22    the court house by quarter to, even with the nifty card.  And

23    you come on up and you will -- there is a light, we will show

24    you where the light is in there if we can find it -- we are not

25    usually in this courtroom -- but we will find out from you

O2K5her2

1    whether all 18 of you are here.  We need all 18 of you or we

2    can't proceed.

3           Now, tomorrow morning I'm going to give you

4    preliminary instructions about how the trial is going to

5    proceed but there are several important instructions I need to

6    give you before we break for the night.

7           (Continued on next page)

O2KHHER3

1          THE COURT:  (Continued) Do not discuss the case among

2    yourselves or with anyone else.  You know, you're going to be

3    able to tell anyone, friends or family, when the case is over

4    what happened in the courtroom.  You can tell them what you

5    saw, what you heard, what you experienced, and that you'll be

6    able to do when the case is over but not before the case is

7    over.

8          Now, that means that you'll have a little bit of

9    mystery in your life.  So, family and friends will say:  Well,

10   you said you were going for jury duty.  What happened?

11          I'm on a jury.

12          Oh, that sounds exciting.  What's the case about?

13          I'm not allowed to discuss the case, not at all, not

14   with anyone, not even a little bit.

15          And that crack, when you open that crack, it's hard to

16   shut it.  So be good jurors.  Be the kind of jurors you would

17   want to be, you would want to have, if a loved one of yours was

18   involved in an important case.  And all cases are important.

19          The other thing is when you're in the jury room, for

20   example, tomorrow morning, when I say don't discuss the case,

21   don't discuss the case at all.  Gee, I wonder who the witnesses

22   are.  Gee, I wonder why so-and-so's name was on the list.  Gee,

23   I wonder what or so.  That's off limits, and if it's after a

24   witness takes the stand, you don't go in and say, well, wasn't

25   that great, wasn't that terrible, or anything.  Talk about

O2KHHER3

```
1    sports, talk about the weather, talk about daylight saving time
2    coming up and how you hope to be done with your jury service by
3    the time we get to daylight saving time.  That's where you are,
4    so that's what I ask you to do.
5         The other thing is do not do any research on your own.
6    Why?  I want you to think with me.  If you were involved in a
7    trial, you would want the trial to be based on the evidence
8    that comes out in the courtroom, because when it comes out in
9    the courtroom, both sides get to address it.  When somebody
10   does an Internet search —— and we all know there could be crazy
11   stuff out there —— one side or the other or both sides,
12   actually, are deprived of the opportunity to correct the
13   mistakes.
14        So no searching on the case, the names —— anything.
15   Resist the temptation.  Don't do it.  Be the kind of juror you
16   would want if it was your son or father or brother or daughter
17   who were involved in a criminal case.  You would want jurors
18   who follow their oath, so I ask you to do that.
19        So with that, you're going to take a quick trip into
20   the jury room with my law clerks.  You're going to get the
21   information, we're going to collect your cell phone number so
22   that we could reach you if we had to, and then we will see you
23   for a 10 o'clock start.
24        Thank you, ladies and gentlemen.  Please stand for the
25   jury as they exit.
```

O2KHHER3

1              (Jury excused)

2              THE COURT:  Mr. Colon.

3              MR. COLON:  Yes, sir.

4              THE COURT:  I'll wait till the door is closed.

5         Mr. Colon, I abruptly cut you off before at one point

6    on one of the breaks, and I wanted to hear what you had to say.

7    It didn't sound good about your mother, and I'm sorry to hear

8    that.

9              MR. COLON:  You want me to do that from here, your

10   Honor?

11             THE COURT:  You can do it wherever you want.  Do you

12   want it at the sidebar?

13             MR. COLON:  Yeah.

14             THE COURT:  OK.  Let's do it at the sidebar.

15             (At sidebar)

16             MR. COLON:  Thank you, Judge.  And I didn't take it

17   the wrong way.  I know we needed to move on.

18        My mother, Lilian Colon, who's 91 years old plus

19   almost ten months, she's actually at a Prospect Heights Care

20   Center.  She went from the hospital to that center.  It's a

21   rehab center, but it can also phase into hospice.

22             THE COURT:  I see.

23             MR. COLON:  So she was in Hackensack Hospital about a

24   month.  She was transferred over.  She has congestive heart

25   failure.  She's already been given her last rites.  Now, she's

O2KHHER3

```
1   pretty feisty and has been hanging on.  She even got COVID
2   while she was in the hospital, and she's still around.
3            Just letting you know that.  I could get a call any
4   day now.
5            THE COURT:  Right.
6            MR. COLON:  At that age, it's just ─── you know, it's
7   up and down.  She may feel better and then all of a sudden ───
8   sometimes they get multiple last rites.  I'm just telling you
9   that because I told the government that.
10            THE COURT:  Thank you.
11            MR. COLON:  I don't know, obviously, when the time
12   will come.
13            THE COURT:  Right.
14            MR. COLON:  But just wanted to let you know.
15            THE COURT:  Right.  I should say, that was my mother's
16   last illness, congestive heart failure, so I understand.  And
17   you have my sympathies, and we'll hope for the best here.
18            All right.  So thank you.
19            MS. TARLOW:  Your Honor, if I may just bring up one
20   other matter.  We expect that our first witness, who we'd call
21   tomorrow, is one who is testifying under a pseudonym.  We also
22   moved for your Honor to preclude the courtroom sketch artist
23   from drawing any likeness of that witness.  I don't know how
24   your Honor wants to handle that, but we want to just bring that
25   to your Honor's attention.
```

O2KHHER3

1          THE COURT:  All right.  Well, I'm going to ask you to

2     remind me tomorrow.  Now, one of the things, I have no idea

3     whether this is going to be wall-to-wall sketch or whether

4     they're going to disappear after — I could bring them up now

5     and see.

6          (In open court; jurors present)

7          THE COURT:  Ms. Rosenberg and Ms. Williams, if I could

8     ask you to come to the sidebar one moment, both of you.

9          (At sidebar)

10         MS. TARLOW:  Your Honor, there will also be additional

11    witnesses.  We can give your Honor a list.

12         THE COURT:  Wait for Ms. Rosenberg.

13         Come on up, both of you.

14         As you both know, you're always welcome in this

15    courtroom and welcome to sketch anything you'd like, except

16    jurors' faces, as you know.  After opening statements tomorrow,

17    there will be a witness testifying under a pseudonym as to

18    which I've already entered an order that they cannot be

19    sketched or photographed.  I just wanted to give you a

20    heads-up.  There are some other witnesses that fall into this

21    category, and we'll let you know.

22         MS. ROSENBERG:  In advance, before we start drawing?

23         THE COURT:  Yes.  I think the government is going to

24    let me know, and I'll let you know.

25         MS. WILLIAMS:  Just to be clear, we can draw a jury

O2KHHER3

| | |
|---|---|
| 1 | but not their faces, is that right?  We can draw — or |
| 2 | no anything? |
| 3 | THE COURT:  I would say. |
| 4 | MS. WILLIAMS:  No jury. |
| 5 | THE COURT:  No jury at all. |
| 6 | MS. WILLIAMS:  That makes it easier. |
| 7 | MS. ROSENBERG:  Can we draw, like, circles? |
| 8 | THE COURT:  No, because the act of turning your chair |
| 9 | and focusing on them could have an impact on this trial.  So |
| 10 | I'm not going to permit that. |
| 11 | MS. ROSENBERG:  What about those witnesses we can't |
| 12 | draw?  Can we do circles on them or nothing?  Like, not even be |
| 13 | here? |
| 14 | THE COURT:  You're always allowed in the courtroom. |
| 15 | I'm not going to bar you from the courtroom.  I understand what |
| 16 | you're saying. |
| 17 | MS. ROSENBERG:  Can we draw a faceless? |
| 18 | MS. TARLOW:  We would have no objection to a mere |
| 19 | circle. |
| 20 | MS. ROSENBERG:  We could approve it; like, we could |
| 21 | show it to you? |
| 22 | THE COURT:  Well, if it's a faceless circle, then we |
| 23 | take you at your word.  If it's sort of a face, that's a |
| 24 | problem. |
| 25 | MS. ROSENBERG:  Yeah, OK. |

O2KHHER3

1          THE COURT:  So I don't know whether anybody's

2    interested in seeing, because even I can draw an oval ——

3          MS. ROSENBERG:  Sometimes they let us put hair but no

4    features.

5          THE COURT:  No, I'm not one of those people because

6    the line drawing is too hard.  And I don't mean that the line

7    on the page —— you know what I mean.

8          MS. ROSENBERG:  I get it.  OK.  Thank you.

9          THE COURT:  So thank you.  Thank you, all.

10          MS. WILLIAMS:  Thank you so much.  I really appreciate

11    the clarification.

12          MS. ROSENBERG:  Yes, thank you.

13          THE COURT:  Now, before we go, how long does the

14    government think it wants for opening statements?

15          MR. ROBLES:  Judge, I think no more than 15 minutes.

16          THE COURT:  How much does the defendant think it wants

17    for opening statements?

18          MR. STABILE:  I've been running 35, so I was going to

19    ask for leeway to go to 45.  I don't think I will, your Honor.

20          THE COURT:  Yes, thank you.  So If you could keep it

21    to your 35, that's fine.

22          MR. STABILE:  I'll try very hard, but I'm just

23    alerting your Honor.

24          THE COURT:  Well, please go through your notes tonight

25    and work it down to 35.

O2KHHER3

1          MR. STABILE:  Your Honor, I am going to be using a

2     PowerPoint that I've shared with the government.

3          THE COURT:  Good.  That sounds like a good plan.

4          MR. STABILE:  OK.

5          THE COURT:  Very good.  All right.  Have a pleasant

6     evening.  Thank you all very much.  Thank you, everybody.

7          We're adjourned.  Thank you.

8          (Adjourned to February 21, 2024, at 9:30 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25