O38HHer1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                         15 Cr. 379 (PKC)

 5   JUAN ORLANDO HERNANDEZ,

 6                                         Trial
                   Defendant.
 7   ------------------------------x

 8                                         New York, N.Y.
 9                                         March 8, 2024
                                           10:25 a.m.
10

11   Before:

12                      HON. P. KEVIN CASTEL,

13                                         District Judge

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  KYLE A. WIRSHBA
17        JACOB GUTWILLIG
          ELINOR TARLOW
18        DAVID ROBLES
          Assistant United States Attorneys
19
     RENATO CHRISTIAN STABILE
20   RAYMOND L. COLON
     SABRINA P. SHROFF
21        Attorneys for Defendant

22   Also Present:   Gabriel Mitre, Interpreter (Spanish)
                     Mirta Hess-Loedel, Interpreter (Spanish)
23                   Matthew Passmore, Special Agent

24

25
```

O38HHer1

```
1                (Trial resumed; jury not present)
2                THE COURT:  I understand the government wanted to see
3    me.
4                MS. TARLOW:  Yes.  And apologies, your Honor, for
5    asking for the request.  We received, as your Honor did, an
6    email from defense counsel at 7:24 this morning with a letter.
7    I'm sorry we have not had a chance to respond by letter.  We
8    wanted to make an appearance before your Honor to respond
9    orally.
10               THE COURT:  This is with regard to the testimony of
11   Jennifer Taul?
12               MS. TARLOW:  Yes, your Honor.
13               THE COURT:  Yes.  Thank you.
14               MS. TARLOW:  Thank you, your Honor.
15               Mr. Stabile has twice now in two days made baseless
16   allegations that have impugned the AUSAs' credibility and good
17   faith.  First, he accused me yesterday, and again in the letter
18   today, of purposely misleading the jury in my rebuttal
19   summation when, in fact, he knew that I relied on evidence in
20   the record regarding Ms. Taul's testimony that she described
21   that the volume of cocaine that came through Honduras went up
22   over a given period of time.  He then did nothing to bring that
23   claim regarding the testimony, his claim which the government
24   disagrees with that the testimony was inaccurate, he did
25   nothing to bring it to the government's attention or the
```

O38HHer1

1      Court's attention.

2                  THE COURT:  Just one factual point.  This was brought

3      out in his cross-examination, not Ms. Taul's direct?

4                  MS. TARLOW:  Exactly, your Honor.  Yes, your Honor.

5                  So just stepping back for a second, the government, of

6      course, in its summation can rely on evidence in the record

7      that was made at trial.  The record was made, as your Honor

8      just pointed out, during Ms. Taul's cross-examination.  That's

9      in the transcript at pages 614 to 615.  They then followed up

10     regarding that testimony that I just described that the volume

11     of cocaine in Honduras went up in a given time period.  Defense

12     counsel followed up on that testimony on cross-examination.

13     They tried to undermine the credibility of her response by

14     probing the basis for her testimony.  They also tried to

15     undermine her credibility as an expert regarding her

16     qualifications and her expertise, and they were clearly probing

17     whether or not her testimony was accurate.  That was an issue,

18     as your Honor pointed out yesterday, that they were trying to

19     draw out before the jury at the time she testified, which was

20     weeks ago.

21                 In any event, what they've now presented to the Court,

22     the reports that they're describing, it's not inconsistent with

23     what she said.  So Ms. Taul said —— and, again, this is at the

24     trial transcript 614 to 615 —— that she based her testimony on

25     both private and public reports.  I think she specifically

O38HHer1

1    cited to DEA reporting.  The reports that defense counsel now

2    argues, baselessly, is inconsistent with her testimony are

3    State Department reports.  And as I'm sure your Honor has seen,

4    those reports are not inconsistent with what she said.

5            So, for example, the 2016 report that they cite, that

6    says that the volume decreased from 2014 to 2016, but it does

7    not describe any other period of time.  The 2017 report

8    describes that a number of aircrafts suspected of smuggling

9    cocaine decreased in 2016 from what it was in 2015.  It does

10   not discuss the general volume of cocaine transiting Honduras.

11   The 2020 report has no bearing on any of these issues.  It

12   describes that 4 percent of cocaine shipments made a stop in

13   Honduras in 2019.  It has no bearing on her testimony.  And the

14   2022 report only describes that in the first nine months of

15   2021, there were more seizures in Honduras in that year than in

16   2020.  Those four reports are not inconsistent with her

17   testimony.  They don't warrant reopening the record, even if

18   they had timely made this argument and if there was some basis

19   to it.

20           This morning defense counsel raised a new claim, which

21   is also baseless.  It was a last-ditch effort, and they've said

22   that Dr. ──

23           THE COURT:  What?

24           MS. TARLOW:  I'm sorry, your Honor, a last-ditch

25   effort to try to reopen the record ──

O38HHer1

1          THE COURT:  OK.

2          MS. TARLOW:  —— claiming that someone who testified in

3     an entirely different trial before your Honor ——

4          THE COURT:  Right.

5          MS. TARLOW:  —— Dr. Euraque, that somehow his

6     testimony in that different trial has any bearing on the case

7     here.

8          THE COURT:  That was a witness called by the defense

9     in that case?

10          MS. TARLOW:  No, your Honor, that was called by the

11     government.

12          THE COURT:  OK.

13          MS. TARLOW:  But he was qualified as an expert on a

14     different issue.  He was qualified as an expert on Honduran

15     politics.  He was not qualified to talk about the amount of

16     cocaine, the pricing of cocaine, etc., at that trial.  He

17     wasn't even called in this trial.  Ms. Taul, Jennifer Taul, was

18     qualified as an expert on the relevant issues at this trial.

19          In any event, the government informed Mr. Stabile and

20     the rest of the defense team that it was unlikely to call

21     Dr. Euraque long before trial.  That was on February 7, weeks

22     before this trial began and long before Ms. Taul testified.

23     They have had Dr. Euraque's testimony from that prior trial

24     since June of 2022, and they've also had Ms. Taul's 3500 since

25     January 4, 2024.  To the extent that this was an issue, some

O38HHer1

1    kind of contradiction that they're now asserting, they have had

2    that argument at their disposal for a very long time.

3            So their accusation — yes, sir.

4            THE COURT:  The Fuentes Ramirez trial testimony was

5    part of the 3500 material, is that correct?

6            MS. TARLOW:  Yes, your Honor.  That was provided to

7    defense counsel in June 2022.

8            THE COURT:  All right.

9            MS. TARLOW:  So to suggest that now this is an issue

10   with Ms. Taul's testimony and that this is a matter that

11   defense counsel has just recently learned and, therefore, has

12   not had time to address is just absolutely baseless and wrong.

13           They've argued that this is a matter of strategy —

14   I'm sorry, they're arguing this is not a matter of strategy,

15   but it plainly is.  They're raising this at the eleventh hour.

16   They're trying to make a record that they're ineffective,

17   clearly, to lay a groundwork for some kind of future claim.

18   And they've done that, as your Honor noted, from the very

19   beginning of this case, from prior to when trial started when

20   they made adjournment requests that were not founded in any

21   reasonable basis, and they've continued to this day, at the

22   eleventh hour, to try to make a similar claim that is plainly

23   strategic.

24           THE COURT:  Yes.  The Court made a finding that the

25   requests, for reasons that I explained in detail, were

O38HHer1

1    intentionally manipulative of the process.

2          Go ahead.

3          MS. TARLOW:  Yes, your Honor.  And the government's

4    point is only that that trend has continued to this day to wait

5    until after the jury has already been instructed and now the

6    jury is deliberating to raise this point when it was clearly at

7    their disposal, they knew it was at their disposal, and they

8    strategically decided not to raise it until now.

9          THE COURT:  All right.  Thank you.

10          MS. TARLOW:  Your Honor, whenever your Honor is ready,

11    I also can address the second point that was raised this

12    morning by email from Mr. Stabile about the signs.

13          THE COURT:  All right.

14          MS. TARLOW:  But I can do that whenever your Honor

15    would like.

16          THE COURT:  Mr. Stabile.

17          MR. STABILE:  Thank you, your Honor.

18          Really, I'm just trying to get to the truth here.

19    Either drug trafficking between 2014 and 2022 through Honduras

20    went up or it went down.  In the Geovanny Ramirez trial, the

21    government put on an expert who acknowledged that it went down

22    with some very specific numbers.  Now, they didn't call him at

23    this trial, and they called a different person who they flew in

24    from Hawaii who said the opposite.  I'm trying to figure out

25    what the truth is.  But when I go online and I look at the

O38HHer1

1  United States government's State Department website and I look

2  at these INSCR reports, and the ones I've cited and the quotes

3  that I've cited, they all indicate to me that cocaine

4  trafficking through Honduras went down between 2014 and 2022.

5  The government stood up in its rebuttal summation — and I

6  understand that the government is entitled to rely on the trial

7  evidence — and the government said the opposite.

8        I am in good faith trying to get to the truth here.

9  The government has not — the government has suggested that

10  cocaine trafficking actually went up from 2014 to 2022, or has

11  at least suggested that the evidence is inconclusive.  I do not

12  see it that way.  What I am reading on official government

13  websites, in official government reports that are required by

14  law to be submitted by the president of the United States to

15  Congress and are required by law to include information

16  specifically from the DEA, all indicate to me that drug

17  trafficking, cocaine trafficking, through Honduras went down

18  between 2014 and 2022.  If that is, in fact, the case and the

19  government argued the opposite and solicited — well, didn't

20  solicit, but endorsed testimony from its own expert saying the

21  opposite, that's extremely troubling, and I think the jury is

22  entitled to know what the truth is.

23        THE COURT:  Thank you.

24        All right.  If you'll give me a few moments, I would

25  appreciate it.

O38HHer1

```
 1              (Brief recess)

 2              I have a note from the jury:  "Can we please turn up

 3     the heat?"

 4              We will turn up the heat on the jury.  However, we're

 5     doing it at the jury's request.

 6              (Brief recess)

 7              THE COURT:  All right.  I'll hear the government on

 8     the second point.

 9              MS. TARLOW:  Your Honor, if I may just make one last

10     point in response to something Mr. Stabile said ——

11              THE COURT:  Yes.

12              MS. TARLOW:  —— with respect to Dr. Euraque.

13              So Mr. Stabile has made allegations, falsely, stating

14     that the government purposely elected not to call Dr. Euraque

15     in this trial because the government believed it would be

16     inconsistent somehow with what Ms. Taul said.  First of all,

17     the decision, as I already said, by the government not to call

18     him preceded Mrs. Taul's testimony, so that factually could not

19     be the case.

20              Regardless, Mr. Stabile knows this is not why

21     Dr. Euraque was not called.  Dr. Euraque was an expert who was

22     qualified in the trial of Geovanny Fuentes Ramirez in Honduran

23     politics and history.  He is not qualified to testify about

24     what Ms. Taul did testify on cross-examination at this trial,

25     and so he could not have been called for that purpose here.  So
```

O38HHer1

```
1   we just wanted to make that clear to your Honor.  There was
2   never the purpose of calling him at this trial, nor could it
3   have been.
4               THE COURT:  All right.  One second, please.
5               MS. TARLOW:  Sure.
6               THE COURT:  Go ahead.
7               MS. TARLOW:  Thank you, your Honor.
8               With respect to the second point raised regarding
9   activity outside of the courthouse, signs, etc., the Court has
10  already instructed the jury that they must make their decision
11  based on the evidence in this case.  That would preclude them
12  from making any decision based on what they've seen when
13  they've entered the courthouse.
14              This is, again, another strategic decision by defense
15  counsel to raise it at this moment.  There has been activity
16  outside of the courthouse throughout the duration of this
17  trial.  In fact, one member of the defense team, maybe others,
18  has made statements to press outside of the courthouse and is
19  fully aware of activity that has occurred there.  The fact that
20  they are raising it now is, again, a decision to try to raise
21  it at a late hour, when they could have had an opportunity to
22  do so beforehand.  And, again, it is not an issue because the
23  jury has been instructed that they may not consider things like
24  that in their decision.
25              THE COURT:  All right.  My own observation is that
```

O38HHer1

1    it's across the street on the Columbus Park side of the street

2    and, whatever it is, has been there for quite some time.  I've

3    seen it.  I don't know how long it's been there.  I cannot

4    attest whether it's been since the beginning of the trial or

5    not.  I don't know, but it's been there for quite some time.

6              MS. TARLOW:  Yes, your Honor.  And it is, I think,

7    predominantly in Spanish and maybe a mix of both pro and con,

8    not solely against the defendant.

9              THE COURT:  I don't know that, but I do agree that it

10   is predominantly, but not exclusively, in the Spanish language.

11             MS. TARLOW:  Yes, your Honor.

12             THE COURT:  Mr. Stabile.

13             MR. STABILE:  Yes, your Honor.  Thank you.

14             So can I address the first point first regarding

15   Dr. Euraque.

16             THE COURT:  Yes.

17             MR. STABILE:  I don't know what the government's

18   intentions were, but the government asked the defense to enter

19   into a stipulation in lieu of calling him as a witness,

20   stipulating to a bunch of facts that the government apparently

21   thought were relevant to this trial.  As happens in

22   stipulations, I wanted to add some things, the government

23   didn't want to add those things, and so we didn't enter into a

24   stipulation.

25             My understanding is he was sitting here for at least

1    three days during the trial in the back of the courtroom.  I

2    don't know why the government had him there, to call him as a

3    rebuttal witness, or whatever, but I think the government

4    certainly thought that his information was, in fact, relevant

5    to this trial in some way.  So that's all I want to say on that

6    point.

7            In terms of what I observed outside the courthouse, I

8    have seen people outside the courthouse, but today was, in

9    fact, the first day that I ever saw a prison jumpsuit with my

10   client's name on it.  And I emailed photos to the Court.  So

11   it's a prison jumpsuit with my client's name on it and his

12   actual U.S. Marshals number.  And I walked over to it, and it

13   was his correct U.S. Marshals number.  Then ⸺ and handcuffs

14   draped over it and chains.  And then a little ⸺ a few feet

15   over was a prison jumpsuit of Tony Hernandez, which I think had

16   his U.S. Marshals number, although I wouldn't know if that's

17   correct or not.  It was overwhelmingly negative.

18           I walked over to the scene.  I, of course, snapped a

19   bunch of pictures.  I then got surrounded by people who were

20   taking pictures of me taking pictures of them.  I took a video

21   that's a minute in length ⸺ which I didn't submit to the

22   Court, but I'm happy to do so ⸺ to show that it's pretty much

23   overwhelmingly negative.  There are no supporters there.

24           THE COURT:  Let me see the video.

25           MR. STABILE:  OK.

O38HHer1

```
 1              THE COURT:  I will say, I saw this this morning.  I

 2    drove into the courthouse, and I didn't see — I'm not doubting

 3    what you're saying, but, certainly, I didn't see anything of

 4    what you're describing about jumpsuits or prison garb or

 5    anything of the like.

 6              MR. STABILE:  Well, I emailed the photos to the Court.

 7              THE COURT:  You did not understand the import of my

 8    remarks.

 9              MR. STABILE:  I'm sorry.

10              THE COURT:  It's not to contradict your claim.  It's

11    that I, too, entered the courthouse but did not observe any of

12    this.  That may have been — I wasn't looking for jumpsuits or

13    the like, but my point being that this is across the street

14    from the courthouse on the Columbus street side and not

15    something that is in the face of anyone coming into the

16    courthouse.  And that anyone coming into the courthouse would

17    have to see all of this, it's just not factually true.

18              But, anyway, I'd be happy to see your video.

19              MR. STABILE:  Sure.  Can I approach, and we can all

20    watch it together?

21              THE COURT:  Yes, sure.  No, I mean, if you want to

22    play it.

23              MR. STABILE:  I just meant if the government wants to

24    see it also.

25              THE COURT:  I see.  All right.  Show it at the
```

O38HHer1

1   sidebar, then.

2              (At sidebar)

3              (Video played)

4              (In open court)

5         THE COURT:  I'm going to direct you to preserve that

6   video and make it part of the record.  The video —— I'll wait

7   till everyone's back to your seat.

8         The video confirms precisely what my own observation

9   was, which is it's just not possible to see much of this from

10  the Worth Street, the courthouse Worth Street side.  It shows

11  the distance between this display and the courthouse.  It shows

12  that the jumpsuit was off to the side there.  Certainly, when

13  you first look at the display, you don't see it, and then it

14  focuses in on it.  And the pictures of —— I don't know, I'm

15  going to guess they're victims.  I don't know who the people

16  are.

17        You don't know, Mr. Stabile?

18        MR. STABILE:  I don't know.  I'm more focused on the

19  orange prison jumpsuits and chains.

20        THE COURT:  Yeah, but the pictures are actually on the

21  ground, could not physically be seen by someone who did not

22  approach the display.

23        So, in any event, thank you.  I see no reason to

24  disturb the jury.  They've heard multiple times from me in this

25  trial, in my preliminary instructions, in an instruction I gave

1    one day, I think, earlier this week —— I think it was earlier

2    this week —— and then in my final instructions that they have

3    to decide the case on what goes on in the courtroom and not any

4    extraneous matter.

5            MR. STABILE:  Your Honor, just so the record's

6    complete, can I just put on the record the specific instruction

7    I would ask for?  I understand your Honor's not going to give

8    it, but just for the record to be ——

9            THE COURT:  Is this in your letter?

10           MR. STABILE:  It is not.  I would like to read it.

11           THE COURT:  When I start ruling, then you want to give

12   it to me.  OK.  Go ahead.

13           MR. STABILE:  I would ask that the Court further

14   instruct the jurors:  "I want to remind you that you must not

15   be influenced by anything you see or hear outside of the

16   evidence you saw and heard in this courtroom.  You must decide

17   this case based exclusively on the evidence that was presented

18   in court during this trial and by nothing else."

19           THE COURT:  Actually —— you may be seated.  Thank you.

20           That application is denied.  I actually give a much

21   stronger instruction, as I did throughout my instructions.  On

22   several occasions I told the jury that they're to decide the

23   case on the evidence, or the lack of evidence, which I think is

24   stronger than even what you proposed.  It is unnecessary.  The

25   jurors have raised nothing about any external influence, and I

O38HHer1

1    instructed them earlier this week that if anybody approaches

2    them about the case, they're obligated to inform me.  So the

3    application is denied.

4           I have a ruling which I'll hand out with regard —— one

5    for Flo to be filed on the docket.  Yes, thank you.

6           So this is with regard to the Taul issue.

7           Is there anything further from the government?

8           MS. TARLOW:  No, your Honor.

9           THE COURT:  All right.  And it's denying the defense's

10   application.

11          Anything further from the defense?

12          MR. COLON:  No, your Honor.

13          THE COURT:  All right.  Thank you all very much.

14          MS. TARLOW:  Thank you, your Honor.

15          MR. WIRSHBA:  Thank you, your Honor.

16          (Recess pending verdict)

17          (At 12:10 p.m., jury note)

18          THE COURT:  There was a note.  It's been marked as

19   Court Exhibit 19, which reads:  "Could you please send us

20   testimony from Daniel" ——

21          MR. WIRSHBA:  McNamara.

22          THE COURT:  —— "McNamara regarding the dates of the

23   first public filings about Juan Orlando Hernandez."

24          Have you located the testimony and come to an

25   agreement?

O38HHer1

1              MS. TARLOW:  Yes, your Honor.

2              THE COURT:  All right.  Do you want to hand that up

3    for me, please.  I have it?  Let me just see.

4              This is page 1039, lines 2 through 20 and 1046,

5    lines 19 through 21?

6              MS. TARLOW:  Yes, your Honor.

7              THE COURT:  And that's acceptable to the defense?

8              MS. SHROFF:  Yes, your Honor.

9              THE COURT:  All right.  Do you have a copy to be

10   marked?

11             (Discussion off the record)

12             THE DEPUTY CLERK:  I will mark it as Court Exhibit 20.

13             THE COURT:  Flo or Stuart, could you hand this to the

14   deputy to be sent into the jury room.

15             Let me see counsel at sidebar.

16             (Page 1878 SEALED)

17

18

19

20

21

22

23

24

25

O38HHer1

1                    (In open court; jurors not present)

2                    THE COURT:  So this is Court Exhibit 21.  When we

3       print that out, that will be the next court exhibit, that

4       number.  Send it, it's 21 and 22.

5                    (Recess pending verdict)

6                    (At 1:22 p.m., jury note)

7                    THE COURT:  Please be seated.

8                    I have a note from the jury that we've reached a

9       verdict.  That's been marked as Exhibit 24, and the verdict

10      sheet has been marked as Exhibit 25.

11                   I just want to remind people who are in the courtroom

12      that there can be and will not be any display, anything said

13      regardless of what the verdict is.  The spectators in this

14      courtroom, I will say, have comported themselves appropriately

15      and in an appropriate, civilized, and courteous manner,

16      listening to the instructions of our court security officers

17      and others, and I appreciate that.  And I expect that good

18      behavior to continue whatever the outcome of the case may be.

19                   Please stand for our jurors entering.

20                   (Jury present)

21                   THE COURT:  All right.  Please be seated.

22                   Will the foreperson please identify himself.

23                   All right.  Mr. Foreperson, has the jury reached a

24      verdict?

25                   THE FOREPERSON:  We have, your Honor.

O38HHer1

| | |
|---|---|
| 1 | THE COURT: Is it unanimous? |
| 2 | THE FOREPERSON: It is. |
| 3 | THE COURT: And it is on the verdict sheet in this |
| 4 | envelope? |
| 5 | THE FOREPERSON: It is. |
| 6 | THE COURT: All right. Thank you. |
| 7 | All right. Madam Foreperson, will you please return |
| 8 | the verdict sheet to the jurors. Do you have an extra copy? |
| 9 | THE DEPUTY CLERK: Yes. |
| 10 | THE COURT: Please take the verdict. |
| 11 | THE DEPUTY CLERK: Count One, narcotics importation |
| 12 | conspiracy, how do you find? |
| 13 | THE FOREPERSON: Guilty. |
| 14 | THE DEPUTY CLERK: Has the government proven beyond a |
| 15 | reasonable doubt that the offense charged in Count One involves |
| 16 | mixtures or substances containing a detectable amount of |
| 17 | cocaine? |
| 18 | THE FOREPERSON: Yes. |
| 19 | THE DEPUTY CLERK: Has the government proven beyond a |
| 20 | reasonable doubt that the offense charged in Count One involved |
| 21 | five or more kilograms of mixtures or substances containing |
| 22 | cocaine? |
| 23 | THE FOREPERSON: Yes. |
| 24 | THE DEPUTY CLERK: Count Two, possession of machine |
| 25 | guns and destructive devices, how do you find? |

O38HHer1

1                THE FOREPERSON:  Guilty.

2                THE DEPUTY CLERK:  Has the government proven beyond a

3        reasonable doubt that the offense charged in Count Two involves

4        machine guns?

5                THE FOREPERSON:  Yes.

6                THE DEPUTY CLERK:  Has the government proven beyond a

7        reasonable doubt that the offense charged in Count Two involved

8        a destructive device?

9                THE FOREPERSON:  Yes.

10                THE DEPUTY CLERK:  Count Three, conspiracy to possess

11        machine guns and destructive devices.  How do you find?

12                THE FOREPERSON:  Guilty.

13                THE DEPUTY CLERK:  Has the government proven beyond a

14        reasonable doubt that the offense charged in Count Three

15        involved a machine gun?

16                THE FOREPERSON:  Yes.

17                THE DEPUTY CLERK:  Has the government proven beyond a

18        reasonable doubt that the offense charged in Count Three

19        involved a destructive device?

20                THE FOREPERSON:  Yes.

21                THE COURT:  All right.  Please return the verdict

22        sheet to the deputy.  Thank you.

23                Madam deputy, would you please poll the jury.

24                THE DEPUTY CLERK:  Juror No. 1, is that your verdict?

25                JUROR NO. 1:  Yes.

O38HHer1

| | |
|---|---|
| 1 | THE DEPUTY CLERK:  Juror No. 2, is that your verdict? |
| 2 | JUROR NO. 2:  Yes. |
| 3 | THE DEPUTY CLERK:  Juror No. 3, is that your verdict? |
| 4 | JUROR NO. 3:  Yes. |
| 5 | THE DEPUTY CLERK:  Juror No. 4? |
| 6 | JUROR NO. 4:  Yes. |
| 7 | THE COURT:  You have to speak up, Flo. |
| 8 | THE DEPUTY CLERK:  Oh, in here? |
| 9 | Juror No. 5, is that your verdict? |
| 10 | JUROR NO. 4:  No, she's 6. |
| 11 | THE DEPUTY CLERK:  The next juror. |
| 12 | THE COURT:  Juror No. 6, yes. |
| 13 | JUROR NO. 6:  Yes. |
| 14 | JUROR NO. 7:  7. |
| 15 | THE DEPUTY CLERK:  Juror No. 7, is that your verdict? |
| 16 | JUROR NO. 7:  Yes. |
| 17 | THE DEPUTY CLERK:  Juror No. 8, is that your verdict? |
| 18 | JUROR NO. 8:  Yes. |
| 19 | THE DEPUTY CLERK:  Juror number? |
| 20 | JUROR NO. 10:  Yes, No. 10. |
| 21 | THE DEPUTY CLERK:  Juror No. 11, is that your verdict? |
| 22 | JUROR NO. 11:  Yes. |
| 23 | THE DEPUTY CLERK:  Juror No. 12, is that your verdict? |
| 24 | JUROR NO. 12:  Yes. |
| 25 | THE DEPUTY CLERK:  Juror number? |

O38HHer1

```
 1              THE COURT:  13.

 2              JUROR NO. 13:  Yes.

 3              THE DEPUTY CLERK:  Juror No. 15, is that your verdict?

 4              JUROR NO. 15:  Yes.

 5              THE DEPUTY CLERK:  The jury's been polled.

 6              THE COURT:  All right.  Does the government have any

 7    objection to my discharging the jury?

 8              MS. TARLOW:  No, your Honor.

 9              THE COURT:  Same question for the defendant?

10              MS. SHROFF:  We have no objection to the jury being

11    discharged.  Thank you, your Honor.

12              THE COURT:  All right.  Thank you.

13              So the jury is discharged.

14              What I'm about to say to you, ladies and gentlemen, is

15    the same I would say to you even if your verdict was very

16    different than the one you have returned.  It is not a comment

17    on how you have decided the case but on you as jurors.  I sit

18    in awe of what you have done.  "Awe" and "awesome" are overused

19    words these days, but it is really the feeling that I have.

20              The reason I have that is because, if you think with

21    me, you arrived here as total strangers.  You are people who

22    could have lived your entire lives without ever encountering

23    one another, and you're summoned to serve.  And, sadly, as you

24    know and I know, people find ways to evade that service that

25    they're called upon to render as U.S. citizens.  You came here
```

O38HHer1

and you heard a case that has nothing to do with you, that
involves people who are strangers to you.  And you came every
day and you came on time.  And you sat the long days, and you
didn't complain when I went over.  And you didn't complain when
I asked you to come in early or I shortcut your lunch period.
You were determined to serve.  You understood the concept of
service.  And I wish all of us long and healthy lives, but I
also wish for you that as you look back on the last three weeks
of your service, that you are able to see it as one of the very
proudest moments in your life.  You served when you were called
upon, and you did your job.

         You know, we're going to come up on the warm weather
season for, first, Easter and Passover and then the warm
weather, and we're going to see family members and friends.  I
don't ever want you to be unkind to anyone.  It could be your
sister or your brother or your neighbor, and they may tell you
how they plan to beat jury service.  And I want you not to be
unkind but to let them know, in your own way, that you don't
find that one bit funny, because you now know how important it
is, how this system cannot work without citizen jurors.  It
collapses.  And you don't want it to collapse, and I don't want
it to collapse.  And the only way it continues, the proud
tradition we've had in this country for 235 years, is with
dedicated people like you.  You know, we live in a country
where 12 people, 12 Americans, can't agree on a pizza topping,

O38HHer1

1    but you came together and you worked together and you arrived

2    at unanimous verdicts on each count.  So that's why I'm in awe

3    of you.

4              And I want to ask you, in years to come, if it should

5    come to pass that we cross paths, that you will remind me of

6    where we first met.  I also want to tell you what some of my

7    jurors have chosen to do.  I told you, and I meant it, you're

8    free to discuss the case after you've completed your service.

9    Some of my jurors have told me that what they follow is they

10   will talk to anyone about what they saw in the courtroom, about

11   the witnesses, about the judge, about Flo, whatever ——

12   whatever, about your fellow jurors.  However, they have chosen

13   to put a veil around the discussions between, among, and among

14   jurors in jury deliberation, and they view that as something

15   between themselves and their fellow jurors and no one else.  I

16   just tell you that.  You can make your own decision what you

17   want to do.

18             With that, ladies and gentlemen, we are all going to

19   stand one last time in honor of you as you return to the jury

20   room.

21             Ladies and gentlemen, you are discharged, having

22   completed your jury service.

23             (Jury excused)

24             THE COURT:  All right.  Please be seated.

25             I will simply say that if the defense needs more time

O38HHer1

1    on any post-verdict motion, I would just simply ask that you

2    write the Court a letter and cite to me the basis, just so that

3    I can double-check to see that what you're asking for I have

4    the discretion to grant.  There are time limits, as you know.

5         I guess the other question I would ask is of my

6    deputy, if she would be so kind as to give us a sentencing

7    date.

8              THE DEPUTY CLERK:  June 26 at 11 a.m.

9              THE COURT:  Any objection?

10             MS. SHROFF:  No, your Honor.  We just ask that the

11   Department of Probation be informed that assigned counsel would

12   like to be present for any interview done by the Department of

13   Probation of our client.

14             THE COURT:  All right.  That is my practice, and

15   please let me know if you have any difficulty in that regard.

16   You will, I assume, be in touch with probation to get

17   information to the probation officer, but that is my general

18   practice that you are, of course, entitled to be present during

19   the interview.

20             Anything else, Ms. Shroff?

21             MS. SHROFF:  Not from the defense, your Honor.  Thank

22   you.

23             THE COURT:  All right.  Anything from the government?

24             MS. TARLOW:  No, your Honor.

25             MR. STABILE:  Your Honor.

O38HHer1

1              THE COURT:  Yes.

2              MR. STABILE:  Sorry.  Is it OK if we speak with the

3    jurors?

4              THE COURT:  By law there is no restriction on your

5    speaking to jurors, but —— so that's the law.

6              MR. STABILE:  Thank you.

7              THE DEPUTY CLERK:  Can I have the defendant's date of

8    birth?

9              MS. SHROFF:  October 28 of 1968.

10             THE COURT:  All right.  I would ask everyone to remain

11   in the courtroom until we get confirmation from our CSOs that

12   all jurors have cleared the jury room and also that they have

13   cleared the elevator lobby.

14             So if the CSOs need to enter the jury room, that's

15   perfectly fine.  They may do so.  And please let me know when

16   our jurors have left.

17             (Discussion off the record)

18             THE COURT:  The jury left?

19             THE DEPUTY CLERK:  Yes.

20             THE COURT:  Have they cleared the elevator lobby?

21             THE DEPUTY CLERK:  They have.

22             THE COURT:  They have.

23             All right.  With that, you may exit.

24             (Adjourned)

25