UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                15-cr-379 (PKC)

          -against-

                                                OPINION AND
                                              <u>ORDER</u>

JUAN ORLANDO HERNANDEZ,

                            Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

On March 8, 2024, a jury convicted Juan Orlando Hernandez ("Hernandez") of conspiring to import cocaine into the United States in violation of 21 U.S.C. § 963 and using and conspiring to use machineguns in furtherance of that conspiracy in violation of 18 U.S.C. § 924(c) and (o).  (Minute Entry, March 8, 2024.)  He now moves for a new trial under Rule 33, Fed. R. Crim. P.  (ECF 765.)

Defendant asserts that he is entitled to a new trial for two reasons.  First, he contends that the government's witness, Jennifer Taul with the Drug Enforcement Administration ("DEA"), "misled the jury by testifying that cocaine trafficking through Honduras went **up** during the Presidency of Juan Orlando Hernandez, when, in fact, it went **down**" and the government emphasized this testimony during its rebuttal summation.  (ECF 765-1, at 1, emphasis in original.)  Second, he contends that venue in the Southern District of New York was improper.  (<u>Id</u>.)  For the reasons that will be discussed below, the motion for a new trial will be denied.

LEGAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A district court possesses "broad discretion to grant a new trial" but "must exercise that discretion sparingly and in the most extraordinary circumstances and only in order to avert a perceived miscarriage of justice."  United States v. Gramins, 939 F.3d 429, 444 (2d Cir. 2019) (internal citations and quotations omitted).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).  "There must be a real concern that an innocent person may have been convicted."  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).


THE MOTION FOR A NEW TRIAL BASED ON
TAUL'S TESTIMONY IS DENIED

The trial in this matter began on February 20, 2024.  (Minute Entry February 20, 2024.)  During his opening statement on February 21, 2024, counsel for Hernandez told the jury "[u]nder Mr. Hernandez, trafficking through Honduras went down 80 percent from 2009 to 2016. Those are facts that you are going to learn during this trial."  (T. Tr. 50.)  On February 26, 2024, the government called Jennifer Taul, an analyst at the Drug Enforcement Administration, as a witness.  (T. Tr. 554.) The government moved to qualify Taul "as an expert in cocaine manufacturing processes, as well as drug trafficking routes and pricing."  (T. Tr. 566.)  Without objection from Hernandez, the Court so qualified her.  (Id.)  The government's direct examination of Taul was confined to the cocaine manufacturing process and drug trafficking routes and pricing.  It asked no questions concerning the overall level of drug trafficking or cocaine trafficking during any time period.

On cross-examination, Hernandez's counsel asked Taul "[b]etween 2014 and 2022, did the flow of cocaine through Honduras go up or down?"  (T. Tr. 614.)  Taul responded that "[b]etween 2014 and 2022 it did both, but overall it did increase; yes."  (Id.)  Hernandez's counsel then asked "[w]ell, did it go down in the beginning?"  (Id.)  Taul said "[t]here were certain time frames where other environmental factors or COVID perhaps paused things for a little bit, but in a general trend over those years, cocaine trafficking did increase through that Central American route which includes through Honduras."  (Id.)  Hernandez's counsel said "[w]ell, just putting COVID aside because that was -- so let's do between -- because you raise a good point.  Between 2014 and let's say 2019, did cocaine trafficking through Honduras go up or down?"  (T. Tr. 614.)  Taul replied "[u]p."  (Id.)  Hernandez's counsel then asked "[y]ou say it went up between 2014 and 2019?"  (Id.)  Taul responded "I believe so."  (Id.)  Hernandez's counsel asked "[w]hat's your basis for saying that?  (Id.)  Taul responded that "[t]here are statistics reported by a number of different bodies, both private and governmental, DEA reporting mostly."  (Id.)  Hernandez's counsel asked Taul if she could "tell us what statistic you are relying on?"  (Id.)  Taul responded "[n]o, I can't, because I haven't isolated those particular years."  (Id.)  Hernandez's counsel responded "[b]ut you know you have seen statistics that between 2014 and 2019 drug trafficking through Honduras went up.  You are sure you have seen that statistic?"  (Id. at 614-15.)  The Court sustained the government's objection to that question as asked and answered.  (Id.)

The government presented its summation on March 6, 2024.  (T. Tr. 1651.)  In its initial summation, the government did not reference Taul's testimony on cross-examination about the flow of cocaine through Honduras increasing during Hernandez's presidency.  During the defendant's summation, his counsel referenced Taul's testimony on direct examination to

argue that the increase in the price of cocaine in Honduras was due to Hernandez's efforts to make it harder to transport cocaine through the country.  (T. Tr. 1733.)  In the government's rebuttal summation, the government stated "[a]nd you heard from the government's expert witness how the volume of cocaine through Honduras went up during the defendant's presidency, from 2014 through 2022."  (T. Tr. 1756.)

After the Court completed its final instructions to the jury on March 7, 2024, it conducted a side bar to learn if either side had any objections to the instructions as delivered.  At the side bar, Hernandez's counsel informed the Court he had an issue unrelated to the jury instructions, and he was "raising it at the first opportunity that [he] realized it" which was during the jury instructions.  (T. Tr. 1829.)  He informed the Court that he believed Taul's testimony that the volume of cocaine trafficked through Honduras went up from 2014 to 2019 was false, and argued that the government's "doubling down on it" during rebuttal summation was false and misleading.  (T. Tr. 1834.)  In his side bar comments, counsel for Hernandez appeared to be laying the foundation for an ineffective assistance claim by arguing that his failure to confront Taul with data contradicting her testimony was not "a strategic choice" but a failure on his part that "[he] literally just realized" during the Court's instructions to the jury.  (T. Tr. 1830, 1834.)  The government objected to any reopening of the evidence.  (T. Tr. 1835-36.)  The Court denied the motion to reopen the record for a stipulation proposed by defense counsel that drug trafficking through Honduras went down between 2014 and 2022.  (T. Tr. 1836-39.)

The next morning, while the jury was deliberating, counsel for Hernandez moved to "renew and supplement" the motion for the Court to reopen the record and instruct the jury that "[t]he volume of cocaine through Honduras went down during the defendant's Presidency, from 2014 to 2022."  (ECF 733.)  The Court denied the motion in a written Order.  (ECF 734.)

In that Order, the Court explained that Hernandez's counsel could not have been unprepared to cross-examine Taul on whether cocaine trafficking through Honduras went up during the defendant's presidency, because in his opening to the jury, several days before Taul's testimony, he stated that cocaine trafficking had gone down during Hernandez's presidency, and, as experienced counsel, he must have had a good faith basis for this statement.  (Id. at 2.) Additionally, Hernandez did not seek to recall Taul during the government's case or the defense's case.  (Id.)  The Court concluded that in any event, the probative value of whether cocaine trafficking through Honduras went "up" or "down" during Hernandez's presidency was substantially outweighed by the risk of jury confusion of the issues and waste of time, Rule 403, Fed. R. Evid.  (Id. at 2-3.)  This was because the government's theory of the case was not that Hernandez, as President of Honduras, indiscriminately allowed cocaine trafficking to flourish but rather, his targeted assistance was given only to those traffickers who were members of the conspiracy.  (Id. at 3.)

"To challenge a conviction on the basis of a prosecutor's knowing use of false testimony, the defendant must demonstrate that there was false testimony, that the prosecutor knew or should have known it was false, and that there was a reasonable likelihood that the false testimony could have affected the jury's judgment."  United States v. Conners, 816 F. App'x 515, 519-20 (2d Cir. 2020) (summary order).  "[W]hen testimonial inconsistencies are revealed on cross-examination, the jury is entitled to weigh the evidence and decide the credibility issues for itself."  United States v. Josephberg, 562 F.3d 478, 494 (2d Cir. 2009) (internal quotation and alteration omitted).  If "the resolution of the Rule 33 motion depends on an assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."  United States v. McCourty, 562 F.3d 458, 476 (2d Cir. 2009) (internal

quotation and alterations omitted).  The Court concludes that Hernandez has not demonstrated

that Taul's testimony that cocaine trafficking through Honduras went "up" between 2014 and

2019 was false, and even if he had, there is no likelihood that this testimony would have affected

the jury's verdict.

Hernandez asserts this testimony was false based on the excerpts of International

Narcotics Control Strategy Reports and the testimony of an expert in Honduran history and its

social and political systems in a different trial.  (ECF 765-1, at 4-5.)  Were the Court to conclude

that Taul testified falsely, and for reasons explained, the Court does not, it would necessarily

have to make a credibility determination that her testimony was not believable.  "Because the

courts generally must defer to the jury's resolution of conflicting evidence and assessment of

witness credibility, it is only where exceptional circumstances can be demonstrated that the trial

judge may intrude upon the jury function of credibility assessment."  McCourty, 562 F.3d at 475-

76 (internal quotation omitted).

None of the "new evidence" belatedly discovered by Hernandez establishes that

Taul's testimony was false.  None of the International Narcotics Control Strategy Reports

proffered by Hernandez demonstrate that the amount of cocaine trafficked through Honduras

went down between 2014 and 2019.  The 2015 report refers to a decline in the number of cocaine

smuggling flights landing in Honduras between 2013 and 2014.  The 2016 report states that the

volume of cocaine trafficked through Honduras to the United States in the first half of 2015

decreased by 40 percent from 2014.  The 2017 report refers to a 30% decrease in the number of

aircrafts suspected of smuggling cocaine, not the volume of cocaine.  The 2020 report does not

refer to any decrease in the volume of cocaine trafficked.  The 2022 report refers to the first nine

months of 2021, a period of time after the time period at issue here.  The "Update on Drug

6

Situation in Central America for Central Dublin Group Meeting" quotation only refers to a decrease from 2017 to 2016.  The quotation from "Remarks by President Trump" does not refer to any decrease at all.  The "Bureau of International Narcotics and Law Enforcement Affairs: Honduras Summary" refers to a decrease in the homicide rate in Honduras from 2011 to 2017, not a decrease in cocaine trafficking from 2014 and 2019.

The government's expert witness in a trial of a different member of the conspiracy, Dr. Dario Euraque, testified that the "amount of narco-trafficking through Honduras" had decreased during Hernandez's presidency.  (ECF 302, at 19; T. Tr. 628.)  Dr. Euraque was qualified as an expert in Honduran history and its social and political systems, and Taul was qualified as an expert in cocaine manufacturing processes and drug trafficking routes and pricing.  The Court is left with conflicting testimony about whether the volume of cocaine trafficking went "up" or "down" from two expert witnesses qualified in different areas in two different trials.  Hernandez has not proffered any evidence to establish that Taul's, rather than Dr. Euraque's testimony, was false.  At its core, the weight, if any, to give Taul's testimony that the amount of cocaine trafficked through Honduras went "up" between 2014 and 2019 was a credibility determination the jury was entitled to resolve itself.

Additionally, even assuming that Taul's testimony that the amount of cocaine trafficked through Honduras went "up" between 2014 and 2019 was false, the Court concludes that the testimony in question was immaterial.  Stewart, 433 F.3d at 299 ("Ultimately, whether the prosecution was aware of the alleged perjury is of no moment, because we conclude that the testimony in question was not material under either standard.")  Had the jurors known 1) that drug trafficking through Honduras went "down" between 2014 and 2019 and 2) Taul testified falsely on this point, it is unlikely the verdict would have been different.  As the Court explained

in its March 8, 2024 Order, the Court would likely have sustained an objection from the

government that the probative value of whether drug trafficking went up or down during

Hernandez's administration was substantially outweighed by the risk of jury confusion of the

issues and waste of time, Rule 403, Fed. R. Evid.  (ECF 734, 2-3.)  The government's theory of

the case was not that all drug traffickers in Honduras were members of the conspiracy, but that

Hernandez conspired with certain drug traffickers to assist their drug trafficking activities.

Evidence that cocaine trafficking through Honduras in the aggregate went down during

Hernandez's administration would only be relevant to show that Hernandez enacted anti-drug

trafficking policies and acted in conformity with those prior "good acts"—a prohibited

propensity inference.  See United States v. Dawkins, 999 F.3d 767, 792 (2d Cir. 2021).

Further, where "independent evidence supports a defendant's conviction, the

subsequent discovery that a witness's testimony at trial was perjured will not warrant a new

trial."  United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996)  The jury's conviction of

Hernandez had nothing to do with the collateral point of whether cocaine trafficking in the

aggregate increased or decreased during Hernandez's administration.  Indeed, Taul's testimony

as an expert witness on cocaine manufacturing processes and drug trafficking routes and pricing

played a limited role in the trial.  Hernandez's conviction was based on the testimony, over the

course of a three-week trial, of numerous witnesses whose testimony was corroborated in part by

phone records and a recovered drug ledger.

THE MOTION FOR A NEW TRIAL BASED ON
NEW EVIDENCE REGARDING VENUE IS DENIED

Hernandez also moves for a new trial based upon newly-discovered evidence that

purportedly undermines the facts supporting a stipulation to which Hernandez agreed and which

was presented to the jury.  For each count, the Indictment cited 18 U.S.C. § 3238 as the basis for venue in the Southern District of New York.  (ECF 423 at 15, 16, 17.)  Section 3238 provides in relevant part that "[t]he trial of all offenses begun or committed . . . elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought."

       Counts One and Three provided that Hernandez "and others known and unknown, at least one of whom has been first brought to and arrested in the Southern District of New York" and Count Two provided that "at least one of two or more joint offenders has been first brought to and arrested in the Southern District of New York."  (Id. at 13, 15, 16.)  From January 27, 2022 to the beginning of trial on February 20, 2024, significant pre-trial motion practice transpired, and no objection to venue was raised by Hernandez.

       On February 29, 2024, the Court admitted into evidence a stipulation between the government and Hernandez executed on February 23, 2024 that provided that "[o]n April 21, 2022, Juan Orlando Hernandez, the defendant, was flown from Tegucigalpa, Honduras, to Westchester County Airport, where he was first brought into the United States.  The Westchester County Airport, located in White Plains, New York, is in the Southern District of New York."  (T. Tr. 1074; ECF 772-2.)

       At the close of the government's case on March 4, 2024, Hernandez moved under Rule 29, Fed. R. Crim. P. for a judgment of acquittal for insufficient evidence to sustain a conviction.  (T. Tr. 1325.)  The defendant did not raise an objection to venue, and in opposing the Rule 29 motion, the government referenced the venue stipulation between the government and Hernandez, and stated it was "sufficient to establish that venue is proper in the Southern District of New York."  (T. Tr. 1327.)  The Court offered Hernandez an opportunity to respond,

and the defendant again voiced no objection to the sufficiency of the evidence supporting venue. (Id.)  The Court denied the Rule 29 motion without prejudice.  (Id.)  On March 6, 2024, Hernandez rested, and moved for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P. (T. Tr. 1647.)  He did not raise an objection to venue, and the Court denied the motion.  (Id.)

On March 6 and 7, 2024, the Court instructed the jury.  The Court had provided a draft of its jury instructions to the parties on February 28, 2024.  (T. Tr. 914.)  With respect to venue, the draft jury instructions provided that "the Government need not prove that the crime was committed in this District or that the defendant himself was present here.  Instead, it is enough if you find that the point of entry where any co-conspirator of the defendant was first brought into the United States was in the Southern District of New York."  (Court Ex. 4.)  Both parties submitted comments on the draft jury instructions.  (ECF 730 and 732.)  Hernandez did not object to the venue instruction, but the government requested the Court revise the instruction to reflect the February 29, 2024 venue stipulation between the parties.  (ECF 730, at 2.)  Hernandez did not object to the government's suggested venue instruction, and the Court adopted it.  (T. Tr. 1586.)  The Court's venue instruction to the jury read in relevant part: "it is enough if you find that the point of entry where the defendant was first brought into the United States was in the Southern District of New York.  The parties have stipulated in Government Exhibit 1010, that's GX 1010, that the defendant was first brought into the United States through Westchester County airport.  I instruct you that Westchester County is in the Southern District of New York."  (T. Tr. 1820-21.)

Hernandez now asserts that he has obtained newly-discovered evidence as follows:  On April 21, 2022, Hernandez was extradited to the United States from Honduras. (ECF 772, at 36.)  At approximately 8:10 p.m., the plane landed in Fort Lauderdale, Florida to

refuel, and Hernandez was allowed to exit the plane to use the restroom.  (Id.)  At approximately 8:40 p.m., the plane departed the Fort Lauderdale airport and then arrived at the Westchester County airport located in the Southern District of New York.  (Id.)  Based on the purported discovery of "new" evidence of the roughly thirty-minute stop at the airport in Fort Lauderdale, Hernandez now argues that venue was never proper in the Southern District of New York.

Relief under Rule 33 based on newly-discovered evidence may be granted only if the defendant establishes "(1) that the evidence is 'newly-discovered after trial'; (2) that 'facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence'; (3) that 'the evidence is material'; (4) that the evidence 'is not merely cumulative or impeaching'' and (5) that 'the evidence would likely result in an acquittal.'"  United States v. James, 712 F.3d 79, 107 (2d Cir. 2013) (quoting United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007)).

Hernandez has not established this evidence is "newly-discovered after trial" or alleged facts from which the Court could infer "due diligence" on his part to obtain this newly-discovered evidence.  The grand jury returned the indictment charging Hernandez with three counts on January 27, 2022, approximately two years before the trial began.  Each count cited 18 U.S.C. § 3238 as the basis for venue.  Hernandez was of course aware that he stopped at Fort Lauderdale, Florida for thirty minutes during the plane flight from Honduras to Westchester County Airport on April 21, 2022.  Thus, since April 21, 2022, he has known both the statutory basis for the claim of proper venue and the evidence underlying the government's claim. Additionally, the government has proffered that in August 2022, it produced to counsel for Hernandez a DEA report memorializing Hernandez's plane flight from Honduras to Westchester County Airport that explicitly included the thirty-minute stop in Fort Lauderdale.  (ECF 772, at

36.)  Nevertheless, Hernandez entered into a venue stipulation with the government that provided "[o]n April 21, 2022, Juan Orlando Hernandez, the defendant, was flown from Tegucigalpa, Honduras, to Westchester County Airport, where he was first brought into the United States. The Westchester County Airport, located in White Plains, New York, is in the Southern District of New York."  (T. Tr. 1074; ECF 772-2.)

Hernandez argues that "counsel was in this case for a matter of weeks when asked to sign the venue stipulation in the middle of trial and had insufficient time to become familiar with all relevant materials."  (ECF 778, at 11 n.4.)  This is misleading at best.  Hernandez was represented by Raymond Colon beginning on April 21, 2022, and he served as Hernandez's lead trial counsel.  The venue stipulation is signed by "Raymond Colon, Esq./Renato Stabile, Esq." (ECF 772-2, at 3.)  Additionally, Hernandez, who holds a masters degree from a university located in New York and who was trained as a lawyer in Honduras (T. Tr. 50, 1465), certainly knew of his thirty-minute stop in Fort Lauderdale.  "[T]he Court is reluctant to endorse a rule in which defense counsel's own failure to fact-check could itself justify a new trial."  United States v. Pan, No. 12-cr-153 (RJS), 2015 WL 13016355, at *4 (S.D.N.Y. Jan. 30, 2015).  Accordingly, the Court concludes that the thirty-minute stop that was referenced in 3500 material produced to the defendant in August 2022 is not "newly-discovered evidence" and even if it was, Hernandez has not alleged facts from which the court could infer his due diligence in obtaining the information.

In his motion for a new trial under Rule 33, Fed. R. Crim. P., Hernandez also argues that "the indictment should be dismissed" and his "conviction must be vacated" for a lack of venue.  (ECF 765-1, at 11; ECF 778, at 15.)  Rule 33, Fed. R. Crim. P. provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  It does not

authorize the Court to dismiss an indictment or vacate a conviction without granting a new trial, and Hernandez has cited no authority holding that Rule 33, Fed. R. Crim. P. is a viable vehicle for a post-conviction motion to dismiss the indictment or vacate a judgment.  This constitutes an independent basis for denying Hernandez's argument that "the indictment should be dismissed" and his "conviction should be vacated."  Putting this procedural infirmity aside and treating Hernandez's Rule 33 motion as a Rule 29 motion for a judgment of acquittal, the Court concludes that Hernandez is not entitled to the requested relief.  See United States v. Umeh, 646 F. App'x 96, 98 n.1 (2d Cir. 2016) (summary order) ("The district court did not reach the issue of whether Rule 33 is the proper vehicle for a post-conviction motion to dismiss the indictment. Because [defendant] has not demonstrated that he is entitled to relief, we need not reach the issue and assume without deciding that [defendant's] arguments have been properly raised.")

   The Second Circuit has held that "venue is non-jurisdictional in the criminal context" and "is subject to waiver in a criminal case."  United States v. Calderon, 243 F.3d 587, 590 (2d Cir. 2001).  "Objections to venue are waived unless 'specifically articulated' in defense counsel's motion for acquittal."  United States v. Potamitis, 739 F.2d 784, 791 (2d Cir. 1984) (quoting United States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir. 1980)).  A general motion for acquittal under Rule 29, Fed. R. Crim. P. at the close of the government's case and the close of the defendant's case is insufficient.  Id.; see also United States v. Conteh, 2 F. App'x 202, 204 (2d Cir. 2001) (summary order).   Similarly, "a finding of waiver is proper . . . when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue."  United States v. Menendez, 612 F.2d 51, 55 (2d Cir. 1979) (internal quotation omitted).  Consistent with this case law, the Court concludes that Hernandez has waived his objection to venue.  As discussed above, Hernandez was aware that the basis for venue in this

matter was 18 U.S.C. § 3238, and he was also aware of the thirty-minute stop in Fort Lauderdale. He made two Rule 29 motions for a judgment of acquittal, but neither expressed his objection to venue.  Indeed, he knowingly entered into the venue stipulation with the government and did not object to the Court's instruction calling the jury's attention to that stipulation.

In Hernandez's reply brief, (ECF 778), he argues for the first time that the Court's jury instruction regarding venue was erroneous because the Court's instruction that "[t]he parties have stipulated in Government Exhibit 1010, GX 1010, that the defendant was first brought into the United States through Westchester County airport" was "based on a false factual premise." Hernandez had two opportunities to object to this instruction but never did so.  The Court confirmed with Hernandez's counsel at the jury charge conference on March 5, 2024 that she had no objections to the Court's revised instructions.  (T. Tr. 1586.)  The Court also gave the parties an opportunity to raise any further objections after it concluded instructing the jury on March 7, 2024.  (T. Tr. 1827.)  The defendant raised one objection which the Court sustained and reinstructed the jury, but he did not object to the venue instruction.  (T. Tr. 1828-29.)  A jury instruction is erroneous if it "mislead[s] the jury as to the correct legal standard or do[es] not adequately inform the jury of the law."  United States v. Daugerdas, 837 F.3d 212, 228 (2d Cir. 2016) (internal quotation omitted).  Hernandez's newly-raised challenge to the venue jury instruction is not that it misled the jury as to the correct legal standard or did not adequately inform the jury as to the law on venue.  Rather, his challenge is based on the Court's reliance on the stipulation that Hernandez knowingly and voluntarily entered into with the government.  For the reasons discussed above, this argument has been waived, and does not entitle him to a new trial.

CONCLUSION

Defendant's motion for a new trial (ECF 765) is DENIED.  The Clerk of Court is respectfully requested to terminate Docket Entry 765.


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated: New York, New York
      May 9, 2024