O1n2Orlc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                    New York, N.Y.

4                 v.                              15 Cr. 379 (PKC)

5    JUAN ORLANDO HERNANDEZ,
     MAURICIO HERNANDEZ PINEDA,
6    JUAN CARLOS BONILLA VALLADARES,

7                 Defendants.

8    ------------------------------x              Conference

9                                                 January 23, 2024
                                                  10:00 a.m.
10

11   Before:

12                         HON. P. KEVIN CASTEL,

13                                               District Judge

14

15                           APPEARANCES

16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  ELINOR L. TARLOW
          KYLE A. WIRSHBA
19        JACOB H. GUTWILLIG
          DAVID J. ROBLES
20        Assistant United States Attorneys

21
     RAYMOND L. COLON
22   Attorney for Defendant Juan Orlando Hernandez

23
     RAOUL ZALTZBERG
24   CESAR DE CASTRO
          Attorneys for Defendant Juan Carlos Bonilla Valladares
25

O1n2Orlc

                              APPEARANCES
                              (continued)

RICHARD J. MA
KENNETH WOMBLE
CORY M. GARCIA
     Attorneys for Defendant Mauricio Hernandez Pineda




Also Present:


Donald D. DuBoulay, CJA Counsel

David L. Wikstrom, CJA Counsel

Renato C. Stabile, CJA Counsel

Francisco Olivero, Spanish Interpreter

Gabriel Mitre, Spanish Interpreter

Kayla Collins, Paralegal Specialist, USAO

O1n2Orlc

1                    (Case called)

2              THE DEPUTY CLERK:  For the government.

3              MS. TARLOW:  Good morning, your Honor.  Elinor Tarlow

4     for the government.  I am joined at counsel's table by AUSAs

5     Kyle Wirshba, Jacob Gutwillig, David Robles, and Paralegal

6     Specialist Kayla Collins.

7              THE COURT:  Good morning to you all.

8              And for defendant Hernandez.

9              MR. COLON:  Yes.  Good morning, your Honor.  Raymond

10    Colon on behalf of Mr. Juan Orlando Hernandez in the front

11    row --

12             THE COURT:  I see him in the jury box.

13             MR. ZALTZBERG:  Good morning, your Honor.  Raoul

14    Zaltzberg, on behalf of Mr. Bonilla.  And your Honor,

15    Ms. Villalona sends her apologies.  There was an issue she had

16    this morning.

17             THE COURT:  That's fine.

18             MR. DE CASTRO:  And Mr. de Castro, for Mr. Bonilla

19    Valladares.

20             THE COURT:  All right.  Thank you, Mr. de Castro, for

21    being here.

22             MR. MA:  Good morning, Judge.  Richard Ma, appearing

23    on behalf of Mauricio Hernandez Pineda, who is the middle

24    defendant seated in the well in yellow.

25             MR. WOMBLE:  Good morning, your Honor.  Ken Womble,

O1n2Orlc

1    also for Mr. Hernandez Pineda.

2              THE COURT:  All right.

3              MR. GARCIA:  Good morning, your Honor.  Cory Garcia,

4    on behalf of Mr. Hernandez Pineda.

5              THE COURT:  All right, good morning.

6              And good morning to each of the defendants,

7    Mr. Pineda, Mr. Bonilla, Mr. Hernandez.

8              All right.  Also present this morning at my request is

9    Donald DuBoulay.  Mr. DuBoulay, thank you for being with us.

10             MR. DuBOULAY:  Good morning, your Honor.

11             THE COURT:  David Wikstrom.  Mr. Wikstrom, good to

12   see you.

13             MR. WICKSTROM:  Good morning.

14             THE COURT:  Thank you for being here.

15             And Renato Stabile.  Mr. Stabile, thank you for being

16   here

17             MR. STABILE:  Good morning.

18             THE COURT:  All right.  So there is a number of

19   things to be done.  I want to at this point see Mr. Colon at

20   the sidebar, with the court reporter.  At the government's

21   request, I have some questions for him, which I will take *ex*

22   *parte* and under seal.  All right?

23             And Mr. Colon, if you would be so kind as to bring

24   your calendar with you if you have it.

25             MR. COLON:  Of course, your Honor.

O1n2Or1c

1              THE COURT:  Let me see you up at sidebar here.

2              (Pages 6 through 45 sealed)

O1n2OrlC

```
1                (In open court)

2                THE COURT:  I need Mr. DuBoulay for a moment.

3                I want to make sure that you all put in a time sheet

4      for your time here today.

5                (Mr. DuBoulay at the sidebar)

6                THE COURT:  Mr. DuBoulay thank you for coming today

7      and my instruction to you is the same, making sure you put

8      in -- we will get an order out that the three lawyers were

9      provisionally appointed today so that you can put in a CJA

10     voucher for your time in reviewing the letter or anything else

11     you did in connection with it.

12               So the question is whether you would be able to sit

13     as a second chair in the trial of defendant Juan Orlando

14     Hernandez?

15               MR. DuBOULAY:  I can do that, your Honor.  My only

16     concern that if the trial is going to be put off for 30 or 60

17     days, I'm not sure that's sufficient time for me to get up to

18     speed.  Just from what I have read about the case, it seems to

19     me a lot of discovery, and I don't know -- although lead

20     counsel has been on the case for a while, I've been in that

21     position before where something happens at a trial and you

22     have to step up and second counsel ends up being the first

23     counsel, and I would just like to be prepared.  Otherwise, I am

24     capable of doing that.

25               THE COURT:  Right.  And what length of time do you
```

O1n2Or1C

1    think you would need to be prepared for a case like this?

2              MR. DuBOULAY:  Well, Judge, I don't really know what

3    the extent of the discovery is.  I would have to obviously get

4    the discovery, talk to counsel.  I'm not sure how much time I

5    would need, but I would think it would be a few months.  I

6    don't think it will be 30 days.

7              THE COURT:  All right.  Thank you very much,

8    Mr. DuBoulay.  Thank you.

9              (In open court)

10             THE COURT:  Mr. Stabile, if you don't mind coming up

11   for a moment, please.

12             And Mr. Wikstrom, I don't know whether you heard me.

13   I said we are going to put out an order, and I want to make

14   sure that you put in a CJA voucher for your time today and

15   getting ready for today and, again, I thank you

16             (Mr. Stabile at the sidebar)

17             THE COURT:  Mr. Stabile, thank you for being here.

18             MR. STABILE:  Thank you.

19             THE COURT:  Would you be in a position to accept an

20   assignment as second chair in the trial of Juan Orlando

21   Hernandez.

22             MR. STABILE:  Starting when, your Honor, on

23   February --

24             THE COURT:  The trial date is February 5, 2024.

25             MR. STABILE:  And how long is the trial expected to

O1n2OrlC

1    last?

2                THE COURT:  Something in the neighborhood of three

3    weeks, two to three weeks.  Actually I was originally told two,

4    but I think it's going to be more like three.

5                MR. STABILE:  Okay.  Your Honor, if I were the second

6    chair, I believe I could accept that assignment, with the

7    caveat that, having head the transcript and the government's

8    letter, I understand that there is a concern of Mr. Colon at

9    some point being unable to continue.  I don't think I would be

10   in a position to take the wheel completely in the middle of a

11   trial and be fully prepared.  But if I were in a supporting

12   role to a lead attorney, I believe I could be in a supporting

13   role.

14               THE COURT:  Thank you very much, Mr. Stabile.  Thank

15   you.

16               (In open court)

17               THE COURT:  Mr. Wikstrom.

18               (Mr. Wikstrom at the sidebar)

19               THE COURT:  Thank you for coming in again.  It's a

20   horrific imposition on your time that I asked.

21               MR. WICKSTROM:  Happy to do it.

22               THE COURT:  So here's the situation.  Would you be in

23   a position to be a second chair to Mr. Colon in representing

24   Mr. Juan Orlando Hernandez in the trial of this action?

25               MR. WICKSTROM:  Your Honor, I'm sorry.  I have a

O1n2OrlC

```
1    conflict, because I've been -- I have an agreement with

2    Antonio Hernandez, this defendant's codefendant and brother,

3    already convicted, to pursue post-conviction relief.

4              THE COURT:  Understood.  You don't need to say --

5              MR. WICKSTROM:  I am the wrong lawyer.  Otherwise, I

6    would be delighted to assist.

7              THE COURT:  You are excused.  Thank you very much.

8              MR. WICKSTROM:  Very good.  I appreciate it.

9              (In open court)

10             THE COURT:  All right.  Mr. Zaltzberg, if you would

11   like to come up, and Mr. de Castro.

12             (Pages 50 through 65 sealed)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

O1n2OrlC

```
1              (In open court)
2              THE COURT:  So we are going to take a five-minute
3    recess.
4              Mr. DuBoulay, I'm going to excuse you.
5              Mr. Stabile, I'm going to ask you to stay behind.
6              All right?  So we will resume in five minutes.  Thank
7    you.
8              (Recess)
9              THE COURT:  Please be seated.  I want to hear from
10   the government on one point, and that is with regard to the
11   supplemental memorandum of Mr. Pineda regarding Mr. Bonilla's
12   possible testimony.
13             MR. WIRSHBA:  Yes, your Honor.
14             The government is prepared to respond now, but
15   obviously has not had an opportunity to go through all of the
16   materials that were referenced in the motion.
17             THE COURT:  It's one paragraph, I think.  I'm talking
18   about in Mr. Pineda's memorandum, there is a reference to
19   testimony that he anticipates Mr. Bonilla will give at trial.
20             MR. WIRSHBA:  Yes, your Honor.
21             THE COURT:  And I wanted to hear from the government
22   what their position is as to whether that would be a reason to
23   grant Mr. Pineda a severance.
24             MR. WIRSHBA:  Understood, your Honor.
25             It is government's position that that is not a
```

O1n2OrlC

1  grounds to grant severance.

2          THE COURT:  Tell me why.

3          MR. WIRSHBA:  Your Honor, we don't believe that the

4  testimony, as its been outlined in Mr. Hernandez Pineda's

5  motion papers, creates a mutually antagonistic defense where

6  the jury would necessarily have to acquit one of the

7  individuals and convict the other individual in light of that

8  defense.

9          THE COURT:  Is that the standard?

10          MR. WIRSHBA:  Yes, your Honor.  That is the standard

11  out of *Yusef* from the Second Circuit's 2003 case.

12          And your Honor, it is the government's position that

13  the Second Circuit, when it's looked at situations where there

14  were mutually antagonistic -- or more mutually antagonistic

15  defenses even, but ones that the circuit ultimately found were

16  perfectly acceptable, that this pales in comparison.

17          So, for example, the circuit has looked at a

18  situation where a client and an attorney were tried together,

19  where the client was asserting an advice-of-counsel defense,

20  and the attorney was claiming that he unwittingly did the

21  client's bidding.  That, to the government, is a situation in

22  which there is much more of a conflict than we have here.

23          At best, it seems -- and, again, we haven't been able

24  to review the files, but it seems that Mr. Bonilla would

25  testify, as we understand it, that he was investigating at

O1n2OrlC

```
 1   least Mr. Hernandez Pineda and possibly also Mr. Orlando
 2   Hernandez.  And there is no reason that that investigation
 3   could not have been ongoing.  There is no reason that perhaps
 4   Mr. Bonilla would testify that he found some evidence that
 5   there was wrongdoing on the part of his codefendants, but that
 6   the jury could not both credit that and also acquit the other
 7   two defendants.  Because just because there was an
 8   investigation in Honduras, of course, does not mean that they
 9   are guilty of the crimes that they have been charged with here
10   in the United States.
11           And so it is the government's position that even if
12   Mr. Bonilla were to testify about his investigation of his
13   codefendants, that that would not be the type of mutually
14   antagonistic defense that the Second Circuit contemplates
15   would require severance.
16           THE COURT:  All right.
17           I'm going to hear from defendant Pineda on this
18   point.  Is there anything you wanted to say, Mr. Ma or
19   Mr. Womble?
20           MR. MA:  Yes, just in response.
21           I disagree strongly.  Clearly the defenses are
22   antagonistic.
23           As I mentioned in my motion, the anticipated
24   testimony puts us on a collision course and, for all of the
25   reasons that we referenced, it is a uniquely inappropriate
```

O1n2OrlC

1     situation where someone from the defense table would be

2     offering highly incriminating evidence of not only involvement

3     in police corruption, but also in drug trafficking, links to

4     drug trafficking.  That is exactly the type of evidence that

5     creates mutually antagonistic defenses.

6             And Judge, I will note also that the possession of

7     the files would not otherwise be admissible in Mr. Pineda's

8     trial.

9             And in addition to that, something that --

10            THE COURT:  Whoa, whoa.  The possession of the files

11    would not be -- possession of what files.

12            MR. MA:  Excuse me.  The files that Mr. Bonilla has

13    in his possession would not be admissible against Mr. Pineda

14    at his own trial.  But even more than that, Judge, even the

15    mention on cross-examination, impeachment with that material,

16    mention of that information would be highly prejudicial to

17    Mr. Pineda.

18            THE COURT:  All right.

19            Let me hear from Mr. Colon.  It's been suggested by

20    the government and confirmed today -- let me first ask

21    Mr. Zaltzberg if he would be so kind as to put on the record

22    in brief fashion what, first of all, I think you confirmed at

23    our sidebar, that you would expect your client to testify in

24    the manner that Mr. Pineda has laid out in his supplemental

25    memorandum, is that correct?

O1n2OrlC

1          MR. ZALTZBERG:  That's absolutely correct, your

2     Honor.

3          THE COURT:  And you also, I believe, indicated that

4     there would be some other testimony, perhaps not as detailed,

5     but as to defendant Hernandez.

6          MR. ZALTZBERG:  That's absolutely correct as well.

7          THE COURT:  So what can you say about the testimony

8     as to Mr. Hernandez.

9          MR. ZALTZBERG:  So in regards to the testimony of

10    Mr. Hernandez -- and, again, your Honor, right now my client,

11    if he were to testify -- we are not saying he is going to, but

12    if he were to, he would indicate very similar in the way that

13    was laid out by Mr. Hernandez's -- excuse me, Mr. Pineda's

14    counsel, it would be along those same lines.

15          Specifically, what he would testify to is that he was

16    at various points, while a member of the Honduran national

17    police, investigating the former president for narcotics

18    trafficking, including known associates, various incidences

19    that he was aware of that involved Mr. Hernandez, and just the

20    general idea that he was, you know, part of a narcotics

21    trafficking organization.

22          THE COURT:  Well, of course, as discussed at the

23    sidebar, any testimony that would be offered by Mr. Bonilla

24    would be limited to that which was probative of -- somewhat

25    probative or tended to show that he was not a member of a drug

1    conspiracy.

2           MR. ZALTZBERG:  Correct.

3           THE COURT:  It would not be an opportunity to lay out

4    a case against another person, but there would be at least

5    details sufficient to make his assertion plausible.

6           MR. ZALTZBERG:  Absolutely perfectly said, your

7    Honor.  Obviously the co-counsel has made out my defense,

8    whether I like it or not, that is the basis -- or at least a

9    large basis of our defense.  And in order to assert the

10   defense, which is, specifically speaking, that my client was

11   doing his job as a police officer as part of it, he has no

12   choice but to sort of lay out some of the details of the

13   investigations he was making as to both codefendants.

14          THE COURT:  All right.  Okay.

15          Mr. Colon, anything you want to say on this subject?

16   Do you join in the motion to sever on that basis?

17          MR. COLON:  I do, Judge.  To me, an investigation

18   does not equate to coconspirator conduct.  It's an

19   investigation that we don't even know whether he was the

20   author, the investigator.  It may come from -- it may come

21   possibly from hearsay that's not admissible in this case from

22   the individuals that he may have collected that information

23   from.  It's dubious, Judge, and I think it would be -- it is,

24   quite frankly, very prejudicial to my client because I don't

25   believe it reaches the point that it can be admissible.

O1n2OrlC

1          THE COURT:  All right.  Thank you.

2          Anything the government wants to say in response?

3          MR. WIRSHBA:  Your Honor, the only thing that I would

4     say in response is, with respect to these purported files, the

5     government has not had an opportunity to review them, but just

6     based on the description, we do doubt their admissibility, and

7     so the government will need to examine them.  But even on the

8     bases that might be proffered, the government does not believe

9     that they necessarily will be admissible even by Mr. Bonilla

10     at trial.

11          THE COURT:  But that's a somewhat different issue,

12     the admissibility of the files.

13          MR. WIRSHBA:  Of course, your Honor, only to the

14     extent that they would support Mr. Bonilla's oral testimony.

15          THE COURT:  All right.  So what I'm going to do is

16     I'm going to give Mr. Pineda's team and Mr. Hernandez the

17     opportunity to submit a further memorandum on the subject, and

18     I will look for that by this coming Friday at noon, a

19     supplemental letter, just laying out the law that you rely on.

20          In the case of the government, I'm going to ask the

21     government to do a letter.  When would it be convenient for

22     you to get a letter in laying out your case law?

23          MR. WIRSHBA:  Your Honor, would Tuesday be all right?

24          THE COURT:  Oh, you mean after their letter?

25          MR. WIRSHBA:  Or, your Honor, we are happy to do it at

1    the same time.  Would you like it at the same time?

2                   THE COURT:  Yes, that I think would be fine.

3                   MR. WIRSHBA:  Okay.  Understood.

4                   THE COURT:  All right.  And in terms of my inquiry

5    today, let me say that, number one, I am going to appoint and

6    I am appointing Mr. Stabile, a member of the CJA panel, as

7    additional counsel for Mr. Hernandez, and so there will be an

8    order to that extent.

9            I am reserving on the issue of the severance.  I want

10   to see what the case law is, what the government has to say,

11   what defense counsel has to say.  Following this hearing today,

12   I'm going to request that -- it doesn't have to be done today,

13   but by noon tomorrow, the citations to your major cases on

14   this.  Just e-mail them to counsel so they at least are

15   pointed in the direction of the case law you are relying on

16   that you have cited to me today.

17           And I will say that last Friday, before receiving the

18   government's letter, I was working on the continuance issue.

19   In fact, I spent most of Friday working on the continuance

20   issue.  I planned to rule on the continuance issue.  That was

21   my plan before I received the government's letter.

22           I've now had a detailed review with counsel for

23   Mr. Hernandez and Mr. Hernandez, counsel for Mr. Bonilla and

24   Mr. Bonilla, and what I am doing is I am going to move the

25   commencement of this trial to February 12 at 10 a.m.   Right

O1n2OrlC

1    now the trial will include all three defendants because I

2    haven't decided what will transpire with regard to Mr. Pineda

3    and whether or not there will be a severance.  I will have my

4    order out after I incorporate today's hearings into my opinion

5    on the motion to reconsider the continuance, and I will also

6    take that as an application by Mr. Bonilla for a continuance

7    and substitution of counsel.

8             Is there anything further from the government?  I

9    think there might be a need to exclude time further.

10            MS. TARLOW:  Yes, your Honor.

11            The government moves to exclude time from February 5

12   until February 12 in order for the defendants to continue

13   preparing for trial, reviewing discovery, and in the interests

14   of justice.

15            THE COURT:  All right.  Any objection?

16            MR. COLON:  No, your Honor.

17            MR. ZALTZBERG:  No, your Honor.

18            MR. MA:  No objection, Judge.

19            THE COURT:  All right.  I find that the ends of

20   justice will be served by granting a continuance to February

21   12, and that the need for a continuance outweighs the best

22   interests of the public and the defendant in a speedy trial.

23   The reasons for my finding is that the need for a continuance

24   is occasioned by the issue of severance as well as the joinder

25   of Mr. Stabile.  I heard Mr. Stabile's comments at the sidebar,

O1n2OrlC

 1    and that of course will be taken into account.  You am making

 2    no ruling on whether it would be appropriate for Mr. Stabile

 3    to take over any part of this case, but he is a member of the

 4    trial team and -- oh, this is subject, I might add, it's

 5    provisional and subject to Mr. Hernandez completing a

 6    financial affidavit.

 7            Can we arrange for Mr. Colon and Mr. Stabile to meet

 8    with Mr. Hernandez before he is returned to the MDC?  Where

 9    would that be?  Would that be here, up here?

10            THE MARSHAL:  Yes, sir.

11            THE COURT:  All right.  So we will get you a

12    financial form, financial affidavit to be completed by

13    Mr. Hernandez, and you can tender it to my deputy and we will

14    make sure that happens.

15            Anything further?

16            MR. WIRSHBA:  Your Honor, one final issue to raise

17    with the Court.

18            As the Court knows, the government had been working

19    closely with defense counsel for Mr. Orlando Hernandez to set

20    up a process whereby counsel would be able to enter into the

21    skiff and to prepare a supplemental notice.

22            THE COURT:  Yes.

23            MR. WIRSHBA:  As the government understands it and to

24    update the Court, a cleared interpreter has been identified by

25    the defense, and the defense has been speaking with that

O1n2OrlC

1    interpreter.  At this time the government would renew its

2    request that the Court set a deadline for a supplemental

3    section 5 notice.  We have informed Mr. Colon and defense

4    counsel that we stand ready, as do the SISOs, to facilitate

5    any meetings that are required to meet that deadline.

6              THE COURT:  Well, we have to have the meeting first,

7    so let's have the meeting.  And it would seem to me that it

8    would be something like within three days of the meeting,

9    defense counsel ought to be in a position to supplement any

10   section 5 notice.

11             Of course there is one issue here.  Mr. Colon has not

12   seen the section 5 notice.

13             MR. WIRSHBA:  Yes, your Honor.  The understanding

14   would be that they would create a document from scratch.

15             THE COURT:  All right.  Okay.  So basically this

16   would be a document which would outline areas of

17   Mr. Hernandez's testimony which would touch upon interactions

18   with employees, agents, or agencies of the United States.

19             MR. WIRSHBA:  Your Honor, what the parties have

20   jointly proposed is actually broader than that.  What the

21   parties have proposed is that defense counsel and the

22   defendant would prepare any portion of his examination, it

23   would then go to a wall attorney who would be --

24             THE COURT:  I see.

25             MR. WIRSHBA:  -- who would be able to ensure that the

O1n2OrlC

1    government does not receive any unclassified portions of that

2    testimony.

3              THE COURT:  All right.  So it would go to the wall

4    attorney and then screened out.

5              MR. WIRSHBA:  Correct, Judge.

6              THE COURT:  All right, anything further?

7              MR. WIRSHBA:  Not from the government.

8              THE COURT:  We are adjourned.

9              THE MARSHAL:  It will be on the fourth floor, your

10   Honor.

11             THE COURT:  Mr. Stabile and Mr. Colon, your client

12   will be on the fourth floor.

13                             - - -

14

15

16

17

18

19

20

21

22

23

24

25